IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

KEVIN DETREVILLE,

Plaintiff,

v.

SERGEY GUREVICH, and
JULIE WEINHEIMER,

Defendants.

_____

**COMPLAINT AND JURY DEMAND**
_____

Plaintiff, Kevin Detreville, by and through his attorneys, Raymond K. Bryant and Zachary L. Shiffler of the Civil Rights Litigation Group, PLLC, hereby submits the following Complaint and Jury Demand:

### INTRODUCTION

1. This is a civil rights action seeking damages for the violation of Plaintiff's First, Fourth, and Fourteenth Amendment rights, stemming from Denver Police Department officers' unlawful decision to arrest Plaintiff because Plaintiff, a young African-American male, chose to video record his consensual encounter with the officers.

2. On November 10, 2019, Mr. Detreville approached the Denver District 5 Police Station to conduct a First Amendment audit, while using his cell phone to record his experience. Before Mr. Detreville could even make it to the front door of the police station, Defendant Weinheimer opened the door and met Mr. Detreville outside the police station. After approximately two minutes of calm discussion between Mr. Detreville and Defendants – wherein

Mr. Detreville asked for information regarding the accommodations/complaint forms, and he affirmatively asserted his First Amendment right to record his consensual encounter – Defendant Officers arrested Mr. Detreville for alleged "unlawful conduct" in recording the officers, that was clearly protected by state law and the First Amendment to the United States Constitution.

3. Plaintiff seeks compensation for the dignitary, economic, and emotional injuries he suffered as a result of the unlawful seizure and meritless charges brought against him. Plaintiff seeks punitive sanctions against the individual officers to punish them for their callous disregard of his Constitutional rights and to deter them from this type of misconduct in the future.

## JURISDICTION

4. This action arises under the Constitution and laws of the United States, and 42 U.S.C. § 1983. Jurisdiction is proper pursuant to 28 U.S.C. § 1331.

5. Venue is proper in the District of Colorado because the incident and resultant injuries to Plaintiff giving rise to this action occurred in Denver, Colorado.

## PARTIES

6. Plaintiff incorporates by reference, as though fully set forth herein, each and every allegation contained in the preceding paragraphs of this Complaint.

7. Plaintiff Kevin Detreville was, at all times relevant to the claims set forth herein, a resident of the State of Colorado.

8. Defendant Sergey Gurevich was, at all times relevant to the subject matter of the claims in this action, employed as a police officer by Denver Police Department and acted under color of state law in cooperation and coordination with Defendant Weinheimer. He is identified in his personal capacity.

9. Defendant Julie Weinheimer was, at all times relevant to the subject matter of the

claims in this action, employed as a police officer by Denver Police Department and acted under color of state law in cooperation and coordination with Defendant Gurevich. She is identified in her personal capacity.

## FACTUAL BACKGROUND

**A. The November 10, 2019 Unlawful Arrest of Mr. Detreville**

10. On the evening of November 10, 2019, Mr. Detreville sought to record himself walking toward the station and his interaction with officers at the Denver District 5 Police Station. The entire interaction with the officers lasted approximately two minutes.

11. Mr. Detreville walked around public areas outside of Denver District 5 Station, and walked up the sidewalk toward the front entryway of Station.
Before Plaintiff reached the front door, Defendant Weinheimer opened the front door and met Mr. Detreville outside.

12. As Defendant Weinheimer stood in the doorway, blocking entry to the police station, Mr. Detreville asked her for assistance with locating the accommodations/complaint forms.

13. Defendant Weinheimer denied Plaintiff's request and instructed Mr. Detreville to call the "main number," without providing any further information.

14. With his cell phone recording and clearly visible to Defendant Weinheimer, Mr. Detreville asked Defendant Weinheimer to verbally state her name and badge number.

15. Denver municipal police policies require officers to provide their name nad badge number, upon request.

16. Defendant Weinheimer became visibly agitated and annoyed at Mr. Detreville's calm request for information relating to her job as a police officer.

17. Defendant Weinheimer refused to verbally state her name and badge number.

18. Mr. Detreville requested, again, that Defendant Weinheimer verbally state her name and badge number.

19. Instead of responding to Mr. Detreville's request, Defendant Weinheimer radioed for assistance.

20. A moment later, station supervisor Defendant Gurevich arrived at the doorway of the police station, further blocking entry to the building..

21. Mr. Detreville greeted Defendant Gurevich when he arrived at the doorway, and Mr. Detreville politely asked for Defendant Gurevich's name and badge number.

22. Defendant Gurevich asked Mr. Detreville what he needed, and Mr. Detreville again requested his name and badge number.

23. Instead of providing his name and badge number, Defendant Gurevich quickly stated that "we do not allow video recording on our property; if you do not stop recording, we will have to arrest you."

24. Defendant Weinheimer reinforced Defendant Gurevich's statement by pointing Mr. Detreville toward a sign posted on the window and saying "It's written right there."

25. The sign read: "No video recording allowed in the Denver District 5 Station without prior permission from the Chief of Police."

26. Mr. Detreville was not in the Denver District 5 Station and asked Defendants to confirm that he was on public property – on the sidewalk in front of the station.

27. Defendant Gurevich, instead, assertedthat the City and County of Denver owned the property at the Denver District 5 Station.

28. Defendant Gurevich told Mr. Detreville to stop recording and we can help you out."

29. Defendant Gurevich spoke very quickly, and Mr. Detreville had to ask him to repeat his statement.

30. Defendant Weinheimer repeated Defendant Gurevich's statement informing Mr. Detreville that he should stop recording his interaction with the officers, and that Defendants would assist Mr. Detreville only if he stopped recording.

31. Baffled by Defendant Officers' attempt to prohibit Mr. Detreville from recording a consensual encounter with officers while outside the police station, Mr. Detreville advised Defendant Officers that he had a First Amendment right to record his interaction.

32. Immediately after Mr. Detreville asserted his First Amendment right to record the officers, Defendant Gurevich became further incensed and instantly responded with "Okay!" – signaling that Mr. Detreville was under arrest.

33. In response to Mr. Detreville's assertion of his First Amendment right to record the officers, Defendant Weinheimer instantly replied, "okay, it's not actually." The Defendant Officers grabbed Mr. Detreville and arrested him.

34. Mr. Detreville remained calm and polite during the entire interaction with Defendant Officers.

35. Mr. Detreville did not make any comments or movements that suggested he was a threat to the officers or had otherwise committed any crime.

36. At no point prior to his arrest did Plaintiff enter the Denver District 5 Station.

37. The Defendant officers charged Plaintiff with "unlawful conduct" for video recording outside of the police station.

38. The District Attorney for the City and County of Denver dismissed the "unlawful conduct" charge against Mr. Detreville because there was not sufficient evidence to support the

charge.

39. As a result of his two-minute consensual encounter with Defendant Officers, Mr. Detreville spent three days in jail. He suffered emotional distress from being unlawfully handcuffed, shackled, and prosecuted for engaging in a constitutionally protected activity.

**B. Similarly Situated Individuals Engaging in the Same Conduct as Mr. Detreville**

40. Mr. Detreville is not the only First Amendment Auditor to record outside of a Denver police stations. There have been numerous others that have performed the same activity before. For example:

41. On November 13, 2019, a Caucasian male walked around outside the Denver District 5 Station at night while video recording for approximately two hours.

42. This Caucasian male walked all the way to the front door of the Denver District 5 Station and recorded the various signs on the window.

43. This Caucasian male walked past the same spot where Defendant Weinheimer initiated contact with Plaintiff.

44. A security guard at the Human Services Center approached this male and advised him that he could not take pictures of government buildings.

45. The security guard called the Denver Police Department for assistance.

46. Denver Police Officers arrived at the Human Services Center soon thereafter, and learned details of the Caucasian male recording the outside of the police station, but no officer initiated contact with this Caucasian male.

47. This Caucasian male left the Denver District 5 Station without being detained or arrested after video recording outside for approximately two hours.

48. On November 14, 2019, a different Caucasian male walked around the Denver

District 5 Station while video recording for approximately one hour.

49. This Caucasian male walked all the way to the front door of the Denver District 5 Station and recorded the various signs on the window.

50. This Caucasian male walked past the same spot where Defendant Weinheimer initiated contact with Plaintiff.

51. This Caucasian male left the Denver District 5 Station without being arrested after video recording outside for approximately one hour.

52. During these two incidents, the Caucasian males recording the outside of the police station reached the same exact areas outside of the station, recorded during the same police shift as had Plaintiff, and would have been seen by the officers and station supervisors monitoring the public areas around the station via video cameras and closed-circuit television monitoring.

53. It is reasonable to infer that Defendants Weinheimer and Gurevich saw these other persons recording and chose not initiate contact with, or to arrest, the two Caucasian males that video recorded outside the Denver District 5 Station.

54. Similarly, on January 17, 2020, two Caucasian males video recorded their experience outside of the Denver District 3 Station.

55. The Denver District 3 Station has a sign posted on the front window that is identical to the aforementioned sign at the Denver District 5 Station.

56. The two Caucasian males approached the front door and recorded the sign prohibiting video recording "in the Denver District 3 Station."

57. An officer at the Denver District 3 Station saw the auditor recording and approach the front entrance of the station, but did not confront the men.

58. The officer eventually exited the station and contacted the men as they walked

around the sidewalk further outside and around the station.

59. During the officers' contact with the men, he verbally confirmed that the two Caucasian males were legally permitted to video record outside the Denver District 3 Station.

60. These two Caucasian males left the Denver District 3 Station without being detained or arrested.

61. The only meaningful difference between Mr. Detreville and the four other Caucasian males that recorded outside of the Denver police stations is that Mr. Detreville is African-American.

### FIRST CLAIM FOR RELIEF
*42 U.S.C. §1983 Fourth Amendment Violation – Unlawful Arrest/Failure-to-Intervene*
**(Against all Defendant Officers)**

62. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

63. Plaintiff recorded his walk in public areas around the police station, from the entrance, through the sidewalk, up to the front door of the police station and recorded the Defendant Officers while in the performance of their official duties – namely, responding to requests for accommodations/complaint forms from citizens at the police station.

64. Both of the Defendant officers arrested Plaintiff for video recording and/or for protesting/criticizing that Plaintiff had the right to request names and badge numbers while recording his interaction with the officers.

65. The sign on the window at the Denver District 5 Station asserted that video recording was prohibited "in the Denver District 5 Station." However, At no point prior to Plaintiff's arrest was he "in the Denver District 5 Station."

66. Defendant Officers knew that Plaintiff's conduct did not violate the sign's prohibition because Plaintiff was video recording outside the Denver District 5 Station, rather than

"in the Denver District 5 Station."

67. Defendant Officers knew that Plaintiff's specific conduct did not violate Colorado state law because Defendant Officers knew that C.R.S. § 16-3-311 affirmatively protects "the right to lawfully record any incident involving a peace officer."

68. Based on their training regarding First Amendment protections regarding the right to record, the Defendant Officers knew that Plaintiff's act of recording the officers was constitutionally protected activity.

69. Despite knowing that Plaintiff's conduct did not violate the sign's prohibition, and despite Defendant Officers' knowledge that Plaintiff's conduct was protected by state and federal law, Defendant Officers arrested Plaintiff for "unlawful conduct."

70. At no point during the encounter was there an emergency, threat to the officers, or anything that required them to act quickly/urgently.

71. At any time during the two-minute interaction with Plaintiff or the subsequent booking process, Defendant Weinheimer had the opportunity to intervene in Defendant Gurevich's unlawful arrest of Plaintiff but failed to do so.

72. At any time during the interaction with Plaintiff, Defendant Gurevich had ample opportunity to intervene in Defendant Weinheimer's unlawful arrest of Plaintiff but failed to do so.

73. Instead of intervening to prevent the unlawful arrest of Plaintiff, both Defendant Officers chose to arrest Plaintiff without possessing any information that he committed a crime.

74. The actions as described herein of Defendant Officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from unreasonable

9

seizure as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983.

**SECOND CLAIM FOR RELIEF**
*42 U.S.C. §1983 First Amendment Violation – Retaliatory Arrest*
**(Against all Defendant Officers)**

75. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

76. At the time of the arrest, Plaintiff was engaged in constitutionally protected activity when he recorded his consensual encounter with Defendant Officers from outside the Denver District 5 Station.

77. When Defendant Weinheimer initiated contact with Plaintiff, Plaintiff was quietly standing outside the police station and holding his cell phone openly in front of him.

78. Plaintiff requested assistance with locating the accommodations/complaint forms, and he sought to video record the officers' response to this request.

79. Plaintiff only recorded Defendant Officers while standing outside on public property.

80. Plaintiff did not attempt to enter the Denver District 5 Station while video recording at any time prior to his arrest.

81. Throughout the encounter, Defendant Officers both appeared and sounded annoyed at being video recorded.

82. Defendant Weinheimer repeatedly refused to verbally state her name and badge number for the video recording.

83. Defendant Weinheimer did not want to be video recorded in public while conducting her official duties.

84. Defendant Gurevich stated that his willingness to help Plaintiff was conditioned

upon Plaintiff turning off the video recording.

85. Defendant Gurevich did not want to be video recorded in public while conducting his official duties.

86. Defendant Officers told Plaintiff that they would arrest him if Plaintiff did not stop recording.

87. In response to the threat of arrest, Plaintiff politely asserted that he believed he was engaging in conduct protected by the First Amendment.

88. Immediately, Defendant Officers responded with an exasperated "okay," then, its not ok," and arrested Plaintiff.

89. Defendant Weinheimer told Plaintiff that his conduct was not protected by the First Amendment.

90. Defendant Officers knew that Plaintiff's conduct did not violate Colorado state law.

91. Defendant Officers knew that Plaintiff's conduct was affirmatively protected by state and federal law.

92. A reasonable inference from Defendant Officers' conduct and statements immediately preceding the arrest is that Defendant Officers arrested Plaintiff as a direct response to being video recorded in public while conducting their official duties.

93. As a result of video recording Defendant Officers conducting their official duties while outside the Denver District 5 Station, Plaintiff was arrested and spent three days in jail.

94. As a result of video recording Defendant Officers conducting their official duties while outside the Denver District 5 Station, Plaintiff was charged with "unlawful conduct."

95. Defendant Officers' decision to arrest and initiate prosecution against Plaintiff came directly in response to and because of Plaintiff's reasonable exercise of his constitutionally

protected rights under the First Amendment.

96. Defendant Officers sought to punish Plaintiff for video recording his consensual encounter. As a result of this incident, Plaintiff suffered emotional, economic, and dignitary injuries. Plaintiff has lost confidence in his ability to assert the rights guaranteed to him the Constitution of the United States of America. Plaintiff fears that officers will continue to retaliate/punish him for asserting his rights in the future.

97. Such actions by Defendant Officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to record police officers engaged in official duties while in public. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other harms associated with retaliatory arrest.

## THIRD CLAIM FOR RELIEF
*42 U.S.C. §1983 Fourth Amendment Violation – Malicious Prosecution*
**(Against Defendant Gurevich in his individual capacity)**

98. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

99. Defendant Gurevich did not have probable cause to believe Plaintiff committed the crime of Unlawful Conduct, but he criminally charged Plaintiff nonetheless.

100. Defendant Gurevich claimed to have relied upon a sign posted on the window of the Denver District 5 Station as the basis for arrest.

101. The sign on the window at the Denver District 5 Station asserted that video recording was prohibited "in the Denver District 5 Station."

102. At no point prior to Plaintiff's arrest was he "in the Denver District 5 Station."

103. Defendant Officers knew that Plaintiff's conduct did not violate the sign's prohibition because Plaintiff was video recording outside the Denver District 5 Station, rather than

"in the Denver District 5 Station."

104. Defendant Gurevich knew that Plaintiff's conduct did not violate Colorado state law.

105. Defendant Gurevich knew that Plaintiff's conduct was affirmatively protected by state and federal law.

106. Despite knowing that Plaintiff's conduct did not violate the sign's prohibition, and despite Defendant Gurevich's knowledge that Plaintiff's conduct was protected by state and federal law, Defendant Gurevich arrested Plaintiff for "unlawful conduct."

107. Defendant Gurevich issued the Summons and Complaint for Plaintiff alleging "unlawful conduct on public property."

108. Defendant Gurevich knew that by issuing the Summons and Complaint he would cause Plaintiff's continued confinement in jail.

109. Defendant Gurevich knew that by issuing the Summons and Complaint he would initiate the criminal prosecution against Plaintiff.

110. On March 2, 2020, the criminal action against Plaintiff terminated in his favor when the Court dismissed the charge of Unlawful Conduct on Public Property and sealed Mr. Detreville's criminal record relating to this charge.

111. Defendant Gurevich knew from the plain reading of the sign, along with his knowledge of C.R.S. § 16-3-311, that Plaintiff was not violating the law when he recorded his interaction from outside Denver District 5 Station.

112. A reasonable inference from the lack of probable cause, combined with Defendant Gurevich's conduct and statements immediately preceding the arrest, is that Defendant Gurevich acted with malice when he unlawfully arrested, and initiated the criminal prosecution against,

Plaintiff.

113. As a result of Defendant Gurevich's conduct, Plaintiff had to endure three days in jail, along with the stress and humiliation of dealing with an unfounded criminal prosecution.

114. The actions as described herein of Defendant Gurevich, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from wrongful prosecution as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other injuries associated with malicious prosecution.

**FOURTH CLAIM FOR RELIEF**
*42 U.S.C. §1983 Fourteenth Amendment Violation – Equal Protection*
**(Against all Defendant Officers)**

115. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

116. Defendant Weinheimer knew that Plaintiff was African-American before initiating contact with him because she observed Plaintiff on the security cameras as Plaintiff walked outside the police station while video recording on his cell phone.

117. Defendant Gurevich knew that Plaintiff was African-American when he responded to Defendant Weinheimer's request for assistance and approached Plaintiff at the entryway.

118. Although Defendant Officers claimed Plaintiff violated the law by video recording "in the Denver District 5 Station," Plaintiff never video recorded in the Denver District 5 Station.

119. Upon viewing Plaintiff on the security camera, Defendant Weinheimer decided to initiate contact with Plaintiff outside the Denver District 5 Station.

120. Defendant Weinheimer claimed that she initiated contact with, and subsequently

arrested, Mr. Detreville for video recording "in the Denver District 5 Station."

121. Defendant Gurevich claimed that he arrested Mr. Detreville for video recording "in the Denver District 5 Station."

122. However, Defendant Officers had no information suggesting that Plaintiff's conduct was unlawful.

123. Defendants Weinheimer and Gurevich were on duty at the Denver District 5 Station on the nights of of November 13, 2019 and November 14, 2019.

124. On November 13, 2019, Defendant Officers observed that the male who was video recording outside the station was Caucasian when they observed him on the security camera.

125. On November 14, 2019, Defendant Officers observed that the male who was video recording outside the station was Caucasian when they observed him on the security camera.

126. Defendants Weinheimer and Gurevich chose not initiate contact with, and subsequently arrest, the two Caucasian males that video recorded outside the Denver District 5 Station on November 13, 2019 and November 14, 2019.

127. Thus, Defendant Officers' fictitious reason for Plaintiff's arrest was pretextual, and the true reason for initiating contact with Plaintiff, and subsequently arresting him, was likely that Plaintiff is African-American in a predominantly white city.

128. Defendant Officers' decision to treat Plaintiff differently than the aforementioned Caucasian males was motivated by Plaintiff's race.

129. If Plaintiff were white, he would not have been arrested by Defendant Officers.

130. As a direct and proximate result of the decision by Defendants Weinheimer and Gurevich to arrest Plaintiff based on his race, Plaintiff suffered economic harm, emotional distress, humiliation, and dignitary injuries.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in his favor and against all Defendants for compensatory damages, as referenced above, punitive damages against the individual Defendants, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees, as allowed by statute or as otherwise allowed by law, and for any other and further relief that this Court shall deem just and proper.

### PLAINTIFF DEMANDS TRIAL TO A JURY ON ALL ISSUES SO TRIABLE.

Respectfully submitted this 3rd day of March, 2021.

Civil Rights Litigation Group, PLLC

*s/ Raymond K. Bryant*
Raymond K. Bryant
Zachary L. Shiffler
1543 Champa St., Suite 400
Denver, CO 80202
P:  720-515-6165
F:  720-465-1975
Raymond@rightslitigation.com
Zach@rightslitigation.com

*Attorneys for Plaintiff*