IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00638-PAB-MEH

KEVIN DETREVILLE,

    Plaintiff,

v.

SERGEY GUREVICH, and
JULIE WEINHEIMER,

    Defendants.

---

# ORDER

---

This matter is before the Court on defendants' Motion to Dismiss [Docket No. 14], filed on May 4, 2021. Plaintiff filed a response [Docket No. 31], and defendants filed a reply [Docket No. 32]. The Court has jurisdiction under 28 U.S.C. § 1331.

## I. BACKGROUND[1]

On November 10, 2019, plaintiff Kevin Detreville approached the Denver District 5 Police Station (the "Station") "to conduct a First Amendment audit, while using his cell phone to record his experience."[2] Docket No. 1 at 1, ¶ 2. As plaintiff walked up the sidewalk toward the front door of the Station, defendant Julie Weinheimer, a police officer with the Denver Police Department, opened the front door and spoke with plaintiff

---

[1] The facts below are taken from plaintiff's complaint, Docket No. 1, and are presumed to be true for purposes of ruling on defendants' motion to dismiss.

[2] Defendants request that the Court consider the video plaintiff recorded in evaluating their motion to dismiss. Docket No. 14 at 3 n.1. Plaintiff does not oppose this request. Docket No. 31 at 1 n.1. As a result, the Court has viewed the video.

from the doorway while plaintiff stood outside the doorway.  *Id.* at 2-3, ¶¶ 9, 11-12.  Plaintiff asked Weinheimer for a complaint form.  *Id.* at 3, ¶ 12.  He then asked for her name and badge number.  *Id.*, ¶ 14.  Weinheimer did not verbally state her name and badge number, but instead handed plaintiff a card containing that information.  *Id.* at 4, ¶ 19; Dj Kdot the Party, *Unlawful arrest by Denver Police D5 01 09 2020*, YouTube (January 9, 2020), https://www.youtube.com/watch?v=Ix9QQrxW500, at 6:30-6:36 (hereinafter "Plaintiff's Video").  Weinheimer repeatedly asked plaintiff what she could help him with.  Plaintiff's Video at 6:02-6:49.  Rather than answering, plaintiff asked Weinheimer to state her name and badge number.  *Id.*  Weinheimer again told plaintiff that she just handed plaintiff a card with that information.  *Id.* at 6:46.  When plaintiff would not answer the question of what he needed, Weinheimer used her radio to ask for assistance.  *Id.* at 7:13.

Defendant Sergey Gurevich, an officer with the Denver Police Department, came to the doorway of the Station.  Docket No. 1 at 4, ¶ 20.  Plaintiff asked Gurevich for his name and badge number twice.  *Id.*, ¶¶ 21-22.  Gurevich responded by telling plaintiff, "we do not allow video recording on our property; if you do not stop recording, we will have to arrest you."  *Id.*, ¶ 23.  Weinheimer pointed to a sign in the window of the Station that read, "[n]o video recording allowed in the Denver District 5 Station without prior permission from the Chief of Police."  *Id.*, ¶¶ 24-25.

Plaintiff began to read the sign out loud and then asked defendants if he was on public property.  *Id.*, ¶ 26.  Gurevich stated that the City and County of Denver owned the property.  *Id.*, ¶ 27.  Gurevich told plaintiff to stop recording.  *Id.*, ¶ 28.  Weinheimer repeated Gurevich's instruction to plaintiff to stop recording.  *Id.* at 5, ¶ 30.  Plaintiff

2

advised defendants that he had a First Amendment right to record officers. *Id.*, ¶ 31. Defendants then arrested plaintiff. *Id.*, ¶¶ 32-33.

Based on this encounter, defendants charged plaintiff with unlawful conduct. *Id.*, ¶ 37. Plaintiff spent three days in jail based on the arrest. *Id.* at 6, ¶ 39. The District Attorney for the City and County of Denver dismissed the unlawful conduct charge against plaintiff because there was not sufficient evidence to support the charge. *Id.* at 5-6, ¶ 38.

Plaintiff is an African-American man. *Id.* at 1, ¶ 1. On November 13, 2019, three days after plaintiff's arrest, a Caucasian male walked around the Station for two hours while recording a video. *Id.* at 6, ¶ 41. The man walked past the spot where Weinheimer initiated contact with plaintiff. *Id.*, ¶ 42. A security guard approached the man and advised him that he could not take pictures of a government building and called the Police Department for assistance. *Id.*, ¶¶ 44-45. No officer initiated contact with this man, and he left without being arrested. *Id.*, ¶¶ 46-47.

A different Caucasian man walked around the Station on November 14, 2019, video recording for one hour, and walked past the spot where Weinheimer initiated contact with plaintiff. *Id.* at 6-7, ¶¶ 48-50. This man left the Station without being arrested. *Id.* at 7, ¶ 51. Both men were at the Station at around the same time of day as plaintiff and would have been seen by officers monitoring the area around the Station. *Id.*, ¶ 52.

Plaintiff brings the following claims pursuant to 42 U.S.C. § 1983: (1) unlawful arrest/failure to intervene in violation of the Fourth Amendment against both defendants; (2) retaliatory arrest in violation of the First Amendment against both defendants; (3)

3

malicious prosecution in violation of the Fourth Amendment against Gurevich only; and (4) an equal protection claim under the Fourteenth Amendment against both defendants. *Id.* at 8-15, ¶¶ 62-130. Defendants move to dismiss each of the claims pursuant to Fed. R. Civ. P. 12(b)(6) and based on qualified immunity. Docket No. 14 at 2.

## II. LEGAL STANDARD

### A. Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal quotation marks and alteration marks omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson,* 534 F.3d at 1286 (alteration marks omitted).

### B. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve

4

questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran,* 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs*., 519 F.3d 1242, 1249 (10th Cir. 2008)). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct*." T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

## III.  ANALYSIS

### A.  Claim One – Fourth Amendment Unlawful Arrest/Failure to Intervene

Plaintiff alleges that defendants violated his Fourth Amendment rights by arresting him without probable cause.  Docket No. 1 at 8-10.  Defendants respond that they had probable cause to arrest plaintiff for violating Colo. Rev. Stat. § 18-9-117 because plaintiff did not follow the directive on the sign posted in the Station window.  Docket No. 14 at 6-7.  Alternatively, defendants claim that there was arguable probable cause for plaintiff's arrest and that plaintiff's claims should be dismissed under the clearly established prong of the qualified immunity analysis.  *Id.* at 7-9.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. Amend. IV.  A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007).  An arrest requires probable cause to believe that the arrestee committed a crime.  *Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007) (en banc).

Colo. Rev. Stat. § 18-9-117(1) states:

> [i]t is unlawful for any person to enter or remain in any public building or on any public property or to conduct himself or herself in or on the same in violation of any order, rule, or regulation concerning any matter prescribed in this subsection (1), limiting or prohibiting the use or activities or conduct in such public building or on such public property, issued by any officer or agency having the power of control, management, or supervision of the building or property.  In addition to any authority granted by any other law, each such officer or agency may adopt such orders, rules, or regulations as are reasonably necessary for the administration, protection, and maintenance of such public buildings and property, specifically, orders, rules, and regulations upon the following matters: . . . (b) [r]estriction or

> limitation of the use of such public buildings or property as to time, manner, or permitted activities[.]

The statute allows a state agency to adopt rules and regulations that are reasonably necessary for the administration and protection of public buildings. *See Kerr v. City of Boulder*, No. 19-cv-01724-KLM, 2021 WL 2514567, at *19 (D. Colo. June 18, 2021). A sign posted in the window of the Station stated, "[n]o video recording allowed in the Denver District 5 Station without prior permission from the Chief of Police." Docket No. 1 at 4, ¶¶ 24-25. Defendants argue that the sign created a permissible directive under § 18-9-117(1) that plaintiff violated. Docket No. 14 at 7.

### 1. Probable Cause

A warrantless arrest is reasonable if the officer had probable cause to believe that the suspect committed a crime in the officer's presence. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). In determining whether an officer had probable cause for an arrest, a court should "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (internal quotations marks and citation omitted). Probable cause depends on the totality of the circumstances and is not a high bar. *Id.*

Defendants argue that probable cause existed for plaintiff's arrest based on Colo. Rev. Stat. § 18-9-117 because plaintiff violated the directive in the sign posted in the Station window. As the statute itself does not prohibit any conduct, *Kerr*, 2021 WL 2514567, at *19 ("The statutes, [Colo. Rev. Stat. §§ 18-9-117(1), 30-10-511, and 17-26-102] by their plain language, do not *on their own* prohibit any conduct."), the Court turns

7

to the language on the sign.  The sign in the Station window reads "[n]o video recording allowed in the Denver District 5 Station without prior permission from the Chief of Police."  Docket No. 1 at 4, ¶¶ 24-25.  The subject matter of the sign is "video recording," indicating that the sign is specific to what plaintiff was doing and what defendants ordered him to stop doing.  The sign states that there can be no video recording "in the Denver District 5 Station."  The sign does not say no recording "of the Denver District 5 Station" or no recording "of the inside of the Denver District 5 Station."  Rather, the plain language of the sign prohibits recording a video "in the Denver District 5 Station."  Docket No. 1 at 4, ¶ 25.  Defendants argue that the sign prohibited recording the inside of the Station by people located outside the Station, but do not explain how the language of the sign supports their position.  Given that the sign applies to video recording "in" the Station and plaintiff alleges, and the video supports, that he was outside of the Station, defendants had no probable cause to arrest plaintiff for violating the prohibition reflected on the posted sign.

### 2.  *Qualified Immunity*

Defendants argue that, even if they lacked probable cause to arrest plaintiff, they had "arguable" probable cause to arrest plaintiff for violation of the "no video recording" directive and therefore are entitled to qualified immunity because the officers reasonably believed the directive on the sign applied to recording from the entryway of the Station or into the Station from outside of the Station.  Docket No. 14 at 7-8.  Defendants do not claim that they arrested

plaintiff for any other reason than violating the posted sign and do not argue that there was probable cause to arrest plaintiff for any other reason.[3]

"[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120. In the Tenth Circuit, "[a]s a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d 1278, 1285 (10th Cir. 2020) (internal quotation marks and alterations omitted). Defendants are entitled to qualified immunity if they "*could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 (10th Cir. 2014) (citation omitted).

Plaintiff argues that Gurevich did not have arguable probable cause to arrest him because the sign prohibited plaintiff from recording only while inside the Station. Docket No. 31 at 11. Defendants, by contrast, argue that it was reasonable for Gurevich to conclude plaintiff was inside the "enclosed entryway/vestibule, which was a part of the station distinct from the sidewalk outside of it" and therefore to consider that plaintiff was "in" the Station. Docket No. 14 at 7-8. Defendants also argue that, even if plaintiff was

---

[3] Defendants assert that plaintiff was video recording inside an area physically distinct from the sidewalk leading to the Station, namely, a vestibule or "entranceway," Docket No. 32 at 1, and that this area is not a traditional public forum. *Id.* at 2-3. However, defendants' argument is ultimately the same, that defendants arrested plaintiff because he violated the directive on the posted sign. *Id.* at 3.

9

not "in" the Station, it would not have been unreasonable for Gurevich to interpret the posted sign as prohibiting video recording the interior of the Station. *Id.* at 8.

Defendants cite a case from the Central District of California where an individual was arrested for video recording with his cell phone in the halls of a courthouse despite an order prohibiting the use of cameras to "photograph, record or broadcast images in the court without prior court approval." *Rouzan v. Dorta*, 2014 WL 1716094, at *6 (C.D. Cal. Mar. 12, 2014). *Rouzan*, however, is distinguishable. The court interpreted the term "in the court" to prohibit "recording in any space within the building." *Id.* The plaintiff, who was within the courthouse at the time, was therefore indisputably "in the court." *Id.*

The Court has already interpreted the sign as prohibiting only the recording of videos inside of the Station. The Court further finds that a reasonable officer would not interpret the plain language of the sign to prohibit what plaintiff was doing, namely, recording outside of the Station door in a way that captured images of the inside of the Station. In *Kerr*, plaintiffs were arrested for trespassing in violation of a rule made under Colo. Rev. Stat. § 18–9–117(1). 2021 WL 2514567, at *19. Plaintiffs did not actually trespass, but the court found arguable probable cause to arrest them because the officers believed that plaintiff had crossed into the area where trespassing was prohibited. *Id.* at *20. Here, in contrast to *Kerr*, defendants knew that plaintiff had not entered the Station and therefore they had no arguable probable cause to believe he violated the sign and any regulation underlying it.

Finally, defendants argue that arguable probable cause existed for plaintiff's arrest because plaintiff was about to enter the Station and video record in violation of

10

the posted sign. Docket No. 14 at 8. However, neither the complaint nor the video supplies any factual support for the officers to have believed that, despite the officers controlling the doorway, plaintiff would get past them and record a video in the Station. *See* Docket No. 1 at 5, ¶¶ 35-36; Plaintiff's Video at 6:30-8:01.

Therefore, based on plaintiff's claim that defendants violated his clearly established right to be free of an arrest unsupported by probable cause when defendants made an unreasonable determination that plaintiff had violated the order, defendants are not entitled to qualified immunity. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1159 (10th Cir. 2008) (denying an officer's assertion of qualified immunity because the arrest was clearly outside the scope of the New Mexico disorderly conduct statute relied upon by the officer to make the arrest); *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020) (upholding district court denial of qualified immunity because, "based on the plain language of the Utah statutes, Deputy Gardner could not have reasonably believed that he had probable cause to arrest Mglej").

### B. Claim Two — First Amendment Retaliation

Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (internal quotation marks omitted). To establish a First Amendment retaliation claim, plaintiff must demonstrate (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's actions were substantially motivated as a response to plaintiff's exercise of his First Amendment speech rights. *Becker v. Kroll*, 494 F.3d

904, 925 (10th Cir. 2007). Ordinarily, a plaintiff must plead and prove the absence of probable cause for the arrest. *Id*.

Defendants argue that plaintiff's allegations fail to establish the first and third prongs of a retaliatory arrest claim. Docket No. 14 at 9. Defendants assert that recording officers is not a constitutionally protected activity and, even if it is a protected activity, plaintiff's right is subject to reasonable time, manner, and place restrictions. *Id.* Plaintiff claims that his video recording took place in a public forum and that the sidewalk he stood on was indistinguishable from the public sidewalk in the area. Docket No. 31 at 6-7.

The Tenth Circuit has ruled that there was a clearly established right to record police officers in public places as of May 2019. *Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022). At the time plaintiff was arrested in November 2019, his right to record officers in public was clearly established. To the extent defendants argue plaintiff was not in public and a reasonable restriction applied to plaintiff's right to video record, as discussed above, the Court finds that the sign only applied to video recording in the Station. Like in *Irizarry*, there is no restriction issue because no restriction applied to plaintiff's behavior. *Id.* at 1292 n.10. Accordingly, plaintiff has alleged the first element of a First Amendment violation.

Next, defendants argue plaintiff cannot establish the third element of his claim because defendants had probable cause or arguable probable cause for plaintiff's arrest. For the reasons stated above, the Court finds plaintiff's arrest was not supported by probable cause or arguable probable cause and will decline to grant defendants' motion regarding plaintiff's second claim.

12

### C. Claim Three — Fourth Amendment Violation of Malicious Prosecution

The elements of a malicious prosecution claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)). A court may infer malice if a defendant causes the prosecution without arguable probable cause. *Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014).

Defendants argue that plaintiff cannot demonstrate the third or fourth elements of his malicious prosecution claim as probable cause existed for plaintiff's arrest. Docket No. 14 at 14-15. Having found plaintiff's arrest was not supported by probable cause or arguable probable cause, the Court will infer malice at this stage. Accordingly, the Court finds that plaintiff has stated a claim against Gurevich for malicious prosecution.

### D. Claim Four — Fourteenth Amendment

Plaintiff claims that the defendants' decision to arrest him was motivated by plaintiff's race in violation of his Fourteenth Amendment rights. Docket No. 1 at 14-15 ¶¶ 115-130. In order to establish an equal protection claim based on racially selective law enforcement, a plaintiff must present evidence that an officer's actions had a discriminatory effect and were motivated by a discriminatory purpose. *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). To show a discriminatory effect, a plaintiff must "make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested . . . for the offense for

13

which" plaintiff was arrested. *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001). The discriminatory purpose element requires a showing that a discriminatory intent was a "motivating factor in the decision." *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006); *United States v. Hernandez-Chaparro*, 357 F. App'x 165, 166 (10th Cir. 2009) (unpublished) ("Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must dispel the presumption that a law enforcement official has not violated the Equal Protection Clause with 'clear evidence to the contrary.'") (citation omitted). To show a discriminatory purpose, plaintiff must show that "the decisionmakers in *his* case acted with discriminatory purpose." *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).

The complaint alleges that two Caucasian men video recorded the Station at the same time of day as plaintiff, within five days of plaintiff's arrest, and walked the same path as plaintiff. Docket No. 1 at 6-8, ¶¶ 40-61. The complaint alleges that defendants observed the Caucasian men video recording the Station, that defendants knew the men were Caucasian, and that defendants did not initiate contact with the men or arrest them. *Id.* at 15, ¶¶ 124-126. The complaint also alleges that Weinheimer knew plaintiff was African-American when she approached him, that Gurevich knew plaintiff was African-American when he responded to Weinheimer's request for assistance, and that defendants' decision to arrest plaintiff was motivated by race. *Id.* at 14-15, ¶¶ 116-117, 127. Plaintiff's complaint alleges that "[i]t is reasonable to infer that [d]efendants Weinheimer and Gurevich saw these other persons recording and chose not [to] initiate contact with, or to arrest, the two Caucasian males that video recorded outside the

14

[Station]." *Id.* at 7, ¶ 53. Plaintiff states that officers would have seen both men on the Station's video cameras and closed-circuit televisions. *Id.*, ¶ 52.

Defendants argue that there are significant factual differences between plaintiff's experience and that of the two Caucasian men because the two men did not interact with the police, Docket No. 14 at 16, whereas plaintiff did. Docket No. 1 at 15, ¶ 127. However, that is plaintiff's point, namely, that similarly-situated individuals of another race were not approached, whereas plaintiff was. Thus, the factual difference has to do with the alleged discriminatory treatment. Next, defendants argue that plaintiff's allegations regarding defendants' motivations for interacting with plaintiff and choosing not to interact with the Caucasian men are conclusory and speculative. Docket No. 14 at 17. In support, defendants cite *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018), where the Tenth Circuit found that general allegations of racial animus and discriminatory treatment were too vague and conclusory. Here, by contrast, the complaint contains detailed allegations regarding the two incidents where Caucasian men were video recording outside of the Station in comparable circumstances to plaintiff's activity, that defendants were on duty during those incidents and saw the two men, but officers chose not to approach them. Docket No. 1 at 15, ¶¶ 123-126. Accepting plaintiff's allegations as true, the Court finds that plaintiff's allegations contain enough specificity to plausibly allege an Equal Protection claim.

## IV. CONCLUSION

For the foregoing reasons, it is

15

**ORDERED** that defendants' Motion to Dismiss [Docket No. 14] is **DENIED**.

DATED December 14, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

16