**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 21-cv-00638-PAB-MEH

KEVIN DETREVILLE,

Plaintiff,

v.

SERGEY GUREVICH, and
JULIE WEINHEIMER,

Defendants.

---

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
DEFENDANT GUREVICH**

---

Plaintiff, through undersigned counsel, hereby moves for partial summary judgment regarding three claims against Defendant Gurevich, including the claims for unlawful arrest, malicious prosecution, and First Amendment retaliation. In support, Plaintiff states as follows:

**INTRODUCTION**

This civil rights case involves the unlawful arrest of Kevin Detreville, who was arrested for "unlawful conduct on public property" when he videorecorded his consensual encounter with Defendants while standing on a sidewalk outside of the Denver District 5 Police Station (the "Station"). The Station is just one building in a larger complex, known as the Arie P. Taylor Municipal Center. Defendant Gurevich arrested Mr. Detreville on the basis that Mr. Detreville was video-recording "in the Denver District 5 Station," despite the fact that Mr. Detreville was outside the Station for the entire encounter and did not enter the Station until Defendant Gurevich arrested him and escorted him inside. This Court previously viewed the video of the incident and denied qualified

1

immunity to the Defendants, holding that no reasonable police officer would have believed Mr. Detreville's conduct violated the law. Doc. 34 at 10-12. Mr. Detreville now asks this Court to hold, as a matter of law, that any reasonable factfinder would find Defendant Gurevich's conduct to be objectively unreasonable. This Court should grant partial summary judgment to Plaintiff as to liability on the claims of unlawful arrest, malicious prosecution, and First Amendment retaliation, and/or on the various narrower included issues.

## STATEMENT OF UNDISPUTED MATERIAL FACTS ("SUMF")

For the purpose of this Motion, the following relevant facts are undisputed:

1. On November 10, 2019, Mr. Detreville went to the Arie P. Taylor Municipal Center. *Plaintiff's Video*, 00:00-00:37 (**Ex. 1**).

2. The Arie P. Municipal Center is a large plaza that includes the Denver District 5 Police Station (the "Station") and several other municipal and state buildings. *Screenshot of Arie P. Taylor Municipal Center Sign* (**Ex. 10**).

3. Mr. Detreville walked around the plaza for approximately six minutes while video recording on his cell phone before arriving at the entrance to the Station. **Ex. 1**, 00:00-06:00.

4. Mr. Detreville walked along the sidewalk and eventually arrived at the only public entrance to the Station. **Ex. 1**, 05:44-06:00; *Def. Gurevich's Resp. to Pl.'s 1st RFA*, dated April 13, 2023, RFA No. 20 (**Ex. 6**); *Google Street View, the Station,* August 2019 (**Ex. 12**).

5. No sign(s) prohibiting video recording or trespassing were displayed on or near the sidewalk leading to the entrance to the Station. **Ex. 1**, 05:44-06:00.

6. Mr. Detreville was recording while standing on the sidewalk outside of the Station when Defendant Weinheimer approached Mr. Detreville from the inside. **Ex. 1**, 06:01.

7. Mr. Detreville never attempted to enter the Station. *Id.* at 00:00-08:01; *Body Worn Camera*

("BWC") of *Weinheimer*, 00:00-00:50 (**Ex. 2**); *BWC of Gurevich*, 00:28-01:08 (**Ex. 3**).

8.  Defendant Weinheimer opened the door and asked Mr. Detreville if he needed assistance. **Ex. 1**, 06:01; *DPD General Offense Report*, dated Nov. 10, 2019, at 14-15 (**Ex. 4**).

9.  Mr. Detreville asked Defendant Weinheimer where to find a commendation/complaint form and then asked for her name and badge number. **Ex. 1**, 06:11-06:29.

10. Defendant Weinheimer radioed for assistance, and Defendant Gurevich entered the Station lobby from an interior door. **Ex. 1**, 07:10-07:26; **Ex. 3**, 00:28-00:32.

11. When Defendant Gurevich approached the Station entrance from inside the lobby, Mr. Detreville stood approximately 2-3 feet from the entrance. *Statement of Probable Cause of Def. Gurevich*, dated Nov. 10, 2019, p. 9, ¶ 3, line 1-2 (**Ex. 5**); **Ex. 3**, 00:28-00:32.

12. When Defendant Gurevich arrived, Mr. Detreville greeted him and asked for his name and badge number. **Ex. 1**, 07:25-07:26.

13. Rather than stating his name and badge number, Defendant Gurevich told Mr. Detreville, "We do not allow recording on our property. If you do not stop recording, we will have to arrest you." **Ex. 1**, 07:26-07:33; **Ex. 3**, 00:30-00:42.

14. Weinheimer pointed towards a sign (the "Sign") in the window stating, "No video recording is allowed in the Denver Police District 5 Station without prior permission from the Chief of Police." **Ex. 3**, 00:42-00:46; *Photos of the Sign* (**Ex. 9**); **Ex. 1**, 07:33-07:41.

15. The Sign was posted inside the window, directly to the right of the entrance, and facing out so that the public could view it before entering the Station. **Ex. 9** at 1; **Ex. 1**, 07:33-07:41.

16. Defendants Gurevich and Weinheimer blocked the doorway while interacting with Mr. Detreville. **Ex. 1**, 05:44-08:01; **Ex. 2**, 00:00-00:50; **Ex. 3**, 00:30-01:08.

17. Mr. Detreville was not "*in* the Denver Police District 5 Station" when he was recording the interaction with Defendants. **Ex. 1**, 05:44-08:01; **Ex. 2**, 00:00-00:50; **Ex. 3**, 00:30-01:08; **Ex. 7** at 91:16-92:01 ("He was outside the front door.").

18. Defendant Gurevich told Mr. Detreville that he was on property owned by the City and County of Denver and ordered Mr. Detreville to stop recording. **Ex. 3**, 00:49-00:58.

19. Defendant Gurevich told Mr. Detreville, "Please stop recording, and we can help you out." **Ex. 1**, 07:44-07:46; **Ex. 3**, 00:52-00:56; **Ex. 6**, No. 18; **Ex. 5**, No. 18.

20. Defendants did not tell Mr. Detreville that he could continue recording further away from the door. **Ex. 1**, 05:44-08:01; **Ex. 3**, 00:30-01:08; **Ex. 2**, 00:00-00:50.

21. Mr. Detreville informed Defendants that he had a First Amendment right to record the officers as he was doing. **Ex. 1**, 07:54-08:01; **Ex. 3**, 01:02-01:05.

22. In response to Mr. Detreville's assertion of his First Amendment right to record, Defendant Weinheimer said, "It's not actually." **Ex. 1**, 07:54-08:01; **Ex. 3**, 01:05-01:08.

23. Defendant Gurevich arrested Mr. Detreville as he asserted his First Amendment right. **Ex. 1**, 07:54-08:01; **Ex. 3**, 01:05-01:08.

24. Defendant Gurevich arrested Mr. Detreville because he recorded the officers while on public property. **Ex. 2**, 00:40-00:46; **Ex. 1**, 07:54-08:01; **Ex. 3**, 01:05-01:08.

25. Mr. Detreville was arrested approximately two minutes after being contacted by Defendant Weinheimer. **Ex. 1**, 06:01-08:01.

26. Mr. Detreville did not enter the Station until after he was arrested. **Ex. 1**; **Ex. 3**; **Ex. 7** at 91:16-92:01 ("He was outside the front door.")

27. Mr. Detreville never made any threats. **Ex. 1**; **Ex. 3**.

28. Mr. Detreville stood on the sidewalk to the side of the door, recording the Defendant Officers

while they were performing their official duties when he was arrested. **Ex. 1**, 06:01-08:01; **Ex. 3**; **Doc. 39**, ¶ 63.

29. Mr. Detreville never blocked the entrance of the Station. **Ex. 1**; **Ex. 2**; **Ex. 3**.

30. Defendant Gurevich charged Mr. Detreville with Unlawful Conduct on Public Property. **Ex. 5**; *Signed Unified Summons and Complaint* (**Ex. 14**).

31. Detreville spent three days in jail. *Docket Report & Sealing Order* (**Ex. 13**).

32. On March 2, 2020, the criminal case against Detreville was dismissed. **Ex. 13**.

33. Prior to Plaintiff's arrest, Defendant Gurevich received specific training on the First Amendment and procedures for encountering First Amendment auditors. *Denver Police Department Training Bulletin First Amendment and Free Speech*, dated June 6, 2019 (**Ex. 11**);

34. Defendant Gurevich was trained that "all citizens have the right to record police officers in public places." **Ex. 11**, p. 1, ¶ 3.

35. Defendant Gurevich was trained that "unless there is a verbal threat of violence, content of speech can never be the basis for contact." **Ex. 11**, bottom of p. 1.

36. Defendant Gurevich was trained that "unless recording is specifically prohibited, individuals may not be prevented from recording in public places or within government buildings.*" Id.* at 1, ¶ 3.

37. Defendant Gurevich was trained on what speech is protected and not protected and given tips and practical guidance on what to do in this situation. **Ex. 11**.

38. Defendant Gurevich was given three individuals' names from the Denver City Attorney's Office and phone numbers to call "before taking action." **Ex. 11**, p. 3.

39. Defendant Gurevich consciously disregarded his First Amendment training when he arrested Mr. Detreville. **Ex. 7** at 229:14-235:22 (testifying that he thought about the First Amendment training bulletin during the incident but concluded it "did not apply").

## STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine dispute as to material facts, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The court may not weigh conflicting evidence and must view the evidence in the light most favorable to the nonmoving party. *Id.* at 255.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Id.* at 322–23. If the moving party meets its initial burden, the opposing party can only survive summary judgment by "set[ting] forth specific facts showing that there is a genuine issue for trial" in order to defeat the motion. Fed. R. Civ. P. 56(e). When there is a "lack of dispute over the historical, predicate facts," summary judgment is appropriate. *Cortez v. McCauley*, 478 F.3d 1108, 1120-21 (10th Cir. 2007); *see also Harbin v. City of Albuquerque*, No. CIV 05-550 LCS/RLP, 2006 WL 8444308, at *7 (D.N.M. Apr. 11, 2006) (granting summary judgment to plaintiff on unlawful arrest claim); *Dwight v. City of Albuquerque*, No. CV 15-907 JAP/SCY, 2016 WL 9777257, at *11 (D.N.M. Sept. 22, 2016) (same).

## ARGUMENT

**I.   Defendant Gurevich violated Mr. Detreville's Fourth Amendment rights when he arrested Mr. Detreville without probable cause.**

The Fourth Amendment provides that the "right of the people to be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. Amend. IV. A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means. *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989). "[T]he touchstone of [the court's] analysis under the Fourth Amendment is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *U.S. v. Windom*, 863 F.3d 1322, 1327 (10th Cir. 2017) (quoting *Terry v. Ohio*, 392 U.S. 1, 19 (1968)). Whether officers have acted "reasonably" is a "legal determination" in the absence of disputed material facts. *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001).

An arrest requires probable cause to believe that the arrestee committed a crime. *Cortez*, 478 at 1115-16. Probable cause exists when there is "reasonably trustworthy information that would lead a reasonable officer to believe that the person about to be arrested has committed or is about to commit a crime." *Id.* at 1116. The assessment of probable cause is based on what the officer knew at the time of the arrest, and requires a "substantial probability" that the suspect committed a crime. *See id.*; *see also Kerns v. Bader*, 663 F.3d 1173, 1188 (10th Cir. 2011). Furthermore, "[i]t goes without saying that a government official may not base h[is] probable cause determination on an unjustifiable standard, such as speech protected by the First Amendment." *Mink v. Knox*, 613 F.3d 995, 1003-04 (10th Cir. 2010).

> **a.    There were no facts that would lead an objectively reasonable officer to believe a substantial probability existed that Mr. Detreville committed a crime.**

By arresting Mr. Detreville for Unlawful Conduct on Public Property per the Sign's directive, Defendant Gurevich claimed there was probable cause to believe that Mr. Detreville was video recording "*in* the Denver Police District 5 Station." **Ex. 9**. However, the record is devoid of facts that would lead a reasonable person to reach such a conclusion.

On the evening of November 10, 2019, Mr. Detreville arrived at the Arie P. Municipal Center to conduct a First Amendment audit. **Ex. 1**, 00:20-01:05. Mr. Detreville was curious whether his First Amendment rights would be respected. *Id.* He recorded himself walking the plaza grounds, making observations of his surroundings, and eventually followed the sidewalk to the Station's public entrance where the incident occurred. *Id.* at 0:00-05:50.

Before Mr. Detreville reached the Station's front door, Defendant Weinheimer confronted him. **Ex. 1,** 06:01-06:10. Mr. Detreville politely greeted her and asked where he could find the commendation/complaint forms. *Id.* at 06:01-06:19. When Defendant Weinheimer contacted Mr. Detreville, she had no specific articulable facts sufficient to form a reasonable suspicion (nor probable cause) that Mr. Detreville had committed a crime. *See* **Ex. 4** at 14-15; *see also* **Ex. 7** at 258:01-11; **Ex. 8** at 51:02-08. Therefore, this interaction can only be characterized as a consensual encounter. *Florida v. Royer,* 460 U.S. 491, 497–98 (1983).

In a respectful tone, Mr. Detreville asked for Defendant Weinheimer's name and badge number, but rather than verbalizing this information, she handed him a card. **Ex. 1**, 06:29-07:10. Mr. Detreville repeated his request for her to verbally state her name and badge number. *Id.* Growing frustrated, Defendant Weinheimer radioed Defendant Gurevich for assistance. *Id.* at 07:10 ("501, can you come out here?").

When Defendant Gurevich arrived at the doorway to the Station, Mr. Detreville stood approximately 2-3 feet outside the Station entrance, noticeably not blocking the door. *Id.*; **Ex. 5**, ¶ 2, line 1-2; **Ex. 3** at 00:28. He was standing on the sidewalk, to the side of the door, while Defendant Weinheimer stood in the doorway. **Ex. 3** at 00:28. Defendant Gurevich positioned himself in the middle of the doorway, blocking both egress and ingress to the Station's public entrance. *Id.*; **Ex. 6**, No. 20. Mr. Detreville greeted him and asked for his name and badge number. **Ex. 1** at 07:25-07:28.

8

Instead of identifying himself, Defendant Gurevich stated, "We do not allow video recording *on our property*; if you do not stop recording, we will have to arrest you." **Ex. 1** at 07:29-07:41. Although Defendant Weinheimer had not raised the issue prior, she doubled down on Defendant Gurevich's incorrect statement by pointing toward the Sign posted on the window's interior (adjacent to the doorway) and asserting, "It's written right there." *Id.* However, the Sign read: "No video recording allowed in the Denver District 5 Station without prior permission from the Chief of Police." **Ex. 9**.

Confused by the Sign's plain language objectively contradicting the Defendants' statements, Mr. Detreville asked whether the sidewalk he was standing on was public property. **Ex. 1**, 07:41-07:48. Defendant Gurevich confirmed that he was on public property and stated, "Please stop recording, and we can help you out. Don't make me arrest you." *Id.* All this being communicated in such rapid succession, Mr. Detreville asked Defendant Gurevich to repeat himself, which caused Defendant Gurevich to become visibly frustrated. *Id.*

Mr. Detreville informed the Defendants that what he was doing (filming the police in public) was protected by the First Amendment. *Id.* at 07:48-08:01; *see also Irizarry v. Yehia*, 38 F.4th 1282, 1292 (10th Cir. 2022). In response, Defendant Weinheimer stated, "It's not actually," as Defendant Gurevich grabbed Mr. Detreville's arms, handcuffed his wrists, and arrested him. **Ex. 1**, 07:48-08:01; **Ex. 3**, 00:52-01:08; **Ex. 5**. However, before his arrest, Mr. Detreville was never *in* the Station, nor recording *inside*. **Ex. 1**; **Ex. 3**. Under the totality of the circumstances, Mr. Detreville's arrest was unsupported by probable cause because there were no facts to support the assertion that Mr. Detreville violated the Sign's directive.

> **b.      Defendant Gurevich's interpretation of the Sign's directive was objectively unreasonable.**

The Sign's "language is unmistakably clear." *See Mglej v. Gardner*, 974 F.3d 1151, 1165 (10th

Cir. 2020). The Sign unambiguously prohibits videorecording "in the Denver District 5 Station." **Ex. 9**. Any other interpretation of the Sign defies common sense and is objectively unreasonable. *See* Doc. 34 at 7-11.

Colo. Rev. Stat. § 18-9-117, by its plain language, does not *on its own* prohibit any conduct. Instead, the statute grants those "having the power of control, management, or supervision of" a government building the authority to proscribe reasonable regulations necessary for the administration and protection of the facility. Colo. Rev. Stat. § 18-9-117(1). Further, the statute conditions criminal penalties on the rule violator being given notice and that such notice be prominently posted at the entrance of the building or property. *See Id.* at (2).[1]

The Sign was displayed in the window, facing out to the public, directly to the right of the Station's public entrance rather than further out in front of the station (e.g., on the Arie P. Taylor Municipal Center sign at the entrance to the plaza). **Ex. 1**, 07:33-07:41; **Ex. 10**. Functioning precisely as intended, the Sign's plain language and purposeful placement notified those about to enter the Station that videorecording in the Station is prohibited. *Cf.*, *Kerr v. City of Boulder*. No. 19-cv-01724-KLM, WL 2514567, at *2 (D. Colo. June 18, 2021) ("These signs indicated that certain sidewalks on the Jail grounds were restricted, and Plaintiffs chose to not go beyond those signs or into those restricted areas."). Plaintiff never went beyond the sign to do anything inside.

Conversely, Defendant Gurevich appears to have derived multiple interpretations of the Sign. **Ex. 1**, 07:26-07:33; **Ex. 5**, ¶ 2. First, there is his statement, "We do not allow recording on our

---

[1] Similar provisions are common in laws governing the use of signs. *See, e.g.*, Colo. Rev. Stat. § 42-4-616 ("[A] wildlife crossing zone" means an area on a public highway that: (a) Begins at a sign that conforms to the state traffic control manual … and indicates that a person is about to enter a wildlife crossing zone[.]"); Denver Muni. Code § 38-115(b)(3) ("[The area] is posted with signs which give notice that entrance is forbidden.").

property." **Ex. 1**, 07:26-07:33; **Ex. 3**, 00:30-00:42. This statement is an objectively unreasonable interpretation of the Sign. It suggests that anywhere on the surrounding property is "in" the station. It implies that the Sign's placement immediately next to the door in which recording is prohibited is entirely arbitrary and that those who get close enough to view the sign may already be violating it by recording to that point. However, the Sign's location and wording preclude a reasonable interpretation that it prohibited video recording *everywhere on the property*.

Defendant Gurevich offered a different interpretation of the Sign when he completed the probable cause affidavit for Mr. Detreville's arrest. Rather than include any reference to his "on our property" interpretation, Defendant Gurevich asserted that filming the interior of the Station lobby from the outside is prohibited. **Ex. 5**, ¶ 2 ("clearly filming into the building"). At deposition, Defendant Gurevich offered even more interpretations of the wording of the Sign and/or its intended prohibition: "We cannot allow video recording outside, in the police station" (22:01); "No video recording is allowed inside of the Police District 5 Station" (205:12); "No video recording of the Denver Police District 5 Station" (309:01). Defendant Gurevich misstated the Sign each time he was asked about it. To date, there is no record of Defendant Gurevich accurately identifying the Sign's prohibition. This demonstrates how unreasonable and/or reckless he has been with regard to Plaintiff and his rights. This Court has previously considered and rejected these interpretations of the Sign, and it should do so again. Doc. 34 at 10 ("A reasonable officer would not interpret the plain language of the Sign to prohibit what the plaintiff was doing."). "[B]ased on the plain language of the [Sign], [Defendant Gurevich] could not have reasonably believed that he had probable cause to arrest" Mr. Detreville for violating C.R.S. § 18-9-117. *See Mglej*, 974 F.3d at 1164. No reasonable factfinder would conclude that Defendant Gurevich's original or various interpretations of the Sign were objectively reasonable.

**c.     The First Amendment and Colorado Law affirmatively protected Mr. Detreville's conduct.**

Adding to the unreasonableness of Defendant Gurevich's conduct, Mr. Detreville was engaged in both constitutionally and statutorily protected activity at the time of his arrest. The First Amendment right to video record police officers performing their official duties in public was clearly established at the time of Mr. Detreville's arrest. *Irizarry*, 38 F.4th at 1292; Doc. 34 at 12; *see also* Section **II. a**. Furthermore, Colo. Rev. Stat. § 16-3-311(1) has affirmatively protected "the right to lawfully record any incident involving a peace officer" since 2016. Here, Mr. Detreville was on public property while recording the police performing official duties. *See* Doc. 39 at ¶ 63 ("they were in the performance of their official duties"); **Ex. 14** at 1 ("Unlawful Conduct on Public Property"). Defendant Gurevich knew of, and recklessly disregarded, these rights when he arrested Mr. Detreville.

**d.     Defendant Gurevich consciously disregarded specific training relating to First Amendment auditors when confronting Mr. Detreville, a First Amendment auditor.**

Defendant Gurevich received training that specifically applied to this situation. *See* **Ex. 11**. Defendant Gurevich was trained that the First Amendment protects a person's right to video record officers engaged in their official duties while in a public space. **Ex. 11** at 1, ¶ 3. He knew that "unless recording is specifically prohibited, individuals may not be prevented from recording in public places or within government buildings." *Id.* He was provided with at least eight examples of situations where certain kinds of conduct engaged in by an auditor could exceed the First Amendment protections and provide an officer independent justification to arrest for other crimes. But, none of those situations occurred in this case. *See, e.g.,* **Ex. 11** at 2 ("CONDUCT"). Additionally, he was provided with examples of clear instructions to give. *Id.* at 3 ("You may continue to record, but I need you to move away from this area[.]"). He was trained to determine the minimum amount of space needed to feel safe, complete his duties, and then advise the person accordingly. *Id.* And, if he was unsure of how to

proceed, he was provided with no less than three phone numbers for City Attorneys to call *before taking action*. *Id.* at p. 3.

Defendant Gurevich failed to utilize any of his First Amendment training because he concluded it was irrelevant. **Ex. 7** at 229:14-235:22. He testified that he remembered *and considered* his First Amendment training prior to making the arrest, but concluded it did not apply to Mr. Detreville's situation. *Id.* In disregarding his training, Defendant Gurevich made no attempt to, for example, tell Mr. Detreville that he could continue video recording elsewhere on the property – which, according to one of Defendant Gurevich's interpretations of the sign, merely required Mr. Detreville to take a few steps back. *Id.* at 65:06 ("he could have taken three steps back"). Defendant Gurevich also disregarded the resources provided to him in his First Amendment training. The training bulletin listed three Denver City Attorneys to call "before taking action," but Defendant Gurevich chose to not contact any of them. **Ex. 11** at 3. Despite the absence of any time pressures or need for urgency (**Ex. 7** at 138:01-03), Defendant Gurevich disregarded his training, and unreasonably used his arrest powers to end the encounter within <u>forty seconds</u> of contacting Mr. Detreville. **Ex. 1** at 07:19-08:01.

In sum, Mr. Detreville's arrest was unsupported by probable cause. Defendant Gurevich's interpretation of the Sign, his disregard for constitutional and state law, and his failure to utilize his training make his conduct clearly and objectively unreasonable. No reasonable factfinder could conclude otherwise. Therefore, Mr. Detreville is entitled to judgment as a matter of law regarding the absence of probable cause and the unlawful arrest claim.

## II. Defendant Gurevich unlawfully arrested Mr. Detreville in retaliation for Mr. Detreville exercising his First Amendment rights to videorecord the officers performing their duties in public.

"[T]he First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019)

(internal quotation marks omitted). To prevail on a First Amendment retaliation claim, a plaintiff must demonstrate that (1) he was engaged in a constitutionally protected activity; (2) the defendant's action caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's actions were substantially motivated as a response to the plaintiff's exercise of his First Amendment speech rights. *Irizarry*, 38 F.4th at 1288. Ordinarily, a plaintiff must also show the absence of probable cause for the arrest. *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007).

> **a.      Mr. Detreville was engaged in conduct protected by the First Amendment when he video-recorded Defendant Officers during their consensual encounter while outdoors at the Arie P. Taylor Municipal Center.**

It is well settled that "there is a First Amendment right to film the police performing their duties in public." *Irizarry*, 38 F.4th at 1292. When Mr. Detreville was arrested, he was merely doing what the Tenth Circuit confirmed he could do. *See id.*; *see also* **Ex 1**. Mr. Detreville was videorecording in a "quintessential" public space – a public sidewalk. *See Hawkins v. City & Cty. Of Denver*, 170 F.3d 1281, 1286-87 (10th Cir. 1999) (citing Perry, 460 U.S. at 45)); *see also* **Ex. 1** at 07:40-07:46. Defendants were in full uniform and admitted that Mr. Detreville recorded them while performing their official duties. *See* **Ex. 1**; *see also* Doc. 39 at ¶63. And, "[l]ike in *Irizarry*, there is no restriction issue because no restriction applied to Mr. Detreville's behavior." Doc. 34 at 12 (citing 38 F.4th at 1292 n.10). Thus, Mr. Detreville was engaged in constitutionally protected activity as a matter of law. *Irizarry*, 38 F.4th at 1292.

> **b.      Defendant Gurevich's arrest of Mr. Detreville would chill a person of ordinary firmness from videorecording the police while in public.**

An "injury" is an adverse consequence that the plaintiff suffers at the hands of the defendant. *Irizarry*, 38 F.4th at 1288, n. 6 (citing *Van Deelen v. Johnson*, 497 F.3d 1151, 1157 (10th Cir. 2007). The

standard for evaluating the chilling effect on speech is objective. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). "[P]ursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity." *Esparza*, 523 F.App'x at 536 (unpublished) (citing *Worrell*, 219 F.3d at 1212); *Van Deelen*, 497 F.3d at 1157-58 ("Some [chilling] actions may be easy to identify—an arrest, a prosecution[.]").

By arresting Mr. Detreville without probable cause, *see* Section **I.**, Defendant Gurevich caused Mr. Detreville to suffer an injury that would chill a person of ordinary firmness from continuing to exercise their First Amendment right. *See Esparza*, 523 F.App'x at 536; *see also Sexton v. City of Colorado Springs*, 530 F.Supp.3d 1044, 1066 (D. Colo. 2021). Although this is enough to chill speech on its own, Mr. Detreville's injury also included spending three days in jail and being subjected to a criminal prosecution over three months. **Ex. 13** at 1-3. Accordingly, Plaintiff asks the Court to find, as a matter of law, that the injuries Defendant Gurevich caused Mr. Detreville to suffer would chill a person of ordinary firmness from filming the police performing their duties in public.

### c.   Defendant Gurevich's decision to arrest Mr. Detreville was substantially motivated by Mr. Detreville videorecording Defendant Officers in public.

The Supreme Court has held that an arrest is "motivated by" retaliatory animus if it was the "but-for cause" of the unlawful arrest. *Nieves*, 139 S.Ct. 1715, 1724-25 (2019) (quotation omitted); *see also Worrell v. Henry*, 219 F.3d 1197, 1215 (10th Cir. 2000) ("[D]efendant's intent is the key element."). Additionally, the Tenth Circuit has recognized that the close temporal proximity between protected speech and an arrest without probable cause can give rise to the strong inference that the arrest was substantially motivated by the protected activity. *See, e.g.*, *Esparza*, 523 F.App'x at 536 ("Because the proximity of these events suggests a retaliatory motive towards Mrs. Esparza's protected activity, she has successfully alleged a constitutional violation."); *Lauck v. Campbell Cty.*, 627 F.3d 805, 815 (10th

Cir. 2010); *Bueno v. Chekush*, 355 F.Supp.3d 987, 995 (D. Colo. 2018).

It is indisputable that Defendant Gurevich arrested Mr. Detreville because he would not stop videorecording. **Ex. 7** at 42:07-11 ("All he had to do was stop recording."); **Ex. 5** at 1 ("He was advised that if he doesn't stop recording, he will be arrested."). Put another way, "had he stopped filming, he would not have been arrest." **Ex. 7** at 136:08. The undisputed facts show that Defendant Gurevich's decision to arrest Mr. Detreville was substantially motivated by the fact that the encounter was being videorecorded.

Further illustrating Defendant Gurevich's motivation, the close temporal proximity between Mr. Detreville engaging in constitutionally protected conduct and his arrest without probable cause, *see* Section **I.**, demonstrates that Defendant Gurevich's decision to arrest Mr. Detreville was substantially based on a retaliatory motive. *See Esparza*, 523 F.App'x at 536 (agreeing with district court that plaintiff's complaints and arrest without probable cause supported a strong inference that defendant was motivated by the complaints). Although Defendant Gurevich started the interaction by asking how Mr. Detreville could be helped, once he saw the phone, he became singularly focused on stopping Mr. Detreville from filming the encounter. **Ex. 1** at 07:24-07:33. Defendant Gurevich was so intent on stopping Mr. Detreville from exercising his First Amendment right that he was willing to recklessly misstate the law – despite the fact that the correct words were clearly written on the Sign in front of him. *See, e.g.,* **Ex. 1** at 07:24-07:33 ("We do not allow recording on our property. If you do not stop recording, we will have to arrest you."). Defendant Gurevich did not ask Mr. Detreville to step back from the door, walk away from underneath the awning, or otherwise warn him that recording the interior of the Station's lobby from the outside was prohibited. **Ex. 1**. The only option Defendant Gurevich gave Mr. Detreville was to stop recording or be arrested. *Id.* at 07:42-07:47. Mr. Detreville asserted his conduct was constitutionally protected and was instantaneously arrested, all

within the span of approximately forty seconds. *Id.* Thus, there is a direct nexus between the protected activity and the arrest.

The undisputed material facts, including (1) Defendant Gurevich's stated reason for the arrest (i.e., because of the video recording), (2) the absence of probable cause, and (3) the close temporal proximity between Mr. Detreville's protected speech and arrest, lead to only one reasonable conclusion: the "but-for cause" of the arrest was the videorecording. In sum, based on the undisputed material facts, this Court should hold as a matter of law that Plaintiff has established the three elements necessary to prevail on his retaliatory arrest claim. Because no reasonable juror could conclude otherwise, Plaintiff is entitled to judgment as a matter of law.

## III. Defendant Gurevich violated Mr. Detreville's Fourth Amendment rights by wrongfully causing Mr. Detreville's criminal prosecution.

The elements of a malicious prosecution claim are: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (internal citation omitted).

### a. Defendant Gurevich caused Mr. Detreville's prosecution and continued confinement by arresting Mr. Detreville and submitting the warrantless arrest affidavit.

Defendant Gurevich arrested Mr. Detreville without probable cause. *See* Section **I**. **a**. He placed him in handcuffs, walked him into a cell at the Station, and completed and signed a warrantless arrest affidavit. **Ex. 3**, 00:30-01:40; **Ex. 5**. As a matter of law, Defendant Gurevich's conduct was the cause of and "an inseparable basis for the charges against" Mr. Detreville. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1291–92 (10th Cir. 2004) (agreeing with the district court that "[i]f Defendant was

instrumental in Plaintiff's continued confinement or prosecution, she cannot escape liability"); *Bledsoe v. Carreno*, 53 F.4th 589, 614 (10th Cir. 2022). Accordingly, this Court should hold as a matter of law that Plaintiff has established the first element for the malicious prosecution claim.

      **b.**    **The criminal case against Mr. Detreville was dismissed.**

Under *Thompson v. Clark*, a plaintiff need only show that the criminal prosecution ended without a conviction to meet the second element of a malicious prosecution claim. 596 U.S. 36, 49 (2022). On March 2, 2020, the criminal case against Mr. Detreville was dismissed via motion by the District Attorney. **Ex. 13** at 2. Thus, the undisputed facts show that Plaintiff is entitled to judgment as a matter of law with respect to the second element.

      **c.**    **Defendant Gurevich arrested Mr. Detreville without probable cause.**

As the above analysis extensively shows, Defendant Gurevich arrested Mr. Detreville without probable cause. *See* Section **I**. Based on the undisputed material facts, no reasonable factfinder could conclude that Mr. Detreville violated the Sign's prohibition. As such, the Court should hold, as a matter of law, that the arrest lacked probable cause.

      **d.**    **Defendant Gurevich acted with malice when he arrested Mr. Detreville without probable cause.**

There are several ways to show malice in the malicious prosecution context. Historically, malice "was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice." *Thompson*, 596 U.S. at 44; *Montgomery Ward & Co. v. Pherson*, 129 Colo. 502, 509 (Colo. 1954); *see also Mglej*, 974 F.3d at 1171 n.14. Additionally, malice may be inferred if a defendant causes the prosecution without arguable probable cause or acted with reckless disregard for the truth. *See Stonecipher*, 759 F.3d at 1146; *see also Wilkins*, 528 F.3d at 800-01; *Sanchez v. Hartley*,

810 F.3d 750, 758 (10th Cir. 2016) (holding that detectives would incur liability for malicious prosecution if they "knowingly or recklessly used false information to institute legal process").

Here, Mr. Detreville was arrested without probable cause. *See* Section **I**. In doing so, Defendant Gurevich consciously disregarded his training and included false information in his police report, thereby acting with reckless disregard for the truth and Mr. Detreville's rights. *See* Section **I**. **d**.; *compare* **Ex. 5** at 1 ("I informed him that it is illegal to video tape *inside* the District 5 police station") *with* **Ex. 1** at 07:26-07:41("We do not allow video recording *on our property*; if you do not stop recording, we will have to arrest you."). Rather than being driven by a law enforcement purpose, Defendant Gurevich's retaliatory motive in stopping the recording outside of the station was the "but-for" cause of the arrest. *See* Section **II**. **c**.; *see also Barton v. City & Cty. of Denver*, 432 F. Supp. 2d 1178, 1194–95 (D. Colo. 2006), *aff'd*, No. 06-1536, 2007 WL 3104909 (10th Cir. Oct. 24, 2007). In other words, Defendant Gurevich arrested Mr. Detreville for the purpose of stopping the videorecording outside of the limitations of the law, which cannot reasonably be confused with the legitimate law enforcement purpose of stopping someone from recording "in" the station. **Ex. 1** at 07:29-07:41. Such a retaliatory motive is plainly inconsistent with merely bringing Mr. Detreville to justice.

Thus, every reasonable juror would conclude that Defendant Gurevich acted with malice. There is no genuine dispute regarding this material fact. The Court should hold that Defendant Gurevich acted with malice (i.e., recklessly), as a matter of law. *See, e.g., DeLoach v. Bevers*, 922 F.2d 618, 622-23 (10th Cir. 1990) (finding sufficient evidence to support jury's recklessness determination where officer included numerous affirmative misstatements and omissions and made statements indicative reckless conduct).

### e.    Mr. Detreville sustained damages as a result of the wrongful prosecution.

As a result of Mr. Detreville's wrongful prosecution, he sustained damages, including spending

three days in jail and emotional distress from being unlawfully handcuffed, shackled, and prosecuted for engaging in a constitutionally protected activity. **Ex. 3**; **Ex. 5**; **Ex. 13**. No reasonable juror would conclude otherwise. While a jury should be permitted to find the value of such damages, Plaintiff respectfully requests this Court to find that he sustained damages, thereby establishing the fifth element for the malicious prosecution claim, as a matter of law.

**<u>CONCLUSION</u>**

**WHEREFORE**, Plaintiff respectfully requests the Court enter an Order of Partial Summary Judgment regarding the three claims against Defendant Gurevich, including the claims for unlawful arrest, malicious prosecution, and First Amendment retaliation.

Dated this 6th day of February, 2024.

Civil Rights Litigation Group

*<u>s/ Zachary L. Shiffler</u>*
*<u>s/ Raymond K. Bryant</u>*
Zachary L. Shiffler
Raymond K. Bryant
Civil Rights Litigation Group, PLLC
1543 Champa St., Ste. 400
Denver, CO 80202
T: (720) 515-6165
F: (303) 534-1949
zach@rightslitigation.com
raymond@rightslitigation.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 6th day of February, 2024, a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANT GUREVICH** was electronically sent to the following:

Honor K. Moore
Andres Alers
Denver City Attorney's Office
Civil Litigation Section
201 W. Colfax Ave., Dept. 1108
Denver, Colorado 80202
P: (720) 913-3100
F: (720) 913-3155
Honor.moore@denvergov.org
Andres.alers@denvergov.org
*Attorneys for Defendants*

*s/ Zachary L. Shiffler*

21