IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 21-cv-00638-PAB-MEH

KEVIN DETREVILLE,

> Plaintiff,

v.

SERGEY GUREVICH, and
JULIE WEINHEIMER,

> Defendants.

_____

## ORDER
_____

This matter is before the Court on Plaintiff's Motion for Partial Summary

Judgment Against Defendant Gurevich [Docket No. 71] filed by plaintiff Kevin Detreville,

and Defendants' Cross Motion for Summary Judgment [Docket No. 77] filed by Officer

Sergey Gurevich and Officer Julie Weinheimer (collectively, the "defendants").  The

Court has jurisdiction pursuant to 28 U.S.C. § 1331.  This case arises out of Mr.

Detreville's arrest on November 10, 2019.

## I.    BACKGROUND[1]

On November 10, 2019, Mr. Detreville, a Black man,[2] went to the Arie P. Taylor

Municipal Center.  Docket No. 71 at 2, ¶ 1.  The Arie P. Taylor Municipal Center is a

_____

[1] The following facts are undisputed unless otherwise indicated.
[2] Neither party included the fact that Mr. Detreville is a Black man in the undisputed fact sections of their briefs.  However, the Court finds that the parties do not dispute that Mr. Detreville is a Black man.  *See* Docket No. 1 at 1, ¶ 1 (stating that Mr. Detreville is an "African-American male"); Docket No. 80 at 18 (stating that plaintiff is "African-American"); Docket No. 77 at 14 (stating that Mr. Detreville is "Black").

large plaza that includes the Denver District 5 Police Station (the "Station") and several other municipal and state buildings.  *Id*., ¶ 2.  Mr. Detreville walked around the plaza, while filming with his cell phone, for approximately six minutes.  *Id*., ¶ 3.  While filming, Mr. Detreville walked along the sidewalk and arrived at the only public entrance to the Station.  *Id*., ¶ 4; Docket No. 77 at 2, ¶ 3.  On the sidewalk leading up to the entrance, there were no signs prohibiting video recording.  Docket No. 71 at 2, ¶ 5.[3]

The public entrance to the Station has a glass entryway,[4] depicted in the following photograph:



---

[3] Defendants dispute this fact, arguing that "a sign was posted on one of the windows of the entryway area prohibiting filming in the Denver District 5 station." Docket No. 76 at 2, ¶ 5.  This response does not dispute plaintiff's proffered fact that there were no signs along the sidewalk leading up to the entrance.  Accordingly, the Court deems this fact undisputed.

[4] The parties use different terms to refer to this area.  *Compare* Docket No. 77 at 2, ¶ 4 (describing the area as the "entryway/vestibule") *with* Docket No. 80 at 1-2, ¶ 4 (describing the area as the glass "awning").  For clarity, the Court will refer to the area as the "entryway," but finds no material difference between the parties' descriptive terms.

Docket No. 77 at 2-3, ¶ 7.  The entryway has a sign that says, "POLICE."  *Id*. at 2, ¶ 6.

The entryway is enclosed on the top, the sides, and the front, except an area the size of

a double door in the front, which is open.  *Id*., ¶ 5; Docket No. 80-10.[5]

Mr. Detreville walked into the entryway and continued filming.  Docket No. 77 at

2, ¶ 4; Docket No. 80 at 1-2, ¶ 4.  There is only one door at the public entrance to the

Station.  Docket No. 80 at 4, ¶ 2.  Mr. Detreville remained outside of that door until after

he was arrested.  *Id*.  A sign posted on the inside of the window next to the door said,

"No video recording is allowed in the Denver Police District 5 Station without prior

permission from the Chief of Police."  Docket No. 71 at 3, ¶¶ 14-15; Docket No. 77 at 4,

¶ 10; Docket No. 80 at 4, ¶ 3.  The sign cites to Colo. Rev. Stat. § 18-9-117 as the legal

authority for the directive.  Docket No. 77 at 3, ¶ 9.

Officer Weinheimer opened the door and asked Mr. Detreville if he needed

assistance.  Docket No. 71 at 3, ¶ 8.  Mr. Detreville asked Officer Weinheimer where to

find a complaint form and then asked for her name and badge number.  *Id*., ¶ 9.  Officer

Weinheimer radioed for assistance.  *Id*., ¶ 10.  Officer Gurevich then entered the lobby

of the Station from an interior door.  *Id*.  Mr. Detreville was standing approximately two

to three feet from the door when Officer Gurevich arrived.  *Id*., ¶ 11.  Mr. Detreville

greeted Officer Gurevich and asked for his name and badge number.  *Id*., ¶ 12.  Officer

Gurevich told Mr. Detreville, "We do not allow recording on our property.  If you do not

---

[5] Plaintiff's response to this fact states, "DENY.  The glass 'awning' outside of the door to the Station is not fully enclosed on all sides."  Docket No. 80 at 2, ¶ 5 (citing Docket No. 80-5 at 1; Docket No. 80-10).  This response does not refute defendants' proffered fact that the entryway is enclosed on most sides, except that the entryway does not have a physical door.  Plaintiff's cited exhibit depicts an entryway that is enclosed by glass on most sides and is partially open at the front.  *See* Docket No. 80-10.  Accordingly, the Court deems this fact undisputed.

stop recording, we will have to arrest you." *Id.*, ¶ 13; Docket No. 77 at 4, ¶ 12.  Officer

Weinheimer then pointed to the sign and said, "It's actually written right there."  Docket

No. 77 at 4, ¶ 13.

Officer Gurevich told Mr. Detreville that he was on property owned by the City

and County of Denver and ordered Mr. Detreville to stop recording.  Docket No. 71 at 4,

¶ 18.  Officer Gurevich told Mr. Detreville, "Please stop recording, and we can help you

out." *Id.*, ¶ 19.  Mr. Detreville stated, "this is my First Amendment right."  Docket No. 71

at 4, ¶ 21; Docket No. 76 at 5, ¶ 21; *see also* Docket No. 71-1 at 07:53-07:57.  In

response to Mr. Detreville's assertion of his First Amendment right to record, Officer

Weinheimer said, "It's not actually."  Docket No. 71 at 4, ¶ 22.  Defendants did not

inform Mr. Detreville that he could continue recording further away from the door.  *Id.*,

¶ 20.  Throughout the encounter, Mr. Detreville never blocked the entrance of the

Station.  *Id.* at 5, ¶ 29.[6]

Defendants arrested Mr. Detreville for "Unlawful Conduct on Private Property" in

violation of Colo. Rev. Stat. § 18-9-117 because Mr. Detreville would not stop recording.

Docket No. 80 at 4, ¶ 7; *see also* Docket No. 80-5 at 1.  Mr. Detreville was arrested

approximately two minutes after his initial contact with Officer Weinheimer.  Docket No.

---

[6] Defendants' response to this fact states, "DENY."  Docket No. 76 at 5, ¶ 29 (citing Docket No. 76-3 at 13, 104:8-105:12; Docket No. 76-6).  This Court's Practice Standards provide that if the nonmovant denies any asserted undisputed material facts set forth by the movant, "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific reference to material in the record supporting the denial."  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  Defendants provide no explanation of the reason for their denial.  Accordingly, the Court deems this fact admitted.  *See id.*, § III.F.3.b.ix. ("Failure to follow these procedures may result in an order striking or denying the motion or brief or may cause the Court to deem certain facts as admitted.").

71 at 4, ¶ 25.  Defendants were performing their official duties at the time of plaintiff's arrest.  *Id*. at 4-5, ¶ 28.  Mr. Detreville spent three days in jail.  *Id*. at 5, ¶ 31.[7]  On March 2, 2020, Mr. Detreville's criminal case was dismissed.  *Id*., ¶ 32.

Prior to Mr. Detreville's arrest, Officer Gurevich received specific training on the First Amendment and procedures for encountering First Amendment auditors.  *Id*., ¶ 33.  The training bulletin instructed that, "all individuals have the right to record police officers and public employees in public places.  Additionally, unless recording is specifically prohibited, individuals may not be prevented from recording in public places or within government buildings."  *Id*. at 5, ¶¶ 34, 36; Docket No. 76 at 6, ¶ 34; Docket No. 71-11 at 1.  Officer Gurevich and Officer Weinheimer's supervisor was Sergeant Kenneth Morrill.  Docket No. 77 at 4, ¶ 18.

Officer Weinheimer did not work on November 13 or November 14, 2019.  *Id*. at 4-5, ¶¶ 19-20.  Officer Gurevich did not work on November 14, 2019.  *Id*. at 5, ¶ 21.  Officer Gurevich was working at the desk in the Station on November 13, 2019.  Docket No. 80 at 4, ¶ 9.  There were multiple computer monitors at the desk which displayed video from internal and external security cameras.  *Id*. at 4-5, ¶ 10; Docket No. 84 at 4, ¶ 10.  A Caucasian man, John Reed,[8] was video recording on November 13, 2019 and Officer Gurevich did not arrest the man.  Docket No. 80 at 5, ¶ 11.

_____

[7] Defendants' response to this fact states, "DENY.  Plaintiff was taken into custody around 6:30 p.m. on November 10, 2019 and was released on the morning of November 12 after a 9:30 a.m. arraignment."  Docket No. 76 at 6, ¶ 31 (citing Docket No. 76-7).  This response does not refute plaintiff's proffered fact that he was in custody for three days: November 10, November 11, and November 12, 2019.  Accordingly, the Court deems this fact undisputed.

[8] Neither party includes the Caucasian man's name in the respective fact sections of their briefs.  However, the Court finds that the parties do not dispute that the Caucasian man is named John Reed.  *See* Docket No. 80 at 17; Docket No. 84 at 2.

Mr. Detreville asserts the following claims in his complaint pursuant to 42 U.S.C. § 1983: (1) unlawful arrest/failure to intervene in violation of the Fourth Amendment against both defendants; (2) retaliatory arrest in violation of the First Amendment against both defendants; (3) malicious prosecution in violation of the Fourth Amendment against Officer Gurevich only; and (4) an equal protection claim under the Fourteenth Amendment against both defendants.  Docket No. 1 at 8-15, ¶¶ 62-130.

On February 6, 2024, Mr. Detreville filed a motion for partial summary judgment on his first, second, and third claims against Officer Gurevich.  Docket No. 71.  Officer Gurevich filed a response, Docket No. 76, and Mr. Detreville filed a reply.  Docket No. 79.  On March 8, 2024, defendants filed a cross motion for summary judgment on all claims.  Docket No. 77.  Mr. Detreville filed a response, Docket No. 80, and defendants filed a reply.  Docket No. 84.

## II.  LEGAL STANDARD

### A.  Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict

for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  A

movant who bears the burden at trial must submit evidence to establish the essential

elements of its claim.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217

(D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial,

it may satisfy its burden at the summary judgment stage by identifying a lack of

evidence for the nonmovant on an essential element of the nonmovant's claim."

*Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving

party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of

Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The

nonmoving party may not rest solely on the allegations in the pleadings, but instead

must designate "specific facts showing that there is a genuine issue for trial."  *Celotex

Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary

judgment, the nonmovant must establish, at a minimum, an inference of the presence of

each element essential to the case."  *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence

in the light most favorable to the non-moving party.  *Id.*  Cross-motions for summary

judgment must be viewed separately, and the denial of one does not necessitate the

granting of the other.  *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07

(10th Cir. 2016) (citations omitted).

## B. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022).  Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.  Generally, a constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Surat*, 52 F.4th at 1276.  "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Torres v.*

*Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282, 1293 (10th Cir. 2022).  The relevant precedent is "considered on point if it involves *materially similar conduct* or applies with *obvious clarity* to the conduct at issue." *Irizarry*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th 810, 815 (10th Cir. 2022).  "To be clear, we do not require plaintiffs to engage in a scavenger hunt for a prior case with identical facts.  We ask whether the existing law provides fair warning to a defendant."  *Shepherd*, 55 F.4th at 815 (citations omitted).

## III.   ANALYSIS

### A.   Preliminary Issues

As a preliminary matter, both Mr. Detreville and defendants have improperly raised numerous facts throughout the summary judgment briefing in violation of this Court's Practice Standards.  The Practice Standards on summary judgment motions state that the movant, in a section of the brief entitled "Statement of Undisputed Material Facts," must

> set forth in simple, declarative sentences, separately numbered and paragraphed, each material fact which the movant believes is not in dispute and which supports movant's claim that movant is entitled to judgment as a matter of law. . . .  Each separately numbered and paragraphed fact must be accompanied by a specific reference to material in the record which establishes that fact.

Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.i-ii. (emphasis omitted).  The Practice Standards provide that, in a section of the brief entitled, "Response to Statement of Undisputed Facts," the nonmovant must admit or deny each asserted material fact set forth by the movant and "[a]ny denial shall be accompanied by a brief factual explanation of the reason(s) for the denial and a specific

reference to material in the record supporting the denial." *Id*., § III.F.3.b.iv. (emphasis

omitted).  If the party opposing the summary judgment motion

> believes that there exist additional disputed questions of fact which it has not
> adequately addressed in the submissions it has made pursuant to subparagraph
> (iv) above . . ., the party shall, in a separate section of the party's brief styled
> "Statement of Additional Disputed Facts," set forth in simple, declarative
> sentences, separately numbered and paragraphed, each additional, material
> disputed fact which undercuts movant's claim that it is entitled to judgment as a
> matter of law.  Each separately numbered and paragraphed fact shall be
> accompanied by a specific reference to material in the record which establishes
> the fact or at least demonstrates that it is disputed.  Similarly, if the party
> opposing the motion believes that there exist additional undisputed facts, the
> party shall, in a separate section of the party's brief styled "Statement of
> Additional Undisputed Facts," set forth in simple, declarative sentences,
> separately numbered and paragraphed, each additional, material undisputed fact
> which undercuts movant's claim that it is entitled to judgment as a matter of law.
> Each separately numbered and paragraphed fact shall be accompanied by a
> specific reference to material in the record which establishes the fact or at least
> demonstrates that it is undisputed.

*Id*., § III.F.3.b.v. (emphasis omitted).

The Practice Standards provide that any reply brief must contain a section

entitled "Reply Concerning Undisputed Facts," including "any factual reply which movant

cares to make regarding the facts asserted in its motion to be undisputed, supported by

specific references to material in the record."  *Id*., § III.F.3.b.vi. (emphasis omitted).

Furthermore, a reply brief must contain

> a separate section styled "Response Concerning Disputed Facts" or a separate
> section styled "Response Concerning Additional Undisputed Facts" (with respect
> to each fact which the opposing party, pursuant to subparagraph (v) above,
> claims to be in dispute or to be undisputed), either admit that the fact is disputed
> or undisputed or supply a brief factual explanation for its position that the fact is
> undisputed, accompanied by a specific reference to material in the record which
> establishes that the fact is undisputed.

*Id*.

In their analysis sections of the briefing, both parties raise numerous facts, including portions of deposition testimony, that were not included in the respective fact sections of their briefs.  *See* Docket No. 71 at 6-20; Docket No. 76 at 9-19; Docket No. 77 at 6-17; Docket No. 80 at 7-20.  As the Practice Standards emphasize, the "sole purpose of these procedures is to establish facts and determine which of them are in dispute."  Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vii.  Both parties have significantly compromised the summary judgment process by citing additional evidence in their argument sections that were not included in their "Statement of Undisputed Material Facts," "Response to Statement of Undisputed Facts," "Statement of Additional Disputed Facts," or "Statement of Additional Undisputed Facts" sections.  Had the parties included the evidence in the proper sections of their briefs, the opposing party would have been required to admit or deny those facts and provide a basis for any denials, which would assist the Court in determining what facts are undisputed and what facts are disputed.  *See id.*, § III.F.3.b.iv.-vi.  Moreover, the requirement in the Practice Standards that a party opposing summary judgment state its facts in the form of statements is consistent with Fed. R. Civ. P. 56(e), which refers to "assertions of fact."  Rule 56 distinguishes such assertions or statements of fact from the evidence that supports the assertions.  *See, e.g.*, Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support that assertion by: (A) citing to particular parts of materials in the record").  Thus, for the parties to simply cite to exhibits in their analysis sections that are not undisputed facts frustrates the summary judgment process and violates the Court's Practice Standards.  As a result,

the Court will not consider such evidence either to establish an undisputed fact or to raise a dispute of material fact.

### B. Mr. Detreville's Motion for Summary Judgment

Mr. Detreville moves for summary judgment on his claims against Officer Gurevich for (1) unlawful arrest; (2) First Amendment retaliation; and (3) malicious prosecution.  Docket No. 71 at 1.[9]  Mr. Detreville requests summary judgment as to liability, not damages.  *See id*. at 2.

#### 1. Unlawful Arrest Claim

Mr. Detreville's first claim alleges that Officer Gurevich violated his Fourth Amendment rights by arresting plaintiff without probable cause.  Docket No. 1 at 8-10, ¶¶ 62-74.[10]  The Fourth Amendment provides the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."  U.S. Const. Amend. IV.  A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through intentional means.  *See Brower v. Cnty. of Inyo*, 489 U.S. 593, 596-97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007).  An arrest requires probable cause to believe that the arrestee committed a crime.  *Fogarty v. Gallegos*, 523 F.3d 1147, 1156 (10th Cir. 2008); *Cortez v. McCauley*, 478 F.3d 1108, 1115-16 (10th Cir. 2007).

---

[9] Mr. Detreville does not move for summary judgment on any claims against Officer Weinheimer.

[10] Mr. Detreville's first claim also asserts a failure to intervene theory, alleging that Officer Gurevich failed to intervene in Officer Weinheimer's "unlawful arrest of Plaintiff."  Docket No. 1 at 9, ¶ 72.  Mr. Detreville does not move for summary judgment on this portion of claim one, and therefore the Court declines to analyze this portion of the claim.

Mr. Detreville argues that he is entitled to judgment as a matter of law on the unlawful arrest claim because it is undisputed that Officer Gurevich did not have probable cause to arrest Mr. Detreville pursuant to Colo. Rev. Stat. § 18-9-117.  Docket No. 71 at 6-13.  Officer Gurevich argues that he had probable cause to arrest Mr. Detreville under Colo. Rev. Stat. § 18-9-117, and even if Officer Gurevich lacked probable cause, he is entitled to qualified immunity.  Docket No. 76 at 9-17.

### a.  Probable Cause

"In a qualified immunity context, the probable cause evaluation is a question of law appropriate for resolution by the Court."  *Shimomura v. Carlson*, 17 F. Supp. 3d 1120, 1132 (D. Colo. 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).  In determining whether an officer has probable cause for an arrest, the court must "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause."  *District of Columbia v. Wesby*, 583 U.S. 48, 56-57 (2018) (internal quotations and citation omitted).  "Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense."  *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995)).  Probable cause is not a high bar.  *Wesby*, 583 U.S. at 57.  "Because probable cause is measured by an objective standard, 'an arrest is lawful if the officer had probable cause to arrest for any offense, not just the offense cited at the time of arrest

or booking.'"  *Mglej v. Gardner*, 974 F.3d 1151, 1161 (10th Cir. 2020) (quoting *Wesby*,

583 U.S. at 54 n.2).

Section 18-9-117 states:

[i]t is unlawful for any person to enter or remain in any public building or on any public property or to conduct himself or herself in or on the same in violation of any order, rule, or regulation concerning any matter prescribed in this subsection (1), limiting or prohibiting the use or activities or conduct in such public building or on such public property, issued by any officer or agency having the power of control, management, or supervision of the building or property.  In addition to any authority granted by any other law, each such officer or agency may adopt such orders, rules, or regulations as are reasonably necessary for the administration, protection, and maintenance of such public buildings and property, specifically, orders, rules, and regulations upon the following matters: . . . (b) [r]estriction or limitation of the use of such public buildings or property as to time, manner, or permitted activities[.]

Colo. Rev. Stat. § 18-9-117(1)(b).  The statute allows a state agency to adopt rules and

regulations that are reasonably necessary for the administration and protection of public

buildings.  *See Kerr v. City of Boulder*, No. 19-cv-01724-KLM, 2021 WL 2514567, at *19

(D. Colo. June 18, 2021).  The statute itself, however, does not prohibit any conduct.  *Id*.

It is undisputed that a sign posted inside the window of the Station said, "No video

recording is allowed in the Denver Police District 5 Station without prior permission from

the Chief of Police."  Docket No. 71 at 3, ¶¶ 14-15; Docket No. 77 at 4, ¶ 10; Docket No.

80 at 4, ¶ 3.  The sign cites to Colo. Rev. Stat. § 18-9-117 as the legal authority for the

directive.  Docket No. 77 at 3, ¶ 9.

Mr. Detreville argues that Officer Gurevich lacked probable cause to arrest him

under Colo. Rev. Stat. § 18-9-117 because there were no facts suggesting that Mr.

Detreville violated the sign's directive.  Docket No. 71 at 9.  Plaintiff argues that the sign

unambiguously prohibits videorecording "in the Denver District 5 Station."  *Id*. at 10.  Mr.

Detreville asserts that it is undisputed that he was never recording "in" the Station

14

before his arrest. *Id*. at 9. Mr. Detreville contends that it is undisputed that he was arrested outside of the Station's door. Docket No. 79 at 5.[11]

Officer Gurevich contends that he had probable cause to arrest Mr. Detreville for filming in the Station pursuant to Colo. Rev. Stat. § 18-9-117. Docket No. 76 at 9. Officer Gurevich states that Mr. Detreville was filming in the "vestibule of the Station" and argues that area is "in" the Station. *Id*. at 10. In support of this argument, Officer Gurevich argues that three officers, including Officer Gurevich, Officer Weinheimer, and Sergeant Morrill, all believed that the "vestibule" was part of the Station. *Id*.[12] Because "all three officers who worked at the Station believed the entryway / vestibule area was

---

[11] In support of his argument that Officer Gurevich lacked probable cause, Mr. Detreville also argues that Officer Gurevich "consciously disregarded" his training related to First Amendment auditors. Docket No. 71 at 12-13. The Court finds that this argument is irrelevant to the probable cause analysis. *See Mglej*, 974 F.3d at 1161 (noting that "probable cause is measured by an objective standard").

[12] Furthermore, Officer Gurevich argues that he believes filming is prohibited in the vestibule area

> to protect the privacy of victims who come to report crimes. [Docket No. 76-3] at 22:3-5; 35:1-4; 39:4-8. Officer Gurevich had spoken to victims in that entryway / vestibule area in the past and pointed out that victims may be worried that they would be retaliated against for going to the police. *Id*. The restriction on filming helps make the Station a safe space for people to come without concerns that they will be identified. *Id*.

Docket No. 76 at 12. Officer Gurevich did not raise these facts about speaking with victims in the entryway in the proper section of his response, and therefore the Court declines to consider this evidence as discussed previously. In their motion for summary judgment, defendants include a related proffered fact in their statement of undisputed facts section. Defendants assert that, "[i]n addition to basing his belief on it being enclosed on three sides with a roof and phone for dispatch, [Officer Gurevich] pointed out that not allowing filming in the entryway / vestibule prevents people from recording conversations with, for example, 'juvenile victims of sex assault.' Ex. 3 (Gurevich Dep at 22:3-23." Docket No. 77 at 4, ¶ 7. However, defendants failed to attach page 22 of Officer Gurevich's deposition to their exhibit. *See* Docket No. 77-3. Because defendants have not properly supported this proffered fact, the Court declines to consider this argument.

15

'in' the Station," Officer Gurevich argues that his belief was "objectively reasonable." *Id*. at 15.  Moreover, Officer Gurevich contends that "it is simply logical to place a sign which prohibits certain conduct in the area that it governs, *i.e.* displayed in the vestibule where the conduct is prohibited." *Id*. at 14.  Officer Gurevich asserts that Mr. Detreville has "not provided any expert testimony or other evidence proving that [the vestibule] was not part of the building or 'in' the Station." *Id*. at 13.[13]  Officer Gurevich does not argue that he had probable cause to arrest Mr. Detreville for any other offense.

Because Colo. Rev. Stat. § 18-9-117 does not itself prohibit any conduct, *see Kerr*, 2021 WL 2514567, at *19, the Court looks to the language on the sign.[14]  It is undisputed that a sign posted inside the window of the Station said, "No video recording

---

[13] Officer Gurevich also contends that he had probable cause to arrest Mr. Detreville because Officer Weinheimer and Sergeant Morrill agreed there was probable cause and "a judge also found there was probable cause for the arrest."  Docket No. 76 at 11 (citing Docket No. 76-4 at 7, 93:1-3; Docket No. 76-5 at 5-6, 93:22-23, 95:6-96:4; Docket No. 76-7).  Officer Gurevich did not raise these facts in the proper section of his brief, and therefore the Court declines to consider this evidence, as discussed previously.  However, even if the Court considered these facts, the Court finds that the subjective beliefs of the police officers as to whether probable cause existed is irrelevant.  *See United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) ("The subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive.").  Moreover, a state magistrate judge's determination of probable cause at an arrestee's initial arraignment is not binding in a subsequent section 1983 lawsuit.

[14] The Court finds that the interpretation of the meaning of the sign is an issue of law for the Court, not a factual issue for the jury.  The sign cites Colo. Rev. Stat. § 18-9-117 as the legal authority for the directive.  Docket No. 77 at 3, ¶ 9; *see also* Colo. Rev. Stat. § 18-9-117(1) (authorizing an officer in control of a public building to "adopt such orders, rules, or regulations as are reasonably necessary for the administration, protection, and maintenance of such public buildings and property").  The sign is therefore the embodiment of the rule authorized by the ordinance.  The interpretation of a statute is a legal issue for the court.  *Valdez v. Macdonald*, 66 F.4th 796, 815 (10th Cir. 2023); *see also Schmidt v. Int'l Playthings LLC*, 536 F. Supp. 3d 856, 936 (D.N.M. 2021) ("the interpretation of the regulations is for the Court and not for the jury to decide").

is allowed in the Denver Police District 5 Station without prior permission from the Chief of Police."  Docket No. 71 at 3, ¶¶ 14-15; Docket No. 77 at 4, ¶ 10; Docket No. 80 at 4, ¶ 3.  The plain language of the sign prohibits recording a video "in the Denver Police District 5 Station."  *See id*.  The sign does not say no recording "of the Denver Police District 5 Station;" no recording "of the inside of the Denver Police District 5 Station from outside the Station;" or no recording "near the Denver Police District 5 Station."  *See id*.  Therefore, the Court finds that the sign prohibits video recording "in" the Station.[15]

It is undisputed that, on November 10, 2019, Mr. Detreville went to the Arie P. Taylor Municipal Center and walked along the sidewalk to the public entrance of the Station, while filming with his cell phone.  Docket No. 71 at 2, ¶¶ 1, 4.  Mr. Detreville walked into the entryway and continued filming.  Docket No. 77 at 2, ¶ 4; Docket No. 80 at 1-2, ¶ 4.  It is undisputed that there is only one door at the public entrance to the Station and that Mr. Detreville remained outside of that door until after he was arrested.  Docket No. 80 at 4, ¶ 2.  The Court finds that Officer Gurevich had no probable cause to believe that Mr. Detreville was violating the directive on the sign because it is undisputed that Mr. Detreville was outside of the Station's door when he was recording.  Because Mr. Detreville was not "in" the Station, there was no probable cause to arrest Mr. Detreville under Colo. Rev. Stat. § 18-9-117.  Although defendants raise a dispute

---

[15] The Court reached the same conclusion at the motion to dismiss stage.  *See Detreville v. Gurevich*, No. 21-cv-00638-PAB-MEH, 2022 WL 17668171, at *4 (D. Colo. Dec. 14, 2022).  At the motion to dismiss stage, the Court also reviewed the video that Mr. Detreville recorded on November 10, 2019, pursuant to a request from both parties to consider such video evidence at the motion to dismiss stage.  *Id*. at *1 n.2.  However, the video, which was taken at night, does not clearly show the nature of the physical characteristics of the entryway.  No photograph of the entryway was incorporated in the complaint and therefore was not part of the Court's analysis in resolving the motion to dismiss.

of fact that Officer Gurevich, Officer Weinheimer, and Sergeant Morrill all believe that the entryway is part of the Station, *see* Docket No. 77 at 4, ¶¶ 15-16, 18, the Court finds that the officers' subjective beliefs are insufficient to defeat summary judgment.  *See Wesby*, 583 U.S. at 56-57 (noting that the court must decide whether the facts, "viewed from the standpoint of an *objectively reasonable police officer*, amount to probable cause." (emphasis added) (internal quotations and citation omitted)); *Valenzuela*, 365 F.3d at 896 ("The subjective belief of an individual officer as to whether there was probable cause for making an arrest is not dispositive.").  To the extent that defendants argue that Officer Gurevich's interpretation of the sign was a reasonable mistake, the Court rejects that argument as it applies to the probable cause determination.  The Tenth Circuit has held that "an officer's mistake of law cannot serve as a basis for probable cause, because a mistake of law by the person charged with enforcing it is not objectively reasonable and therefore violates the Fourth Amendment."  *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 n.3 (10th Cir. 2014) (citing *United States v. Nicholson*, 721 F.3d 1236, 1239 (10th Cir. 2013)).  Therefore, the Court finds that Officer Gurevich lacked probable cause to arrest Mr. Detreville under Colo. Rev. Stat. § 18-9-117.

### b.  Clearly Established Law

Even if Officer Gurevich lacked probable cause to arrest Mr. Detreville, Officer Gurevich argues that he is entitled to qualified immunity.  Docket No. 76 at 13.  "[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff."  *Cortez*, 478 F.3d at 1120.  Thus, in the Tenth

Circuit, "[a]s a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d 1278, 1285 (10th Cir. 2020) (internal quotations, citation, and alterations omitted).  "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief.  *Cortez*, 478 F.3d at 1120-21; *see also Jordan v. Jenkins*, 73 F.4th 1162, 1170 (10th Cir. 2023).  The "protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010) (quoting *Pearson*, 555 U.S. at 231); *see also Mocek v. City of Albuquerque,* 813 F.3d 912, 922 (10th Cir. 2015); *Felders*, 755 F.3d at 879 n.3 (although "an officer's mistake of law cannot serve as a basis for probable cause," the second prong of the qualified immunity analysis "protects officials from civil liability for mistakes of law if reasonably made").

Officer Gurevich claims that he had arguable probable cause to arrest Mr. Detreville because Officer Gurevich's belief that the "vestibule area" was "in" the Station was reasonable, even if mistaken.  Docket No. 76 at 13; Docket No. 77 at 11-12.[16] Defendants argue that

> in a case where Plaintiff was arrested pursuant to a lawful ordinance, as set forth on the Sign, and where Plaintiff was undisputedly taking the specified prohibited action (i.e. there is no contention Gurevich lied or made any false statement), the

---

[16] Defendants include several additional arguments concerning arguable probable cause in their motion for summary judgment.  *See* Docket No. 77 at 9-13.  In this section of the order, the Court will discuss all the parties' arguable probable cause arguments raised throughout the cross-summary judgment briefing.

only basis to hold the officer liable would be his "wrong" conclusion about inside vs. outside, which is – at most – a reasonable mistake.

Docket No. 77 at 13.  Defendants contend that this case is similar to *Kerr*, where the Court found that defendants had arguable probable cause to arrest plaintiffs for trespassing under Colo. Rev. Stat. § 18-9-117.  *Id.* at 11-12 (citing *Kerr*, 2021 WL 2514567, at *19-20).  Moreover, defendants argue that there is no clearly established "right to record in a police station" and appear to argue that the Tenth Circuit's decision in *Irizarry* is not particularized to the facts of this case.  *Id.* at 10 (citing *Irizarry*, 38 F.4th at 1293-94).  Defendants contend that it is "well established that the right to free speech guaranteed by the First Amendment is subject to reasonable time, place, and manner restrictions."  *Id.* (citing *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 45 (1983)).

Mr. Detreville responds that Officer Gurevich is not entitled to qualified immunity because it is "objectively unreasonable to view a sidewalk as being 'in' a building." Docket No. 79 at 9-10.  Mr. Detreville cites *Irizarry* in support of his argument that he had a clearly established "right to record officers in public."  *Id.* at 10 (citing *Irizarry*, 38 F.4th at 1292).  Citing the Court's order from the motion to dismiss stage, Mr. Detreville argues that "a reasonable officer would not interpret the plain language of the sign to prohibit what plaintiff was doing, namely, recording outside of the Station door in a way that captured images of the inside of the Station."  *Id.* (quoting *Detreville*, 2022 WL 17668171, at *5).  Mr. Detreville also asserts that it is clearly established that "a government official may not base h[is] probable cause determination on an unjustifiable

standard, such as speech protected by the First Amendment."  Docket No. 80 at 8 (quoting *Mink v. Knox*, 613 F.3d 995, 1003-04 (10th Cir. 2010)). [17]

The Court has already interpreted the sign as prohibiting only the recording of videos "in" the Station.  However, the arguable probable cause inquiry in this case turns on whether it was a reasonable "mistake of law" for an officer to believe that the sign prohibited video recording in the entryway.  *See Deutsch*, 618 F.3d at 1098.[18]  "A reasonable mistake in interpreting a criminal statute, for purposes of determining whether there is probable cause to arrest, entitles an officer to qualified immunity."  *Mocek*, 813 F.3d at 927.  The Court finds that an officer could have reasonably believed that the sign prohibited video recording in the entryway.  It is undisputed that the public entrance to the Station has a glass entryway, depicted in the following photograph:

---

[17] The parties have not cited any case, and the Court is unaware of any case, interpreting the sign posted at the Denver District 5 Police Station or one similar to it. *See Cronick v. Pryor*, 99 F.4th 1262, 1270 (10th Cir. 2024) ("In assessing whether the officers had fair notice their arrest of [plaintiff] would be unlawful under the circumstances, 'we are guided, *first*, by the text of the ordinance and, *then*, by any relevant state and federal decisions interpreting its import.'" (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1141 (10th Cir. 2016) (internal alterations omitted)).

[18] The Court finds that this issue is more analogous to a mistake of law; however, the same reasonableness analysis would apply if the officer's belief was a "mistake of fact" or "a mistake based on mixed questions of law and fact."  *See Deutsch*, 618 F.3d at 1098 (citation omitted).



Docket No. 77 at 2-3, ¶ 7.  The entryway is enclosed on the top and the sides, although it is partially open at the front without a physical door.  *Id*. at 2, ¶ 5.  The entryway has a large sign that says, "POLICE."  *Id*., ¶ 6.[19]  As depicted in the photograph, the entryway is affixed to the building.  An officer could have reasonably believed that the sign prohibiting video recording "in the Denver Police District 5 Station," *see* Docket No. 71 at 3, ¶ 14, applied to the entryway due to the entryway being part of the building.  In other words, an officer could have made a reasonable mistake that the phrase "in" the Station included the mostly enclosed physical structure attached to the front of the building.  *See Stonecipher v. Valles*, 759 F.3d 1134, 1144 (10th Cir. 2014) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." (quoting *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012))).  Mr. Detreville argues that it is "objectively unreasonable to view a sidewalk as being 'in' a building," *see* Docket No. 79 at 9-10; however, it is undisputed that Mr. Detreville was

---

[19] In the photograph, there also appears to be a large symbol depicting a police seal on the front glass of the entryway.  *See* Docket No. 77 at 2-3, ¶ 7.

filming in the entryway.  Docket No. 77 at 2, ¶ 4; Docket No. 80 at 1-2, ¶ 4.  While it might be unreasonable to believe that the sign's directive applied to the sidewalk, the Court finds that an officer could have made a reasonable mistake of law that the sign applied to the enclosed entryway attached to the building.

As a result, although Officer Gurevich did not have probable cause, the Court finds that Officer Gurevich had arguable probable cause to arrest Mr. Detreville under Colo. Rev. Stat. § 18-9-117.  *See Mocek*, 813 F.3d at 925-27 (holding that the officer had arguable probable cause to arrest plaintiff under N.M. Stat. § 30-22-3, the statute prohibiting a person from "concealing one's true name or identity," because an officer reasonably "could have believed that an investigative stop for disorderly conduct at an airport security checkpoint required the production of some physical proof of identity" under the statute and such a belief was a "reasonable" mistake of law); *see also Starrett v. City of Lander*, 699 F. App'x 805, 810 (10th Cir. 2017) (unpublished) (holding that given the "unique set of facts and circumstances this case presents," the officers "had arguable probable cause to arrest Mrs. Starrett for interference under Wyo. Stat. Ann. § 6-5-204(a)") (internal quotations and citation omitted)); *Youbyoung Park v. Gaitan*, 680 F. App'x 724, 737 (10th Cir. 2017) (unpublished) (holding that the officers had arguable probable cause to arrest plaintiff under N.M. Stat. § 30-22-1(A), in part, because there was "*no* controlling decision" that "squarely govern[ed]" whether defendants lacked probable cause under that "*specific* provision" of the obstruction statute).[20] The Court

---

[20] The Court rejects Mr. Detreville's argument that the Tenth Circuit's decision in *Irizarry* satisfies plaintiff's burden on the arguable probable cause prong of the qualified immunity analysis.  *See* Docket No. 79 at 10.  In *Irizarry*, the Tenth Circuit found that it was clearly established as of May 2019 that individuals have "a First Amendment right to film the police performing their duties in public."  *Irizarry*, 38 F.4th at 1292.  However,

therefore finds that Officer Gurevich is entitled to qualified immunity on the unlawful arrest claim and denies this portion of plaintiff's motion. [21]

### 2. First Amendment Retaliation Claim

Mr. Detreville's second claim alleges that Officer Gurevich arrested him in retaliation for his First Amendment activity.  Docket No. 1 at 10-12, ¶¶ 75-97.  Generally, "the First Amendment prohibits government officials from subjecting an individual to retaliatory actions for engaging in protected speech."  *Nieves v. Bartlett*, 587 U.S. 391,

---

the Tenth Circuit emphasized that this "right is subject to reasonable time, place, and manner restrictions."  *Id.* at 1292 n.10.  The court found that, "in this case, there is no 'time, place, and manner' restriction issue" because plaintiff was filming the police during a traffic stop.  *Id.* (citation omitted).  *Irizarry* addressed a First Amendment retaliation claim, *see id.* at 1288, but did not involve an inquiry into arguable probable cause or whether an officer's interpretation of an ordinance was a reasonable mistake of law.  Here, Colo. Rev. Stat. § 18-9-117(1)(b) permits time, place, and manner restrictions for public buildings.  *See* Colo. Rev. Stat. § 18-9-117(1)(b).  As noted above, the arguable probable cause inquiry in this case turns on whether it was a reasonable mistake of law for an officer to believe that the sign prohibited video recording in the entryway.

[21] At the motion to dismiss stage, the Court found that defendants had no arguable probable cause for arresting Mr. Detreville because "a reasonable officer would not interpret the plain language of the sign to prohibit what plaintiff was doing, namely, recording outside of the Station door in a way that captured images of the inside of the Station."  *Detreville*, 2022 WL 17668171, at *5.  The Court's disposition at the summary judgment stage is different for several reasons.  First, Mr. Detreville's complaint alleged that he stood "outside" the door, *id.* at 1, and the complaint contained no allegations suggesting that there was a glass entryway enclosed on most sides.  *See* Docket No. 1.  The complaint contained no photos of the front of the Station or the entryway.  *See id.*  Although the Court reviewed Mr. Detreville's video at the motion to dismiss stage, *see Detreville*, 2022 WL 17668171, at *1 n.2, the video, which was taken at night, does not clearly show the nature of the physical characteristics of the entryway. In contrast, at the summary judgment stage, the parties have submitted undisputed evidence of the physical characteristics of the entryway, including photos taken during the daytime, which alters the Court's arguable probable cause analysis.  Second, "[a]sserting a qualified immunity defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of review than would apply on summary judgment."  *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019) (unpublished) (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014)).

398 (2019) (internal quotations and citation omitted).  To establish a First Amendment retaliation claim, a plaintiff must demonstrate (1) that he was engaged in a constitutionally protected activity; (2) that the defendant's action caused him to suffer an injury that would "chill a person of ordinary firmness from continuing to engage in that activity"; and (3) that the defendant's action was "substantially motivated" in response to his exercise of First Amendment speech rights.  *Becker v. Kroll*, 494 F.3d 904, 925 (10th Cir. 2007); *see also Irizarry*, 38 F.4th at 1288.  Ordinarily, a plaintiff must also prove the absence of probable cause for the arrest.  *Becker*, 494 F.3d at 925.

Mr. Detreville argues that he is entitled to judgment as a matter of law on the liability portion of his First Amendment retaliation claim against Officer Gurevich because plaintiff has established all three elements.  Docket No. 71 at 13-17.  Officer Gurevich responds that plaintiff has not established the third element.  Docket No. 76 at 17.

### a.  Constitutionally Protected Activity

Mr. Detreville argues that he was engaged in constitutionally protected activity because it is undisputed that he was filming the police from a public sidewalk.  Docket No. 71 at 14 (citing *Irizarry*, 38 F.4th at 1292).  Officer Gurevich does not respond to this argument.  The Court finds that the undisputed facts establish that Mr. Detreville was engaged in constitutionally protected activity.  In *Irizarry*, the Tenth Circuit found that an individual has "a First Amendment right to film the police performing their duties in public."  *Irizarry*, 38 F.4th at 1292.  Here, it is undisputed that Mr. Detreville was filming defendants outside the Station's door while defendants were performing their official duties.  Docket No. 71 at 4-5, ¶ 28; Docket No. 77 at 2, ¶ 4; Docket No. 80 at 4, ¶ 2.

Accordingly, Mr. Detreville has established the first element of his First Amendment retaliation claim.

### b.  Injury

Mr. Detreville argues that, by arresting plaintiff without probable cause, Officer Gurevich caused Mr. Detreville to suffer an injury that would chill a person of ordinary firmness from continuing to exercise his First Amendment rights.  Docket No. 71 at 14-15 (citing *Esparza v. Bowman*, 523 F. App'x 530, 536 (10th Cir. 2013) (unpublished)).  Mr. Detreville also argues that he suffered an injury by "spending three days in jail and being subjected to a criminal prosecution over three months."  *Id*. at 15.  Officer Gurevich does not respond to these arguments.

The Court finds that the undisputed facts establish that Officer Gurevich caused Mr. Detreville to suffer an injury that would "chill a person of ordinary firmness from continuing to engage in that activity."  *See Becker*, 494 F.3d at 925.  The Tenth Circuit has held that the "pursuit of an arrest without probable cause would chill a person of ordinary firmness from continuing to engage in protected activity."  *Esparza*, 523 F. App'x at 536; *see also Irizarry*, 38 F.4th at 1288 n.6 ("an arrest in retaliation for the exercise of protected speech constitutes an injury cognizable under our First Amendment jurisprudence." (quoting *Reichle v. Howards*, 566 U.S. 658 (2012)); *Sexton v. City of Colorado Springs*, 530 F. Supp. 3d 1044, 1066 (D. Colo. 2021) (finding that "a retaliatory arrest unsupported by probable cause is an injury that would chill a person of ordinary firmness").  Here, it is undisputed that Officer Gurevich arrested plaintiff on November 10, 2019.  Docket No. 80 at 4, ¶ 7; Docket No. 71 at 2, ¶ 1.  The Court

previously found that the arrest was not supported by probable cause.  As a result, Mr. Detreville has established the second element of his First Amendment retaliation claim.

### c.  Substantially Motivated

To establish the third element, a plaintiff must show that the defendant's action was "substantially motivated" in response to his exercise of First Amendment speech rights.  *Becker*, 494 F.3d at 925; *see also Irizarry*, 38 F.4th at 1288.  The Supreme Court has held that the retaliatory motive "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive."  *Nieves*, 587 U.S. at 399.  The Tenth Circuit has recognized that a "close temporal proximity" between the protected speech and an arrest, coupled with the absence of probable cause, supports "a strong inference" that defendant was motivated by plaintiff's speech.  *Esparza*, 523 F. App'x at 536.

Mr. Detreville argues that the undisputed facts demonstrate that Officer Gurevich arrested Mr. Detreville because he would not stop video recording.  Docket No. 71 at 16.  Mr. Detreville asserts that, when Officer Gurevich encountered Mr. Detreville, he stated, "We do not allow recording on our property.  If you do not stop recording, we will have to arrest you."  *Id*.  Mr. Detreville also argues that the close temporal proximity between Mr. Detreville's exercise of his First Amendment rights and his arrest without probable cause demonstrates that Officer Gurevich had a retaliatory motive.  *Id*.

Officer Gurevich argues that there is no evidence in the record that he was motivated by a retaliatory animus.  Docket No. 76 at 17.  Officer Gurevich asserts that he arrested Mr. Detreville with a "good faith belief" that the "vestibule area" was "in" the Station and therefore recording was prohibited in that area.  *Id*.  Officer Gurevich claims

that there is no evidence that he arrested Mr. Detreville "in retaliation for filming Officer Gurevich performing his duties." *Id*.[22]

Construing the facts in the light most favorable to Officer Gurevich, the Court finds that a reasonable jury could conclude that Officer Gurevich's decision to arrest Mr. Detreville was not "substantially motivated" in response to Mr. Detreville's exercise of First Amendment speech rights. *See Becker*, 494 F.3d at 925; *see also Irizarry*, 38 F.4th at 1288. It is undisputed that, after Mr. Detreville greeted Officer Gurevich, Officer Gurevich told Mr. Detreville, "We do not allow recording on our property. If you do not stop recording, we will have to arrest you." Docket No. 71 at 3, ¶¶ 12-13; Docket No. 77 at 4, ¶ 12. A reasonable jury could also believe the testimony of Officer Gurevich at trial that he believed that the entryway is part of the Station. Docket No. 77 at 4, ¶ 16 (citing Docket No. 77-3 at 7, 79:22-80:01). As a result, a reasonable jury could conclude that Officer Gurevich's decision to arrest plaintiff was not substantially motivated by the fact that Mr. Detreville was merely filming the encounter and that Officer Gurevich arrested plaintiff based on Officer Gurevich's mistaken belief that the sign prohibited filming in the entryway because the entryway was "in" the Station. Accordingly, because there is a genuine dispute as to whether Officer Gurevich was substantially motivated to arrest Mr. Detreville in response to plaintiff's exercise of First Amendment speech rights, the

---

[22] Furthermore, Officer Gurevich argues that he "does not arrest people just for filming him." Docket No. 76 at 18. In support of this argument, Officer Gurevich states that he testified at his deposition that "people film [him] on the street all the time," but he did not arrest them because those individuals "were not breaking the law. They were not at the station . . . There were no signs [prohibiting filming]. There was no reason to arrest them." *Id*. at 17-18 (quoting Docket No. 76-3 at 16, 199:17-19, 200:5-8). Officer Gurevich did not raise these facts in the proper section of his brief, and therefore the Court declines to consider this evidence, as discussed previously.

Court denies the portion of Mr. Detreville's motion requesting summary judgment as to liability on the First Amendment retaliation claim against Officer Gurevich.[23]

### 3. Malicious Prosecution Claim

Mr. Detreville's third claim asserts a malicious prosecution claim against Officer Gurevich.  Docket No. 1 at 12-14, ¶¶ 98-114.  To establish a claim for malicious prosecution, a plaintiff must show that: "(1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages."  *Wilkins v. DeReyes*, 528 F.3d 790, 799 (10th Cir. 2008) (citing *Novitsky v. City of Aurora*, 491 F.3d 1244, 1258 (10th Cir. 2007)).  Mr. Detreville argues that he is entitled to judgment as a matter of law as to liability on his malicious prosecution claim because he has established all five elements.  Docket No. 71 at 17-20.[24]  Officer Gurevich argues that plaintiff has not established the fourth element.  Docket No. 76 at 18-19.

The Court finds that it is undisputed that Mr. Detreville has established the first, second, third, and fifth elements of this claim.  It is undisputed that Officer Gurevich

---

[23] In his reply, Mr. Detreville argues that, "if the Court declines to find retaliatory animus . . . as a matter of law, the Court can still reduce the number of triable issues by ruling that the remaining elements have been established as a matter of law."  Docket No. 79 at 9 n.2.  The Court declines to rule that these elements are established as a matter of law for purposes of trial.  *See Gutierrez v. Cobos,* 841 F.3d 895, 902 (10th Cir. 2016) ("a party waives issues and arguments raised for the first time in a reply brief." (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)).

[24] Regarding the fifth element, Mr. Detreville states that, "[w]hile a jury should be permitted to find the value of such damages, Plaintiff respectfully requests this Court to find that he sustained damages."  Docket No. 71 at 20.

arrested plaintiff on November 10, 2019, *see* Docket No. 80 at 4, ¶ 7; Docket No. 71 at 2, ¶ 1, demonstrating that Officer Gurevich caused plaintiff's confinement.  It is also undisputed that Mr. Detreville's criminal case was dismissed on March 2, 2020, *see* Docket No. 71 at 5, ¶ 32, thereby establishing that the criminal case terminated in his favor.  *See Thompson v. Clark*, 596 U.S. 36, 39 (2022) ("To demonstrate a favorable termination of a criminal prosecution for purposes of the Fourth Amendment claim under § 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended *without a conviction*." (emphasis added)).  Moreover, the Court previously found that the arrest was not supported by probable cause, thus establishing the third element.  Finally, the Court finds that Mr. Detreville has established that he suffered damages because it is undisputed that Mr. Detreville spent three days in jail.  *See* Docket No. 71 at 5, ¶ 31.

The Court turns to the contested element, malice.  "While ordinarily a Fourth Amendment claim is measured by an objective reasonableness standard, the malice element of a Fourth Amendment malicious prosecution claim focuses on the defendant officer's knowledge or state of mind." *Mglej*, 974 F.3d at 1171 n.14.  Generally, malice is defined as "any motive other than a desire to bring an offender to justice." *Sanchez v. Hartley*, 65 F. Supp. 3d 1111, 1124 (D. Colo. 2014) (citation omitted), *aff'd in part*, 810 F.3d 750 (10th Cir. 2016); *see also Chavez-Torres v. City of Greeley*, 660 F. App'x 627, 629 (10th Cir. 2016) (unpublished).  Malice "requires evidence of intent, not mere negligence." *Chavez-Torres*, 660 F. App'x at 629 (collecting cases).  For example, the malice element is satisfied "when there is evidence that the defendant officer knowingly made false statements or knew there was no probable cause to support prosecution."

*Mglej*, 974 F.3d at 1171 n.14 (citing *Young v. City of Idabel*, 721 F. App'x 789, 804 (10th Cir. 2018) (unpublished) (collecting cases)); *see also Hernandez v. Larson*, No. 21-cv-01538-PAB-MEH, 2023 WL 6127879, at *16 (D. Colo. Sept. 19, 2023) ("falsifying or omitting evidence knowingly and intentionally, or with reckless disregard for the truth is sufficient to establish malice in the context of malicious prosecution claims" (quoting *Sanchez*, 65 F. Supp. 3d at 1124)).  The Tenth Circuit has held that, even at the summary judgment stage, "[m]alice may be inferred if a defendant causes the prosecution without arguable probable cause."  *See Stonecipher v. Valles*, 759 F.3d 1134, 1146 (10th Cir. 2014); *see also Mglej*, 974 F.3d at 1171.

Mr. Detreville argues that every reasonable juror would conclude that Officer Gurevich acted with malice because he arrested Mr. Detreville for the "purpose of stopping the videorecording" and such a "retaliatory motive is plainly inconsistent with merely bringing Mr. Detreville to justice."  Docket No. 71 at 19.  Mr. Detreville also argues that Office Gurevich "consciously disregarded his training"[25] and "included false

---

[25] Mr. Detreville included a proffered fact in the appropriate fact section of his brief arguing that "Defendant Gurevich consciously disregarded his First Amendment training when he arrested Mr. Detreville."  Docket No. 71 at 5, ¶ 39 (citing Docket No. 71-7 at 13-19, 229:14-235:22).  However, the Court finds that Mr. Detreville's cited evidence does not support the proffered fact that Officer Gurevich "consciously disregarded his First Amendment training."  *See id*.  Officer Gurevich repeatedly testified that he considered the First Amendment training bulletin before arresting Mr. Detreville, but Officer Gurevich determined that the bulletin's guidance "did not apply" because the sign, issued by the Chief of Police, prohibited filming in the Station.  Docket No. 71-7 at 15-17, 19, 231:13-232:19, 233:9-18, 235:5-25; *see also* Docket No. 76-3 at 24-25, 227:22-25, 236:2-12.  Because Officer Gurevich's testimony does not support plaintiff's proffered fact, the Court declines to consider this argument when evaluating the malice element.

information in his police report, thereby acting with reckless disregard for the truth." *Id*.[26]

Defendants argue that there is no evidence that Officer Gurevich acted with malice. Docket No. 76 at 18. Defendants assert that the evidence shows that Officer Gurevich was at most "mistaken as to the boundary of the Station." *Id*. at 19. Defendants contend that such a mistake is "more akin to negligence, which is insufficient to prove malicious prosecution." *Id*. (citing *Novitsky*, 491 F.3d at 1258).

Construing the evidence in the light most favorable to Officer Gurevich, the Court finds that a reasonable jury could conclude that Officer Gurevich did not act with malice. A reasonable jury could believe the testimony of Officer Gurevich at trial that he believed that the entryway is part of the Station. Docket No. 77 at 4, ¶ 16 (citing Docket No. 77-3 at 7, 79:22-80:01). A reasonable jury could therefore find that Officer Gurevich believed that he had probable cause to arrest Mr. Detreville. *See Sanchez*, 65 F. Supp. 3d at 1124 (noting that malice is defined as "any motive other than a desire to bring an offender to justice."). Accordingly, because there is a genuine dispute as to Officer

---

[26] In support of his argument that Officer Gurevich included false information in his police report, Mr. Detreville states that Officer Gurevich told Mr. Detreville that "We do not allow video recording *on our property*," Docket No. 71 at 19 (citing Docket No. 71-1 at 07:26-07:41); however, Officer Gurevich's probable cause statement states that "I informed him that it is illegal to video tape *inside* the District 5 police station." *Id*. (quoting Docket No. 71-5 at 1). Mr. Detreville did not include any proffered facts about the probable cause statement in the appropriate fact section of his brief. Accordingly, the Court declines to consider this evidence as discussed previously. However, even if the Court considered this evidence, the Court finds that the evidence does not indicate that Officer Gurevich knowingly falsified any information in the probable cause statement. Plaintiff offers no argument that Officer Gurevich's use of the word "inside" was false or intentional. *See Novitsky*, 491 F.3d at 1258 (finding no evidence of malice where plaintiff "failed to introduce sufficient evidence that the misstatement in the report and the officers' failure to recognize that mistake were intentional, rather than out of negligence or inadvertence" (internal quotations and citation omitted)).

Gurevich's motive in arresting plaintiff, the Court denies the portion of Mr. Detreville's motion requesting summary judgment as to liability on the malicious prosecution claim.[27]

### C. Defendant's Motion for Summary Judgment

Defendants move for summary judgment on all claims.  Docket No. 77 at 1. Furthermore, defendants argue that they are entitled to qualified immunity on plaintiff's unlawful arrest claim.  *Id.* at 6, 9-13.[28]

### 1. *Unlawful Arrest Claim*

Mr. Detreville's first claim alleges that Officer Gurevich and Officer Weinheimer violated his Fourth Amendment rights by arresting plaintiff without probable cause. Docket No. 1 at 8-10, ¶¶ 62-74.  Defendants argue that they had probable cause to arrest Mr. Detreville pursuant to Colo. Rev. Stat. § 18-9-117, repeating the same arguments that Officer Gurevich raised in response to plaintiff's motion for summary

---

[27] In his reply, Mr. Detreville argues that, "if the Court declines to find . . . malice as a matter of law, the Court can still reduce the number of triable issues by ruling that the remaining elements have been established as a matter of law."  Docket No. 79 at 9 n.2.  The Court declines to rule that these elements are established as a matter of law for purposes of trial.  *See Gutierrez,* 841 F.3d at 902 ("a party waives issues and arguments raised for the first time in a reply brief." (citation omitted)).

[28] In their reply, defendants argue that they are entitled to qualified immunity on all of plaintiff's claims.  Docket No. 84 at 1 & n.1.  However, in their motion, defendants did not invoke qualified immunity on plaintiff's First Amendment retaliation claim, malicious prosecution claim, or equal protection claim.  *See* Docket No. 77 at 13-17. Accordingly, the Court finds that defendants waived any qualified immunity argument for the second, third, and fourth claims at the summary judgment stage.  *See Gutierrez*, 841 F.3d at 902 ("a party waives issues and arguments raised for the first time in a reply brief" (citation omitted)); *Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished) (declining to reach qualified immunity when defendants' "argument consisted of a single paragraph briefly discussing the law of qualified immunity"); *Riley v. Spangler*, 2021 WL 5881999, at *8 (D.N.M. Dec. 13, 2021) ("The Tenth Circuit has previously found that a defendant's argument focusing on whether a constitutional violation occurred does not raise a qualified immunity defense") (collecting cases)).

judgment.  Docket No. 77 at 6-9 ("As argued in Officer Gurevich's Response to Plaintiff's Partial Motion for Summary Judgment (Doc. 78), the Officers had probable cause to arrest Plaintiff for filming 'in' the Station.  At the risk of repetition—but to emphasize that the existence of probable cause entitles Defendants to judgment—Defendants restate that argument again here.").  Defendants also argue that they are entitled to qualified immunity on the unlawful arrest claim because the officers had arguable probable cause to arrest Mr. Detreville.  *Id.* at 9-13.  Mr. Detreville responds that defendants lacked probable cause to arrest him because the sign prohibited video recording "in" the Station.  Docket No. 80 at 8-9.  Mr. Detreville asserts that defendants are not entitled to qualified immunity because "Defendants acted objectively unreasonably when they arrested Plaintiff for videorecording while standing outside the police station."  *Id.* at 12.

The Court already considered these arguments when ruling on plaintiff's motion for summary judgment.  For the same reasons discussed previously, the Court finds defendants had no probable cause to arrest Mr. Detreville pursuant to Colo. Rev. Stat. § 18-9-117.  However, Officer Gurevich and Officer Weinheimer had arguable probable cause to arrest Mr. Detreville because it was a reasonable "mistake of law" for an officer to believe that the sign prohibited video recording in the entryway.  *See Deutsch*, 618 F.3d at 1098.  Accordingly, the Court finds that Officer Gurevich and Officer Weinheimer are entitled to qualified immunity.  The Court therefore grants this portion of the motion and dismisses plaintiff's unlawful arrest claim with prejudice.

### *2. First Amendment Retaliation Claim*

Mr. Detreville's second claim alleges that defendants arrested him in retaliation for his First Amendment activity.  Docket No. 1 at 10-12, ¶¶ 75-97.  Defendants argue that they are entitled to summary judgment on the First Amendment retaliation claim because no evidence exists that defendants were motivated by retaliatory animus and therefore plaintiff cannot establish the third element of this claim.  Docket No. 77 at 14-16.  Defendants argue that Officer Gurevich arrested plaintiff with a "good faith belief that filming in the entryway/vestibule was prohibited."  *Id*. at 15.  Defendants contend that "there is no evidence that Officer Weinheimer, who did not even fill out the charging documents, was motivated by retaliatory animus."  *Id*.[29]

Mr. Detreville responds that defendants arrested him because he would not stop recording.  Docket No. 80 at 13.  Mr. Detreville argues that Officer Gurevich was intent on stopping plaintiff from exercising his First Amendment right, evidenced by the fact that Officer Gurevich misstated the directive on the Sign by saying, "We do not allow recording on our property.  If you do not stop recording, we will have to arrest you."  *Id*. at 14-15.  Mr. Detreville argues that, when he declared that his conduct was protected

---

[29] Defendants also argue that "both officers testified that they are often filmed during the performance of their duties and it does not bother them."  Docket No. 77 at 15.  Defendants state that Officer Gurevich testified at his deposition that "people film [him] on the street all the time," but he did not arrest them because they "were not breaking the law.  They were not at the station . . .  There were no signs [prohibiting filming].  There was no reason to arrest them."  *Id*. (quoting Docket No. 76-3 at 16, 199:17-19, 200:5-8).  Defendants state that Officer Weinheimer testified that, "[e]very single day in my career, somebody is recording me.  That is the go-to response for everybody at this point . . . it's the nature of policing . . . in this day and age."  *Id*. (quoting Docket No. 77-4 at 7, 90:16-20).  Defendants did not raise these facts in the proper section of their brief, and therefore the Court declines to consider this evidence, as discussed previously.

by the First Amendment, Officer Weinheimer instantly said, "it's not, actually" and both defendants then arrested him.  *Id*. at 15.  Mr. Detreville contends that defendants never asked him to walk away from underneath the entryway.  *Id*.  Mr. Detreville asserts that the close temporal proximity between his First Amendment conduct and the arrest, which took place in less than two minutes, creates a strong inference that defendants' decision to arrest him was substantially based on a retaliatory motive.  *Id*. at 14-15.

Construing the facts in the light most favorable to Mr. Detreville, the Court finds that a reasonable jury could conclude that defendants' decision to arrest Mr. Detreville was "substantially motivated" by plaintiff's exercise of his First Amendment speech rights.  *Becker*, 494 F.3d at 925; *see also Irizarry*, 38 F.4th at 1288.  It is undisputed that Officer Gurevich told Mr. Detreville, "We do not allow recording on our property.  If you do not stop recording, we will have to arrest you."  Docket No. 71 at 3, ¶ 13; Docket No. 77 at 4, ¶ 12.  In response to Mr. Detreville's assertion of his First Amendment right to record, Officer Weinheimer said, "It's not actually."  Docket No. 71 at 4, ¶ 22.  However, defendants never informed Mr. Detreville that he could continue recording further away from the door.  *Id*., ¶ 20.  Instead, defendants arrested Mr. Detreville approximately two minutes after his initial contact with Officer Weinheimer.  *Id*. at 4, ¶ 25.  The Court finds that the "close temporal proximity" between Mr. Detreville's protected speech and his arrest, coupled with the absence of probable cause, raises "a strong inference" that defendants were motivated by plaintiff's speech.  *See Esparza*, 523 F. App'x at 536.  Accordingly, because there is a genuine dispute as to whether defendants were substantially motivated to arrest plaintiff because of his protected First Amendment activity, the Court denies this portion of defendants' motion.

### 3.  Malicious Prosecution Claim

Mr. Detreville's third claim asserts a malicious prosecution claim against Officer Gurevich.  Docket No. 1 at 12-14, ¶¶ 98-114.  Defendants argue that Mr. Detreville cannot establish the third or fourth elements of his malicious prosecution claim.  Docket No. 77 at 16.  Because the Court already found that defendants had no probable cause to arrest Mr. Detreville, the Court will proceed to the fourth element.  Defendants argue that there is no evidence that Officer Gurevich acted with malice.  *Id.* at 16.  Defendants assert that Officer Gurevich was "mistaken about the boundary of what was 'in' the Station," and argue that a "mistake such as this is not malice and would be more akin to negligence, which is patently insufficient to prove malicious prosecution."  *Id.* (citing *Novitsky*, 491 F.3d at 1258).

Mr. Detreville responds that the Court may infer malice because Mr. Detreville was arrested without arguable probable cause.  Docket No. 80 at 16 (citing *Mglej*, 974 F.3d at 1171 n.14).  Furthermore, Mr. Detreville argues that Officer Gurevich "arrested Plaintiff for the purpose of stopping the videorecording outside of the limitations of the law, which cannot reasonably be confused with the potentially legitimate law enforcement purpose of stopping someone from recording 'in' the Station."  *Id.*  Mr. Detreville argues that such a motive is "plainly inconsistent with bringing Plaintiff to justice."  *Id.*

Construing the facts in the light most favorable to Mr. Detreville, the Court finds that a reasonable jury could conclude that Officer Gurevich acted with malice.  It is undisputed that Officer Gurevich told Mr. Detreville, "We do not allow recording on our property.  If you do not stop recording, we will have to arrest you."  Docket No. 71 at 3,

¶ 13; Docket No. 77 at 4, ¶ 12.  Defendants did not inform Mr. Detreville that he could continue recording further away from the door.  Docket No. 71 at 4, ¶ 20.  Based on these facts, a reasonable jury could conclude that Officer Gurevich's motive was to stop Mr. Detreville's recording anywhere on the property, regardless of whether he was filming "in" the Station.  The Court therefore denies this portion of defendants' motion.

### 4.  Equal Protection Claim

Mr. Detreville's fourth claim alleges that defendants' decision to arrest him was motivated by plaintiff's race in violation of his Fourteenth Amendment rights.  Docket No. 1 at 14-15, ¶¶ 115-130.  Specifically, Mr. Detreville alleges that defendants observed two Caucasian men recording outside the Station on November 13 and November 14, 2019, but did not arrest the men.  *Id*. at 15, ¶¶ 124-126.

In order to establish an equal protection claim based on racially selective law enforcement, a plaintiff must present evidence that an officer's actions had a discriminatory effect and were motivated by a discriminatory purpose.  *Marshall v. Columbia Lea Reg'l Hosp*., 345 F.3d 1157, 1168 (10th Cir. 2003).  To show a discriminatory effect, a plaintiff must "make a credible showing that a similarly-situated individual of another race could have been, but was not, arrested . . . for the offense for which" plaintiff was arrested.  *United States v. James*, 257 F.3d 1173, 1179 (10th Cir. 2001).  The discriminatory purpose element requires a showing that a discriminatory intent was a "motivating factor in the decision."  *United States v. Alcaraz-Arellano*, 441 F.3d 1252, 1264 (10th Cir. 2006); *see also United States v. Hernandez-Chaparro*, 357 F. App'x 165, 166 (10th Cir. 2009) (unpublished) ("Those seeking to establish an equal protection claim based on selective law enforcement face a high burden: they must

dispel the presumption that a law enforcement official has not violated the Equal Protection Clause with 'clear evidence to the contrary.'" (citation omitted)).  To show a discriminatory purpose, plaintiff must show that "the decisionmakers in *his* case acted with discriminatory purpose."  *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987).  "The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision."  *Marshall*, 345 F.3d at 1168.  A plaintiff can establish discriminatory purpose through either direct or circumstantial evidence.  *Alcaraz-Arellano*, 441 F.3d at 1264.  For example, a plaintiff can provide evidence of the defendant's behavior during the arrest or statistical comparisons.  *Marshall*, 345 F.3d at 1168.

Defendants argue that plaintiff cannot show that Officer Gurevich's or Officer Weinheimer's actions had a discriminatory effect or were motivated by a discriminatory purpose because there is no evidence that either defendant saw two Caucasian men filming at the Station on November 13 or November 14, 2019.  Docket No. 77 at 14. The Court will consider the parties' arguments regarding Officer Gurevich and Officer Weinheimer separately.

### a.  Officer Gurevich

Defendants state that it is undisputed that Officer Gurevich was not working on November 14, 2019.  *Id*. at 14.  Furthermore, defendants argue that Officer Gurevich testified that he did not see anyone filming on November 13, 2019.  *Id*. at 5, 14, ¶ 22 (citing Docket No. 77-3 at 33, 290:24-291:4).  Because there is no evidence that Officer Gurevich saw Caucasian men filming in the Station on November 13 or 14, 2019, defendants argue that Mr. Detreville cannot establish that Officer Gurevich's actions had a discriminatory effect or were motivated by a discriminatory purpose.  *Id*. at 14.

Mr. Detreville argues that Officer Gurevich's actions had a discriminatory effect and were motivated by a discriminatory purpose because Officer Gurevich did not arrest Mr. Reed, a Caucasian man, who was filming on November 13, 2019, in the same location where plaintiff was arrested.  Docket No. 80 at 17-18.  Mr. Detreville claims that it is undisputed that Officer Gurevich was working at the desk in the Station on November 13, 2019 and that there were multiple computer monitors at the desk displaying video from security cameras.  *Id*. at 4-5, ¶¶ 9-10.  Mr. Detreville argues that Mr. Reed was recording in an area captured by the surveillance cameras, where Mr. Detreville was arrested, three separate times for approximately three minutes total on November 13, 2019.  *Id*. at 4, 17-18, ¶ 22 (citing Docket No. 80-7 at 18-20, 37-39, 161:09-163:03, 241:22-242:07, 295:19-25; Docket No. 80-13 at 01:36:00-01:38:38, 01:55:53-01:56:13, 02:11:55-02:12:15).  Although Officer Gurevich claims that he did not see Mr. Reed recording outside the Station, Mr. Detreville argues that there is a genuine dispute as to whether Officer Gurevich saw Mr. Reed engage in the same conduct as plaintiff based on Officer Gurevich's location at the desk and his access to the computer monitors that displayed video footage from the front of the Station.  *Id*. at 17-18.

In reply, defendants assert that plaintiff has failed to provide any evidence that Officer Gurevich saw Mr. Reed on November 13, 2019.  Docket No. 84 at 10. Defendants state that Officer Gurevich testified that he was not responsible for monitoring exterior camera footage because it was more important to monitor the prisoners, and although "he could technically see camera footage of the sidewalk from

his desk, he never paid attention to it because it wasn't his job." *Id.* (citing Docket No. 80-7 at 19-20, 162:1-24, 163:1-3).[30]

It is undisputed that Officer Gurevich was working at the desk in the Station on November 13, 2019, and that there were multiple computer monitors at the desk which displayed video from internal and external security cameras.  Docket No. 80 at 4-5, ¶¶ 9-10; Docket No. 84 at 4, ¶ 10.  It is also undisputed that Mr. Reed, a Caucasian man, was video recording on November 13, 2019.  Docket No. 80 at 5, ¶ 11.  Officer Gurevich did not arrest Mr. Reed.  *Id.*

The Court finds that Mr. Detreville has raised a genuine dispute of material fact as to whether Officer Gurevich saw Mr. Reed recording outside the Station.  A plaintiff can establish discriminatory purpose through circumstantial evidence.  *Alcaraz-Arellano*, 441 F.3d at 1264.  The Tenth Circuit has explained that, "[o]f course, no one other than [a defendant] may testify to what he *actually saw*," but "others may testify to the surrounding circumstances and what they witnessed" and a jury could ultimately reject the defendant's testimony and infer what the defendant saw based on circumstantial evidence.  *See Durkee v. Minor*, 841 F.3d 872, 876 (10th Cir. 2016) (emphasis added); *see also Wilson v. Pauls*, No. 20-cv-00609-PAB-SKC, 2023 WL 2574375, at *5 (D.

---

[30] Defendants also argue that Mr. Detreville's argument is flawed because "Plaintiff places the men on the sidewalk, but Plaintiff was arrested in the entryway area. So even if Gurevich had seen the men on the sidewalk, it would not serve as evidence that he treated them any differently from Plaintiff.  Plaintiff himself acknowledged that the two men took a different path than he did.  Ex. 2 at 64:23–24, 66:8–12."  Docket No. 84 at 9-10.  However, plaintiff's cited evidence shows that Mr. Reed walked along the sidewalk and under the entryway, like plaintiff.  *Compare* Docket No. 80-13 at 01:36:00-01:38:38, 01:55:53-01:56:13, 02:11:55-02:12:15, *with* Docket No. 71-1 at 05:43-06:07.  Additionally, defendants do not attach pages 64 or 66 of Mr. Detreville's deposition to their exhibit, so it is unclear what Mr. Detreville said in this portion of his testimony.  *See* Docket No. 77-2.  Accordingly, the Court rejects this argument.

Colo. Mar. 20, 2023).  Here, defendants argue that Officer Gurevich did not see anyone filming on November 13, 2019, citing Officer Gurevich's testimony.  Docket No. 77 at 5, ¶ 22 (citing Docket No. 77-3 at 33, 290:24-291:4).  Plaintiff supports his denial of that fact with video evidence showing that Mr. Reed recorded along the sidewalk and inside the entryway, the same location where plaintiff was arrested, three separate times on November 13, 2019 for approximately three minutes.  *See* Docket No. 80 at 3, ¶ 22 (citing Docket No. 80-13 at 01:36:00-01:38:38, 01:55:53-01:56:13, 02:11:55-02:12:15).  Moreover, plaintiff also cites Officer Gurevich's testimony where he states that it was "possible" to see the sidewalk leading up to the Station's entrance from the cameras.  *Id.;* Docket No. 80-7 at 19-20, 162:20-163:3.[31]  A jury could infer that Officer Gurevich saw Mr. Reed recording in the entryway due to Officer Gurevich's position at the desk and the presence of computer monitors at the desk, which displayed video of the external security cameras and the sidewalk leading to the entryway.

The Court therefore finds that Mr. Detreville has raised a genuine dispute of fact that "a similarly-situated individual of another race could have been, but was not, arrested" for the same offense as Mr. Detreville, Colo. Rev. Stat. § 18-9-117.  *See James*, 257 F.3d at 1179.  Moreover, Mr. Detreville has raised a genuine dispute of material fact on the discriminatory purpose element.  If Officer Gurevich saw Mr. Reed recording in the entryway of the Station, but did not approach or arrest Mr. Reed, then a reasonable jury could infer that Mr. Reed's and Mr. Detreville's racial identities were a "motivating factor in the decision."  *See Alcaraz-Arellano*, 441 F.3d at 1264.  Viewing

---

[31] Mr. Reed's video additionally shows the location of some of the external security cameras near the entryway.  *See* Docket No. 80-13 at 01:36:00-01:36:28.

the evidence in the light most favorable to Mr. Detreville, the Court finds that genuine

disputes of material fact preclude entry of summary judgment on the equal protection

claim against Officer Gurevich.  Accordingly, the Court denies this portion of defendants'

motion.

### b.  Officer Weinheimer

Defendants argue that it is undisputed that Officer Weinheimer was not working

on November 13 or November 14, 2019.  Docket No. 77 at 14.  Therefore, defendants

claim that plaintiff cannot establish that Officer Weinheimer's actions had a

discriminatory effect or were motivated by a discriminatory purpose.  *Id*.

Mr. Detreville responds that evidence of Officer Weinheimer's "behavior during

the events in question" and her "own statements and testimony" create a genuine

dispute as to whether Officer Weinheimer's decision to arrest plaintiff was motivated, at

least in part, by his race.  Docket No. 80 at 19.  Specifically, Mr. Detreville argues that

> [w]hen Defendant Weinheimer confronted Plaintiff outside of the door to the
> Station, she refused Plaintiff's polite request to verbally state her name and
> badge number.  She could clearly see that Plaintiff was videorecording the
> encounter from a reasonable distance away, but she described in her reports that
> Plaintiff "pushed a phone into [her] face."  [Docket No. 80-4] at 14.  However, this
> is an obvious exaggeration, as the three videos (i.e., Plaintiff's video and the two
> body camera videos) provide a clear perspective of the encounter, demonstrating
> that Plaintiff kept his elbows bent with the phone tucked close to his body
> throughout the encounter – the phone was nowhere near Defendant
> Weinheimer's face.  [Docket No. 77-2] at 00:00-00:20.  Within approximately one
> minute, Defendant Weinheimer became apparently frustrated with the innocuous
> encounter and called Defendant Gurevich to make an arrest.  [Docket No. 71-1]
> at 6:00-7:13.
>
> At deposition, Defendant Weinheimer provided extensive testimony of her
> purported fears that she "was about to be assaulted or worse" by Plaintiff.  *See*
> [Docket No. 80-8 at 12-18], 85:01-91:20; *id*. at 85:14-20 ("I really honestly
> thought that I was about to be harmed . . . My concern was what I was going to
> do to make it home to my kids that night.").  These strongly worded fears are
> inconsistent with the brief encounter and Plaintiff's conduct shown on the videos.

To the extent Defendant Weinheimer legitimately perceived these fears at the time of the incident, it is inexplicable why she chose not to abate the perceived threat. She could have ordered Plaintiff to move back, retreated inside the Station, or drawn a weapon (if she reasonably perceived a threat), but she did none of those things. [*Id.* at 10, 14, 24,] 83:17-19, 87:19-88:21, 97:01-08. She did not even convey these purported fears to Defendant Gurevich, who presumably wanted to "make it home" that night, too. [*Id.* at 21-26,] 94:25-99:21. More to the point, for purposes of the Equal Protection claim, Defendant Weinheimer's seemingly irrational and exaggerated fears suggest an unfortunate yet common experience for people like Plaintiff: the officer merely saw a black man in the dark and got scared. Put another way, Defendant Weinheimer perceived a man engaged in common behavior outside of the station, but subjectively perceived it to be threatening and/or criminal, because his blackness made him appear more threatening to her. . . . In the face of objective evidence showing Mr. Detreville did not shove the phone in her face or otherwise do anything threatening, a fact-finder may conclude that her exaggerated description of the encounter and her reaction to call over an officer to arrest were motivated by racial bias (i.e., discriminatory purpose).

Docket No. 80 at 19-20. Mr. Detreville did not include any of these facts in the proper section of his brief, and therefore the Court declines to consider this evidence as discussed previously.

However, even if the Court considered this evidence, the Court finds that it is insufficient to raise an inference that Officer Weinheimer was motivated by a racially discriminatory purpose. In *Blackwell v. Strain*, 496 F. App'x 836, 837 (10th Cir. 2012) (unpublished), a Black truck driver brought an equal protection claim against the officer who stopped him at a port of entry. Mr. Blackwell argued that the officer was motivated by a discriminatory purpose, evidenced by the following behavior during the encounter: (1) the officer "made him wait an inordinately long period of time before conducting the inspection of his vehicle;" (2) the officer "accused him of being under the influence of drugs or alcohol" and "administered a field sobriety test;" (3) the officer told plaintiff that he had a "problem," "subjected him to a subsequent unwarranted breathalyzer test," and "pressured him to sign the citation;" and (4) the officer "otherwise exhibited a

44

disturbingly hostile, aggressive, unprofessional, and confrontational demeanor for no apparent reason."  *Id*. at 845-46.  The Tenth Circuit found that

> [c]ontrary to Blackwell's assertions, however, this is not evidence from which a jury could reasonably infer Officer Strain was motivated by a racially discriminatory purpose.  There is no indication Officer Strain behaved the way he did, even in part, because Blackwell is black.  For all we know, Officer Strain behaves in this same manner toward all of the truckers he interacts with at the [port of entry], regardless of their race.  *See Johnson v. Crooks*, 326 F.3d 995, 1000 (8th Cir. 2003) (stating that "the Johnsons have offered no evidence that Crooks does not stop non-African Americans under similar circumstances," but instead, "rely on Ms. Johnson's personal opinion that she was stopped on account of her race, plus additional aspects of the encounter that do not directly evidence racial animus").

*Id*. at 846.  The Tenth Circuit found that Mr. Blackwell presented "no evidence that non-black truck drivers who were stopped, detained, and subjected to heightened inspections by Officer Strain were treated any differently" from Mr. Blackwell or other Black truckers.  *Id*. at 847.  The Tenth Circuit emphasized that Mr. Blackwell's "personal opinion" that he was stopped by the officer because he was Black is "not evidence from which a jury could reasonably infer Officer Strain was motivated by a discriminatory purpose."  *Id*.

Likewise, here, the Court finds that no reasonable jury could infer that Officer Weinheimer was motivated by a discriminatory purpose based on plaintiff's proffered evidence.  Even if Officer Weinheimer's observation of the encounter was "irrational," including her belief that Mr. Detreville "pushed a phone into [her] face" and her concern that she "was about to be harmed," *see* Docket No. 80 at 19-20, there is no indication that Officer Weinheimer behaved the way she did, even in part, because Mr. Detreville is Black.  Mr. Detreville presents no evidence that Officer Weinheimer has treated individuals of other races any differently from Mr. Detreville when she encountered

those individuals filming near the Station.  *See Blackwell*, 496 F. App'x at 847.  Mr.

Detreville's speculation that "his blackness made him appear more threatening" to

Officer Weinheimer, *see* Docket No. 80 at 20, is "not evidence from which a jury could

reasonably infer [that Officer Weinheimer] was motivated by a discriminatory purpose."

*See Blackwell*, 496 F. App'x at 847.[32]  Even viewing the evidence in the light most

favorable to Mr. Detreville, the Court finds that Mr. Detreville has not raised an inference

that Officer Weinheimer was motivated by a discriminatory purpose.  Accordingly, the

Court grants this portion of defendants' motion and dismisses the portion of the equal

protection claim against Officer Weinheimer with prejudice.

---

[32] Mr. Detreville also argues that a "plaintiff's showing that the officer did not have legitimate basis for their law enforcement action selected can provide evidence of pretext necessary to permit an inference that race was the motivating factor."  Docket No. 80 at 20 (citing *Pittman v. City of Aurora*, 2020 WL 6586659 (D. Colo. Oct. 23, 2020), *recommendation adopted by* 2020 WL 6585841 (D. Colo. Nov. 10, 2020) (citing *Marshall*, 345 F.3d at 1169)).  However, the absence of probable cause is not the standard for an equal protection claim and *Pittman* does not support plaintiff's contention.  *See Pittman*, 2020 WL 6586659, at *8 (discussing how an equal protection claim requires proof that defendant's actions had a "discriminatory effect and were motivated by a discriminatory purpose" (citing *Marshall*, 345 F.3d at 1168)).  To the extent that Mr. Detreville argues that his case is similar to *Marshall*, the Court rejects that argument.  In *Marshall*, the Tenth Circuit found that plaintiff raised an inference that the officer was motivated by a discriminatory purpose during the traffic stop because the officer repeatedly accused plaintiff of using "crack with no apparent basis," made an "unnecessary note of [plaintiff's] race," and the officer's "account of the events changed dramatically between the date of the incident and the date of his affidavit."  *Marshall*, 345 F.3d at 1170.  Moreover, the plaintiff "presented evidence regarding extensive alleged misconduct" committed by the officer against Black individuals.  *Id.*  Here, Mr. Detreville presents no evidence that Officer Weinheimer made any remarks about Mr. Detreville's race on November 10, 2019 or that Officer Weinheimer has a pattern of misconduct against Black individuals.  Accordingly, the Court rejects this argument.

IV.      CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Plaintiff's Motion for Partial Summary Judgment Against

Defendant Gurevich [Docket No. 71] is **DENIED**.  It is further

**ORDERED** that Defendants' Cross Motion for Summary Judgment [Docket No.

77] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that plaintiff's first claim is **DISMISSED with prejudice** against

defendants Sergey Gurevich and Julie Weinheimer.  It is further

**ORDERED** that plaintiff's fourth claim is **DISMISSED with prejudice** against

defendant Julie Weinheimer.

DATED September 30, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge