IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 21-cv-00638-PAB-MEH

KEVIN DETREVILLE,

     Plaintiff,

v.

SERGEY GUREVICH, and
JULIE WEINHEIMER,

     Defendants.

_____

### ORDER
_____

This matter is before the Court on Defendants' Cross Motion for Summary Judgment [Docket No. 77] filed by Officer Sergey Gurevich and Officer Julie Weinheimer (collectively, the "defendants") following the mandate of the United States Court of Appeals for the Tenth Circuit, Docket No. 105, and plaintiff Kevin Detreville's Renewed Motion for Reconsideration and/or Clarification of Order Denying Plaintiff's Motion for Partial Summary Judgment [Docket No. 107]. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.  PROCEDURAL BACKGROUND

Mr. Detreville asserts the following claims in his complaint pursuant to 42 U.S.C. § 1983: (1) unlawful arrest/failure to intervene in violation of the Fourth Amendment against both defendants; (2) retaliatory arrest in violation of the First Amendment against both defendants; (3) malicious prosecution in violation of the Fourth Amendment

against Officer Gurevich only; and (4) an equal protection claim under the Fourteenth Amendment against both defendants.  Docket No. 1 at 8-15, ¶¶ 62-130.

On March 8, 2024, defendants filed their cross-motion for summary judgment. Docket No. 77.  Defendants moved for summary judgment on Mr. Detreville's unlawful arrest claim, First Amendment retaliation claim, malicious prosecution claim, and equal protection claim.  *See id.* at 2.  On February 6, 2024, Mr. Detreville moved for partial summary judgment on his claims against Officer Gurevich.  *See* Docket No. 71.

On September 30, 2024, the Court denied Mr. Detreville's motion for partial summary judgment and granted in part and denied in part defendants' motion for summary judgment.  Docket No. 89 at 47.  The Court found that there was arguable probable cause for Mr. Detreville's arrest.  *Id.* at 34.  Accordingly, the Court found that defendants were entitled to qualified immunity and dismissed Mr. Detreville's unlawful arrest claim with prejudice.  *Id.*  The Court denied defendants' motion for summary judgment on Mr. Detreville's First Amendment retaliation and malicious prosecution claims.  *Id.* at 36, 38.  The Court denied defendants' motion for summary judgment on Mr. Detreville's equal protection claim against Officer Gurevich, but granted summary judgment for Officer Weinheimer on the equal protection claim, dismissing that claim with prejudice.  *Id.* at 42-43, 46.  The Court found that defendants waived their qualified immunity defense for the retaliatory arrest, malicious prosecution, and equal protection claims.  *Id.* at 33 n.28.

Defendants appealed the Court's ruling on their motion for summary judgment to the Tenth Circuit.  Docket No. 91.  The Tenth Circuit held that defendants did not waive their qualified immunity argument.  Docket No. 104 at 8.  The Tenth Circuit reversed the

Court's denial of summary judgment on the retaliatory arrest claim, finding that defendants were entitled to qualified immunity due to the existence of arguable probable cause.  *Id.* at 14.  The Tenth Circuit vacated and remanded for further proceedings the Court's denial of summary judgment for Officer Gurevich on Mr. Detreville's malicious prosecution claim.  *Id.* at 23.  The Tenth Circuit also vacated and remanded for further proceedings the Court's denial of summary judgment for Officer Gurevich on Mr. Detreville's equal protection claim.  *Id*.  On remand, the Tenth Circuit instructed the Court to address the clearly-established law prong of qualified immunity on the malicious prosecution and equal protection claims.  *Id.* at 18, 22.

Therefore, the remaining claims in this case are Mr. Detreville's malicious prosecution and equal protection claims against Officer Gurevich.  The Court will consider whether to grant summary judgment for Officer Gurevich on these claims in accordance with the Tenth Circuit's order.

## II.    UNDISPUTED FACTS[1]

On November 10, 2019, Mr. Detreville, who is Black,[2] went to the Arie P. Taylor Municipal Center.  Docket No. 71 at 2, ¶ 1.  The Arie P. Taylor Municipal Center is a large plaza that includes the Denver District 5 Police Station (the "Station") and several other municipal and state buildings.  *Id*., ¶ 2.  Mr. Detreville walked around the plaza,

---

[1] The following facts are undisputed unless otherwise indicated.  The Tenth Circuit's order did not disturb the Court's findings of fact in the September 30 Order.  *See* Docket No. 104 at 2 n.1.  Accordingly, the Court will consider as undisputed the same facts from the September 30 Order.

[2] Neither party included the fact that Mr. Detreville is Black in the undisputed fact sections of their briefs.  However, the Court finds that the parties do not dispute that Mr. Detreville is Black.  *See* Docket No. 1 at 1, ¶ 1 (stating that Mr. Detreville is an "African-American male"); Docket No. 80 at 18 (stating that plaintiff is "African-American"); Docket No. 77 at 14 (stating that Mr. Detreville is "Black").

while filming with his cell phone, for approximately six minutes. *Id.*, ¶ 3. While filming, Mr. Detreville walked along the sidewalk and arrived at the only public entrance to the Station. *Id.*, ¶ 4; Docket No. 77 at 2, ¶ 3. On the sidewalk leading up to the entrance, there were no signs prohibiting video recording. Docket No. 71 at 2, ¶ 5.[3]

The public entrance to the Station has a glass entryway,[4] depicted in the following photograph:



---

[3] Defendants dispute this fact, arguing that "a sign was posted on one of the windows of the entryway area prohibiting filming in the Denver District 5 station." Docket No. 76 at 2, ¶ 5. This response does not dispute plaintiff's proffered fact that there were no signs along the sidewalk leading up to the entrance. Accordingly, the Court deems this fact undisputed.

[4] The parties use different terms to refer to this area. *Compare* Docket No. 77 at 2, ¶ 4 (describing the area as the "entryway/vestibule") *with* Docket No. 80 at 1-2, ¶ 4 (describing the area as the glass "awning"). For clarity, the Court will refer to the area as the "entryway," but finds no material difference between the parties' descriptive terms.

Docket No. 77 at 2-3, ¶ 7.  The entryway has a sign that says, "POLICE."  *Id*. at 2, ¶ 6.

The entryway is enclosed on the top, the sides, and the front, except an area the size of

a double door in the front, which is open.  *Id*., ¶ 5; Docket No. 80-10.[5]

Mr. Detreville walked into the entryway and continued filming.  Docket No. 77 at

2, ¶ 4; Docket No. 80 at 1-2, ¶ 4.  There is only one door at the public entrance to the

Station.  Docket No. 80 at 4, ¶ 2.  Mr. Detreville remained outside of that door until after

he was arrested.  *Id*.  A sign posted on the inside of the window next to the door said,

"No video recording is allowed in the Denver Police District 5 Station without prior

permission from the Chief of Police."  Docket No. 71 at 3, ¶¶ 14-15; Docket No. 77 at 4,

¶ 10; Docket No. 80 at 4, ¶ 3.  The sign cites to Colo. Rev. Stat. § 18-9-117 as the legal

authority for the directive.  Docket No. 77 at 3, ¶ 9.

Officer Weinheimer opened the door and asked Mr. Detreville if he needed

assistance.  Docket No. 71 at 3, ¶ 8.  Mr. Detreville asked Officer Weinheimer where to

find a complaint form and then asked for her name and badge number.  *Id*., ¶ 9.  Officer

Weinheimer radioed for assistance.  *Id*., ¶ 10.  Officer Gurevich then entered the lobby

of the Station from an interior door.  *Id*.  Mr. Detreville was standing approximately two

to three feet from the door when Officer Gurevich arrived.  *Id*., ¶ 11.  Mr. Detreville

greeted Officer Gurevich and asked for his name and badge number.  *Id*., ¶ 12.  Officer

Gurevich told Mr. Detreville, "We do not allow recording on our property.  If you do not

---

[5] Plaintiff's response to this fact states, "DENY.  The glass 'awning' outside of the door to the Station is not fully enclosed on all sides."  Docket No. 80 at 2, ¶ 5 (citing Docket No. 80-5 at 1; Docket No. 80-10).  This response does not refute defendants' proffered fact that the entryway is enclosed on most sides, except that the entryway does not have a physical door.  Plaintiff's cited exhibit depicts an entryway that is enclosed by glass on most sides and is partially open at the front.  *See* Docket No. 80-10.  Accordingly, the Court deems this fact undisputed.

stop recording, we will have to arrest you." *Id*., ¶ 13; Docket No. 77 at 4, ¶ 12.  Officer

Weinheimer then pointed to the sign and said, "It's actually written right there."  Docket

No. 77 at 4, ¶ 13.

Officer Gurevich told Mr. Detreville that he was on property owned by the City

and County of Denver and ordered Mr. Detreville to stop recording.  Docket No. 71 at 4,

¶ 18.  Officer Gurevich told Mr. Detreville, "Please stop recording, and we can help you

out." *Id*., ¶ 19.  Mr. Detreville stated, "this is my First Amendment right."  Docket No. 71

at 4, ¶ 21; Docket No. 76 at 5, ¶ 21; *see also* Docket No. 71-1 at 07:53-07:57.  In

response to Mr. Detreville's assertion of his First Amendment right to record, Officer

Weinheimer said, "It's not actually."  Docket No. 71 at 4, ¶ 22.  Defendants did not

inform Mr. Detreville that he could continue recording further away from the door.  *Id*.,

¶ 20.  Throughout the encounter, Mr. Detreville never blocked the entrance of the

Station.  *Id*. at 5, ¶ 29.[6]

Defendants arrested Mr. Detreville for "Unlawful Conduct on Private Property" in

violation of Colo. Rev. Stat. § 18-9-117 because Mr. Detreville would not stop recording.

Docket No. 80 at 4, ¶ 7; *see also* Docket No. 80-5 at 1.  Mr. Detreville was arrested

approximately two minutes after his initial contact with Officer Weinheimer.  Docket No.

---

[6] Defendants' response to this fact states, "DENY."  Docket No. 76 at 5, ¶ 29
(citing Docket No. 76-3 at 13, 104:8-105:12; Docket No. 76-6).  This Court's Practice
Standards provide that if the nonmovant denies any asserted undisputed material facts
set forth by the movant, "[a]ny denial shall be accompanied by a brief factual
explanation of the reason(s) for the denial and a specific reference to material in the
record supporting the denial."  *See* Practice Standards (Civil Cases), Chief Judge Philip
A. Brimmer, § III.F.3.b.iv.  Defendants provide no explanation of the reason for their
denial.  Accordingly, the Court deems this fact admitted.  *See id*., § III.F.3.b.ix. ("Failure
to follow these procedures may result in an order striking or denying the motion or brief
or may cause the Court to deem certain facts as admitted.").

71 at 4, ¶ 25.  Defendants were performing their official duties at the time of plaintiff's arrest.  *Id*. at 4-5, ¶ 28.  Mr. Detreville spent three days in jail.  *Id*. at 5, ¶ 31.[7]  On March 2, 2020, Mr. Detreville's criminal case was dismissed.  *Id*., ¶ 32.

Prior to Mr. Detreville's arrest, Officer Gurevich received specific training on the First Amendment and procedures for encountering First Amendment auditors.  *Id*., ¶ 33. The training bulletin instructed that, "all individuals have the right to record police officers and public employees in public places.  Additionally, unless recording is specifically prohibited, individuals may not be prevented from recording in public places or within government buildings."  *Id*. at 5, ¶¶ 34, 36; Docket No. 76 at 6, ¶ 34; Docket No. 71-11 at 1.  Officer Gurevich and Officer Weinheimer's supervisor was Sergeant Kenneth Morrill.  Docket No. 77 at 4, ¶ 18.

Officer Weinheimer did not work on November 13 or November 14, 2019.  *Id*. at 4-5, ¶¶ 19-20.  Officer Gurevich did not work on November 14, 2019.  *Id*. at 5, ¶ 21. Officer Gurevich was working at the desk in the Station on November 13, 2019.  Docket No. 80 at 4, ¶ 9.  There were multiple computer monitors at the desk which displayed video from internal and external security cameras.  *Id*. at 4-5, ¶ 10; Docket No. 84 at 4, ¶ 10.  A Caucasian man, John Reed,[8] was video recording on November 13, 2019 and Officer Gurevich did not arrest the man.  Docket No. 80 at 5, ¶ 11.

---

[7] Defendants' response to this fact states, "DENY.  Plaintiff was taken into custody around 6:30 p.m. on November 10, 2019 and was released on the morning of November 12 after a 9:30 a.m. arraignment."  Docket No. 76 at 6, ¶ 31 (citing Docket No. 76-7).  This response does not refute plaintiff's proffered fact that he was in custody for three days: November 10, November 11, and November 12, 2019.  Accordingly, the Court deems this fact undisputed.

[8] Neither party includes the Caucasian man's name in the respective fact sections of their briefs.  However, the Court finds that the parties do not dispute that the Caucasian man is named John Reed.  *See* Docket No. 80 at 17; Docket No. 84 at 2.

Mr. Detreville asserts the following claims in his complaint pursuant to 42 U.S.C. § 1983: (1) unlawful arrest/failure to intervene in violation of the Fourth Amendment against both defendants; (2) retaliatory arrest in violation of the First Amendment against both defendants; (3) malicious prosecution in violation of the Fourth Amendment against Officer Gurevich only; and (4) an equal protection claim under the Fourteenth Amendment against both defendants.  Docket No. 1 at 8-15, ¶¶ 62-130.

On February 6, 2024, Mr. Detreville filed a motion for partial summary judgment on his first, second, and third claims against Officer Gurevich.  Docket No. 71.  Officer Gurevich filed a response, Docket No. 76, and Mr. Detreville filed a reply.  Docket No. 79.  On March 8, 2024, defendants filed a cross motion for summary judgment on all claims.  Docket No. 77.  Mr. Detreville filed a response, Docket No. 80, and defendants filed a reply.  Docket No. 84.

## III.  LEGAL STANDARD

### A.  Motions for Reconsideration

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  *See Hatfield v. Bd. of Cnty. Comm'rs for Converse Cnty.*, 52 F.3d 858, 861 (10th Cir. 1995).  Instead, motions for reconsideration fall within a court's plenary power to revisit and amend interlocutory orders as justice requires.  *See Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088, 1090 (10th Cir. 1980) (citing Fed. R. Civ. P. 54(b)); *see also Houston Fearless Corp. v. Teter*, 313 F.2d 91, 92 (10th Cir. 1962).  To avoid the inefficiency that would attend the repeated re-adjudication of interlocutory orders, judges in this district have imposed limits on their broad discretion to revisit interlocutory orders.  *See*, *e.g.*, *Montano v. Chao*, No. 07-cv-00735-EWN-KMT,

8

2008 WL 4427087, at *5–6 (D. Colo. Sept. 28, 2008) (applying Rule 60(b) analysis to
the reconsideration of interlocutory order); *United Fire & Cas. Co. v. McCrerey &
Roberts Constr. Co.*, No. 06-cv-00037-WYD-CBS, 2007 WL 1306484, at *1–2 (D. Colo.
May 3, 2007) (applying Rule 59(e) standard to the reconsideration of the duty-to-defend
order).  Regardless of the analysis applied, the basic assessment tends to be the same:
courts consider whether new evidence or legal authority has emerged or whether the
prior ruling was clearly in error.  *See Echon v. Sackett*, No. 14-cv-03420-PAB-NYW,
2019 WL 8275344, at *2 (D. Colo. Feb. 12, 2019); *Alpenglow Botanicals, LLC v. United
States*, 894 F.3d 1187, 1203 (10th Cir. 2018) ("a motion for reconsideration is
appropriate where the court has misapprehended the facts, a party's position, or the
controlling law"); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000)
("Grounds warranting a motion to reconsider include (1) an intervening change in the
controlling law, (2) new evidence previously unavailable, and (3) the need to correct
clear error or prevent manifest injustice.").  Motions to reconsider are generally an
inappropriate vehicle to advance "new arguments, or supporting facts which were
available at the time of the original motion."  *Servants of the Paraclete*, 204 F.3d at
1012.

### B.  Summary Judgment

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when
the "movant shows that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson
v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if,
under the relevant substantive law, it is essential to proper disposition of the claim.

*Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).  A movant who bears the burden at trial must submit evidence to establish the essential elements of its claim.  *Harper v. Mancos Sch. Dist. RE-6*, 837 F. Supp. 2d 1211, 1217 (D. Colo. 2011).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter."  *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case."  *Bausman*, 252 F.3d at 1115.

When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*  Cross-motions for summary judgment must be viewed separately, and the denial of one does not necessitate the

granting of the other. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 906-07 (10th Cir. 2016) (citations omitted).

### C. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

To overcome a qualified immunity defense at the summary judgment stage, a plaintiff must demonstrate (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. *Surat v. Klamser*, 52 F.4th 1261, 1270-71 (10th Cir. 2022). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236. Generally, a constitutional right is clearly established if "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Surat*, 52 F.4th at 1276. "Ordinarily, in order for the law to be clearly established, there must be a Supreme

Court or Tenth Circuit decision on point, or the clearly established weight of authority

from other courts must have found the law to be as the plaintiff maintains." *Torres v.

Madrid*, 60 F.4th 596, 603 (10th Cir. 2023); *see also Irizarry v. Yehia*, 38 F.4th 1282,

1293 (10th Cir. 2022).  The relevant precedent is "considered on point if it involves

*materially similar conduct* or applies with *obvious clarit*y to the conduct at issue."

*Irizarry*, 38 F.4th at 1294 (emphasis in original); *see also Shepherd v. Robbins*, 55 F.4th

810, 815 (10th Cir. 2022).  "To be clear, we do not require plaintiffs to engage in a

scavenger hunt for a prior case with identical facts.  We ask whether the existing law

provides fair warning to a defendant."  *Shepherd*, 55 F.4th at 815 (citations omitted).

## IV.    ANALYSIS

### A. <u>Malicious Prosecution Claim</u>

Mr. Detreville's third claim asserts a Fourth Amendment malicious prosecution

claim against Officer Gurevich.  Docket No. 1 at 12-14, ¶¶ 98-114.  In the September

30, 2024 Order, the Court held that a reasonable jury could find for Mr. Detreville on his

Fourth Amendment malicious prosecution claim.  Docket No. 89 at 37-38.  Because

Officer Gurevich did not waive his qualified immunity defense, the Court will consider

the qualified immunity test.  On appeal, defendants did "not challenge the district court's

determination that a reasonable jury could find a § 1983 malicious prosecution

violation."  Docket No. 104 at 15.  Thus, the Court will only consider the second prong of

the qualified immunity test, which, as the Tenth Circuit notes, requires the Court to

"determine whether [the plaintiff's] rights were clearly established, . . . by asking whether

the officers *arguably* had probable cause."  *Id.* (citation omitted).

To determine whether the law was clearly established in the context of Mr. Detreville's malicious prosecution claim, the Court must "ask if a defendant had 'arguable probable cause' to pursue a plaintiff.'" *Moses-El v. City & Cnty. of Denver*, 2022 WL 1741944, at *14 (10th Cir. May 31, 2022). "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief. *Cortez v. McCauley*, 478 F.3d 1108, 1120-21(10th Cir. 2007); *see also Jordan v. Jenkins*, 73 F.4th 1162, 1170 (10th Cir. 2023). The "protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Deutsch v. Jordan*, 618 F.3d 1093, 1098 (10th Cir. 2010) (quoting *Pearson*, 555 U.S. at 231); *see also Mocek v. City of Albuquerque,* 813 F.3d 912, 922 (10th Cir. 2015); *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 879 n.3 (10th Cir. 2014) (although "an officer's mistake of law cannot serve as a basis for probable cause," the second prong of the qualified immunity analysis "protects officials from civil liability for mistakes of law if reasonably made").

The Tenth Circuit held that "[w]hether there was probable cause or arguable probable cause for purposes of Mr. Detreville's malicious prosecution claim depended on the evidence presented at [his] arraignment" on November 12, 2019. Docket No. 104 at 17. [9] Therefore, the Court must "answer whether Officer Gurevich's probable

---

[9] In the September 30 Order, the Court found that "the evidence does not indicate that Officer Gurevich knowingly falsified any information in the probable cause statement." Docket No. 89 at 32 n.26. The Tenth Circuit observed that, while the Court considered whether Officer Gurevich knowingly falsified information in the probable cause statement, the Court "did not address whether any material, exculpatory facts were omitted from the statement." Docket No. 104 at 17.

cause statement – or other evidence at Mr. Detreville's arraignment – established

arguable probable cause that would defeat Mr. Detreville's malicious prosecution claim

based on qualified immunity."  *See id.*  To do so, the Court must consider material,

exculpatory information that was omitted from the probable cause statement, disregard

the false statements, and determine whether the probable cause statement still gives

rise to arguable probable cause.  *See Bledsoe v. Carreno*, 53 F.4th 589, 615 (10th Cir.

2022); *see also* Docket No. 104 at 17-18 n.10 ("An officer has qualified immunity on a

malicious prosecution claim arising from an arrest affidavit when the court, having

considered the omitted information, finds the affidavit still gives rise to arguable

probable cause.").

    As the Court found in the September 30 Order, "Mr. Detreville did not include any

proffered facts about the probable cause statement in the appropriate fact section of his

brief."  Docket No. 89 at 32 n.26.  Rather, Mr. Detreville, along with defendants, violated

the Court's Practice Standards by raising facts – including facts related to the probable

cause statement – in the analysis sections of their briefs, rather than the fact section of

their briefs, meaning that the opposing party had no obligation to admit or deny such

facts.  *See id.* at 11 ("In their analysis sections of the briefing, both parties raise

numerous facts, including portions of deposition testimony, that were not included in the

respective fact sections of their briefs.").  Accordingly, the Court held that that it would

"not consider such evidence either to establish an undisputed fact or to raise a dispute

of material fact."  *See id.* at 11-12.

    Therefore, Mr. Detreville – in both his response to defendants' motion for

summary judgment and in his own motion for summary judgment – fails to set forth facts

indicating that Officer Gurevich included knowingly falsified statements or omitted

material exculpatory facts in his probable cause statement.[10]  As observed by the Tenth

Circuit, "[w]hether there was probable cause or arguable probable cause . . .  depended

on the evidence presented at the arraignment."  Docket No. 104 at 17.  Yet, neither

party provided any undisputed facts regarding evidence presented at Mr. Detreville's

---

[10] The Tenth Circuit referenced the following arguments made by Mr. Detreville
on appeal concerning the probable cause statement and noted that "[w]hether and how
Mr. Detreville's arguments on malicious prosecution affect the arguable probable cause
issue is better left for the district court to consider," Docket No. 104 at 17-18:

> Moreover, although this issue has never been raised prior to this
> appeal, Defendant Gurevich's arrest affidavit includes the following false
> statements: (1) Mr. Detreville was "pointing a cell phone into Ofc
> Weinheimer's face;" (2) "the suspect was recording into the lobby of the
> District 5 station, clearly filming into the building;" and (3) "I informed him
> that it is illegal to video tape inside the District 5 police station." App. Vol. I
> at 99.
> . . .
> Similarly, Defendant Gurevich omitted the following material facts
> from his arrest affidavit: (1) Defendant Gurevich told Mr. Detreville that
> video recording was prohibited on "our property;" (2) Defendant Gurevich
> did not tell Mr. Detreville that he could continue video recording from a
> different location; (3) there were no non-police officers (e.g., witness,
> victims) in the lobby of the station or near the awning when Mr. Detreville
> was recording; and (4) Mr. Detreville was not blocking the entrance to the
> station.

*Detreville v. Gurevich*, No. 24-1427, Docket No. 29 at 44-45.  As discussed above, the
Court finds that Mr. Detreville failed to assert facts related to the probable cause
statement and therefore the Court will not consider these arguments, which lack support
from the undisputed facts.  Moreover, the Court finds that, even if these facts were
falsified or omitted, they are not material to the arguable probable cause determination.
As discussed below, the probable cause statement indicated that Mr. Detreville was
standing in the entryway while filming.  Disregarding allegedly falsified facts or
considering omitted ones does not change the fact that an officer could have reasonably
believed that Mr. Detreville's location while recording, as described in the probable
cause statement, violated the sign's directive.

arraignment.  Mr. Detreville has the burden to demonstrate that Officer Gurevich lacked arguable probable cause to pursue charges against him.  *See Surat*, 52 F.4th at 1270-71.  Because Mr. Detreville has failed to do so, the Court finds that Officer Gurevich is entitled to qualified immunity on Mr. Detreville's malicious prosecution claim.

In the alternative, even if the Court reviews the probable cause statement in light of the evidence the Court found was not properly before it on summary judgment, the Court finds that Officer Gurevich is nonetheless entitled to qualified immunity.  The only facts related to the probable cause statement concerned statements Officer Gurevich made to Mr. Detreville.  *See* Docket No. 71 at 19.  Mr. Detreville states that, on the day of his arrest, Officer Gurevich informed Mr. Detreville that "[w]e do not allow video recording *on our property*."  *Id.* (citing Docket No. 71-1 at 07:06-07:41).  In Officer Gurevich's probable cause statement, Officer Gurevich represented that he told Mr. Detreville "it is illegal to video tape *inside* the District 5 police station."  *Id.* (quoting Docket No. 71-5 at 1).  Mr. Detreville argues that this discrepancy between what Officer Gurevich told Mr. Deterville in the station and what Officer Gurevich included in the probable cause statement demonstrates that Officer Gurevich's motive to arrest Mr. Detreville was not driven by a legitimate purpose, but instead was driven by a reckless, retaliatory purpose which proves the malice element of his malicious prosecution claim.

As addressed in the Court's September 30 Order, this evidence does not indicate that Officer Gurevich knowingly falsified information in the probable cause statement. Docket No. 89 at 32 n.26.  Moreover, Mr. Detreville does not explain how, and the Court does not find that, Officer Gurevich's statement to Mr. Detreville is material as to whether Officer Gurevich possessed arguable probable cause that Mr. Detreville had

violated the sign's directive.  Whether Officer Gurevich subjectively believed that being
in the entryway constituted being "on the property," "inside the station," or both is
immaterial to the arguable probable cause determination.  *See Cronick v. Pryor*, 99
F.4th 1262, 1270 (10th Cir. 2024) (a court does "not consider an arresting officer's
subjective intentions" in determining whether arguable probable cause existed).  The
probable cause statement indicates that Officer Gurevich "could see that there was an
individual standing approximately two to three feet from the entrance into the station,
underneath the awning for the entrance."  *See* Docket No. 71-5 at 1.  Regardless of
what Officer Gurevich said to Mr. Detreville, the probable cause statement indicated that
Mr. Detreville was standing in the entryway while recording, which the Court finds
supplied arguable probable cause to believe that Mr. Detreville was violating the sign's
directive.  Thus, the Court would find arguable probable cause even if the allegedly
falsified statement was omitted from Officer Gurevich's probable cause statement.

  The Tenth Circuit also directed the Court to "address whether any material,
exculpatory facts were omitted from the statement."  *See* Docket No. 104 at 17.  The
only fact provided by Mr. Detreville concerning the probable cause statement was the
discrepancy between Officer Gurevich telling Mr. Detreville that recording is prohibited
on the property and the probable cause statement indicating that Officer Gurevich said
recording is prohibited inside the Station.  As noted above, the Court finds that Officer
Gurevich omitting that he told Mr. Detreville recording was prohibited on the property is
immaterial as to whether Officer Gurevich possessed arguable probable cause that Mr.
Detreville violated the sign's directive.

The Tenth Circuit held that "[w]hether there was probable cause or arguable probable cause for purposes of Mr. Detreville's malicious prosecution claim depended on the evidence presented at that arraignment."  Docket No. 104 at 17.  Even in the portions of Mr. Detreville's briefing that discussed facts not properly before the Court, Mr. Detreville offered no facts about what happened at the arraignment hearing.  *See* Docket No. 71 at 19.  Thus, Mr. Detreville fails to show that Officer Gurevich lacked arguable probable cause concerning anything that happened at the arraignment.

In summary, Mr. Detreville does not set forth facts indicating that Officer Gurevich's probable cause statement, or any other evidence presented at Mr. Detreville's arraignment, included knowingly falsified statements or omitted material exculpatory information.  Therefore, Officer Gurevich had arguable probable cause to pursue Mr. Detreville's prosecution based on the evidence at Mr. Detreville's arraignment, such that Officer Gurevich is entitled to qualified immunity.  The Court will grant this portion of Officer Gurevich's motion and dismiss the malicious prosecution claim with prejudice.

### B. Equal Protection Claim

Mr. Detreville's fourth claim alleges that defendants' decision to arrest him was motivated by Mr. Detreville's race in violation of his Fourteenth Amendment rights. Docket No. 1 at 14-15, ¶¶ 115-130.  The Court granted summary judgment for Officer Weinheimer on this claim based on qualified immunity, but held that a reasonable jury could find that Mr. Detreville's Fourteenth Amendment rights were violated by Officer Gurevich.  Docket No. 89 at 42-43, 46.  The Tenth Circuit affirmed this finding; therefore, Mr. Detreville has satisfied his burden as to the first prong of the qualified

immunity defense. Docket No. 104 at 20-21. Accordingly, the Court will consider the second prong of the qualified immunity defense: whether Mr. Detreville's right to equal protection against racially selective law enforcement was clearly established when Officer Gurevich arrested him.

"[T]he Constitution prohibits selective enforcement of the law based on considerations such as race." *Whren v. United States*, 517 U.S. 806, 813 (1996). "Racially selective law enforcement violates this nation's constitutional values at the most fundamental level; indeed, unequal application of criminal law to white and black persons was one of the central evils addressed by the framers of the Fourteenth Amendment." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1167 (10th Cir. 2003); *see also* Docket No. 104 at 22 n.14 ("We note the Supreme Court and this court have recognized that selective law enforcement based on race violates equal protection."). While the Supreme Court has warned lower courts against defining the clearly established right at too high of a level of generality, *see Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011), the Court does not believe that a more specific formulation of the right applies here. Therefore, the Court finds that, at the time of Mr. Detreville's arrest, Mr. Detreville's right against racially selective law enforcement was clearly established. *See Pittman v. City of Aurora*, No. 19-cv-02209-PAB-NRN, 2020 WL 6586638, at *7 (D. Colo. Oct. 23, 2020) ("The right not to be subjected to racially selective law enforcement is clearly established."). Officer Gurevich is not entitled to qualified immunity on Mr. Detreville's equal protection claim and the Court will deny that portion of Officer Gurevich's motion.

### C.  Mr. Detreville's Motion for Reconsideration

First, Mr. Detreville asks the Court to reconsider its finding that Officer Gurevich had arguable probable cause to arrest Mr. Detreville.  *See* Docket No. 107 at 5-9.  Mr. Detreville contends that, under both a mistake of law and mistake of fact theory, Officer Gurevich lacked arguable probable cause to arrest Mr. Detreville.  *See id.*  Specifically, he argues that Officer Gurevich did not make a reasonable mistake of law because the sign prohibiting recording was not "genuinely ambiguous."  *Id.* at 6.  Mr. Detreville contends that Officer Gurevich did not make a reasonable mistake of fact because his mistake was not "objectively reasonable."  *Id.* at 7.

Officer Gurevich responds that Mr. Detreville's motion is improper because it "simply rehashes arguments he made at summary judgment" and is a "substitute for an appeal."  Docket No. 108 at 6.  He contends that Mr. Detreville points to no change in law, new evidence, or any manifest injustice.  *Id.*  Officer Gurevich argues that Mr. Detreville waived or forfeited his ability to challenge the Court's arguable probable cause determination because Mr. Detreville did not raise the issue in his original motion for reconsideration and failed to file a cross-appeal challenging the Court's finding on arguable probable cause.  *See id.* at 8-9.  Officer Gurevich argues, moreover, that Mr. Detreville fails to show that the Court's arguable probable cause determination was in error.  *See id.* at 10-12.

"[A]s courts in the Tenth Circuit have repeatedly found, a motion to reconsider is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved."  *Supreme Auto Transp. v. Athena Assur. Co.*, No. 04-cv-02323-EWN-PAC, 2006 WL 1149148, at *4 (D. Colo. Apr. 28, 2006) (internal

quotations and citation omitted).  As Officer Gurevich notes, Mr. Detreville's argument

that Officer Gurevich did not make a reasonable mistake of law, because the sign was

unambiguous, was already raised.  *See* Docket No. 71 at 10; Docket No. 79 at 4-5.  The

Court rejected this argument and found in the September 30 Order that Officer Gurevich

made a reasonable mistake of law because "an officer could have reasonably believed

that the sign prohibited recording in the entryway."  Docket No. 89 at 21.  "[A] motion to

reconsider is not a second opportunity for the losing party to make its strongest case, to

rehash arguments, or to dress up arguments that previously failed."  *Floyd v. Zavaras*,

No. 81-cv-01754, 2010 WL 1241048, at *1 (D. Colo. Mar. 23, 2010).  The Court declines

to reconsider its arguable probable cause finding given that Mr. Detreville fails to

provide an intervening change in law, new evidence, or show that the Court's ruling was

in clear error or resulted in manifest injustice.

Moreover, Mr. Detreville's cited authority, which does not constitute intervening

changes in law and thus cannot support reconsideration, does not support his argument

that Officer Gurevich made no reasonable mistake of law.  Mr. Detreville relies on

*Mocek*, Docket No. 107 at 5, where the Tenth Circuit held that an officer had arguable

probable cause to arrest plaintiff under a New Mexico statute, N.M. Stat. § 30-22-3,

which prohibited a person from "concealing one's true name or identity," because an

officer reasonably "could have believed that an investigative stop for disorderly conduct

at an airport security checkpoint required the production of some physical proof of

identity" under the statute.  *Mocek*, 813 F.3d at 925, 927.  In the September 30 Order,

the Court found that *Mocek* supports the conclusion that Officer Gurevich made a

reasonable mistake of law.  *See* Docket No. 89 at 23.  In his motion for reconsideration,

Mr. Detreville argues that *Mocek* is inapposite because, in *Mocek*, the "court surveyed cases from New Mexico courts to reach this conclusion," while "Colorado courts had not provided ambiguous interpretations of the sign at issue in Plaintiff's case." Docket No. 107 at 6. In *Mocek*, the Tenth Circuit held that the officer had arguable probable cause to arrest plaintiff because New Mexico courts had not "precisely defined what it means to furnish 'identity.'" *See Mocek*, 813 F.3d at 925; *see also Mglej v. Gardner,* 974 F.3d 1151, 1165 (10th Cir. 2020) (discussing *Mocek,* and noting that, "[b]ecause New Mexico courts had not addressed what the statute meant by 'identity,' the Tenth Circuit held that an objectively reasonable officer could have believed that he had probable cause to arrest Mocek under that statute when Mocek failed to produce his ID upon request, even though this Court doubted the state statute made it a crime not to produce an ID"). Such is the case here: at the time of Mr. Detreville's arrest, no Colorado court had interpreted the sign to determine what constitutes being "in" the Station and thus an objectively reasonable, but mistaken, officer could believe that he had probable cause to arrest Mr. Detreville for violating the sign's directive. *See* Docket No. 89 at 21 n.17. Therefore, the Court finds that its reliance on *Mocek* was not in error.

Mr. Detreville also cites *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008). *See* Docket No. 107 at 6-7. In *Fogarty*, the Tenth Circuit held that the officer was not entitled to qualified immunity, in connection to plaintiff's arrest for disorderly conduct, because "New Mexico cases resolving the scope of the disorderly conduct statute" would have put a reasonable officer on notice that plaintiff "peacefully drumming a samba at a reasonable volume" did not create probable cause for the arrest. *Fogarty*, 523 F.3d at 1159. Here, there was no such case law putting Officer Gurevich on notice

that he lacked probable cause to arrest Mr. Detreville for violating the sign's directive.

*See Youbyoung Park v. Gaitan*, 680 F. App'x 724, 737 (10th Cir. 2017) (unpublished)

(holding that the officers had arguable probable cause to arrest plaintiff under N.M. Stat.

§ 30-22-1(A), in part, because there was "*no* controlling decision" that "*squarely*

*govern[ed]*" whether defendants lacked probable cause under that "*specific* provision" of

the obstruction statute).  The Court's finding that the plain language of the sign prohibits

video recording in the Station, and but not in the entryway, *see* Docket No. 89 at 17,

does not preclude a finding that an officer could have reasonably but mistakenly

believed otherwise, especially with there being a lack of case law interpreting the sign.

*Mocek*, 813 F.3d at 926 (holding that the officer had arguable probable cause despite

"doubt[ing] that § 30–22–3 criminalizes the mere failure to produce documentation

during a stop for suspicion of disorderly conduct").

Furthermore, Mr. Detreville contends that the Court erred because the

"reasonableness analysis is different for mistakes of law and mistakes of fact" and

"[a]pplying the legal standards pertaining to each demonstrates that Defendants should

not be granted qualified immunity."  Docket No. 107 at 2-3.  Mr. Detreville points to the

Court's finding in the September 30 Order that "this issue is more analogous to a

mistake of law; however, the same reasonableness analysis would apply if the officer's

belief was a 'mistake of fact' or a 'mistake based on mixed questions of law and fact.'"

Docket at 107 at 2 (citing Docket No. 89 at 21 n.18).  Even if the Court were to accept

Mr. Detreville's argument that a mistake of fact analysis is distinct from a mistake of law

analysis, such an argument is irrelevant because the Court did not find that Officer

Gurevich made a mistake of fact.  Rather, the Court found that Officer Gurevich made a

mistake of law, and noted that, even if it were to consider whether there was a mistake of fact, the same reasonableness analysis would apply. *See* Docket No. 89 at 21 n.18. But again, the Court did not perform a reasonableness analysis under a mistake of fact theory, and Mr. Detreville provides no new evidence, authority, or argues that it was clear error for the Court to treat Officer Gurevich's mistake as one of law rather than fact.

Mr. Detreville's reliance on *Bustillos v. City of Artesia*, 98 F.4th 1022 (10th Cir. 2024), is unavailing. *See* Docket No. 107 at 7-9. In *Bustillos*, the plaintiff was arrested by an officer for concealing his identity in violation of N.M. Stat. § 30-22-23. *Bustillos*, 98 F.4th at 1026. The Tenth Circuit noted that "an officer may not lawfully arrest someone for concealing identity without reasonable suspicion of some predicate, underlying crime." *Id.* at 1027-28 (internal quotation and citation omitted). The Tenth Circuit first determined whether the officer possessed reasonable suspicion that plaintiff had committed a predicate crime. *Id.* at 1028. Trespassing is one of the predicate crimes for which the officer contended he had reasonable suspicion. *Id.* at 1029-1031. The Tenth Circuit held that the officer lacked reasonable suspicion to believe that plaintiff had committed trespass. *Id.* at 1030-31. The Tenth Circuit relied on the fact that the officer mistakenly understood the property being trespassed upon to extend all the way to the "curb," but the officer "provided no specific, articulable facts to support his understanding." *Id.* at 1030 (internal quotation and citation omitted). Furthermore, when the officer encountered plaintiff, plaintiff was "nowhere near the area" that the officer "believed to be private property." *Id.*

*Bustillos* does not support reconsideration of the Court's arguable probable cause determination. *Bustillos*, while treating the officer's mistake as one of fact, did not discuss whether the officer's mistake could have been one of law. *Bustillos* therefore does not support a finding that the Court erred when it analyzed whether Officer Gurevich had arguable probable cause under a mistake of law analysis. Even if the Court did conduct a mistake of fact analysis, *Bustillos* is inapposite because the relevant holding that Mr. Detreville relies upon concerned whether the officer had reasonable suspicion to believe that plaintiff committed trespass. Here, Mr. Detreville was not arrested for trespass, but rather for violation of the sign's directive and Colo. Rev. Stat. § 18-9-117. Thus, the issue here is not whether Officer Gurevich possessed arguable probable cause that Mr. Detreville was on private property, but whether Officer Gurevich possessed arguable probable cause that Mr. Detreville was recording from an area that was prohibited by the sign. Moreover, while the *Bustillos* officer encountered plaintiff nowhere near the area that the officer purported was private property, it is undisputed that Mr. Detreville was filming in the entryway when confronted by Officer Gurevich. And as the Court found in the September 30 Order, "an officer could have made a reasonable mistake that the phrase 'in' the Station included the mostly enclosed physical structure attached to the front of the building" that constitutes the entryway. Docket No. 89 at 22.[11]

---

[11] For the first time in reply, Mr. Detreville argues that *Love v. Grashorn*, 134 F.4th 1109, 1110 (10th Cir. 2025), is new legal authority that supports reconsideration of the Court's arguable probable cause finding. *See* Docket No. 109 at 1-2. Mr. Detreville contends that *Love* stands for the proposition that, "for a defendant to be entitled to qualified immunity under a reasonable-mistake-fact theory, their conduct must be objectively reasonable." *Id.* at 2. Mr. Detreville waived this argument by raising it for the first time in reply. *See Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("a

Second, Mr. Detreville asks the Court to reconsider its decision not to hold that the elements of his First Amendment retaliation and malicious prosecution claims, other than retaliatory animus, have been established through summary judgment briefing as a matter of law pursuant to Fed. R. Civ. P. 56(g). *See* Docket No. 107 at 9-13. Rule 56(g) provides as follows:

> If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact — including an item of damages or other relief — that is not genuinely in dispute and treating the fact as established in the case.

Fed. R. Civ. P. 56(g). Specifically, Mr. Detreville requests that the Court find, as a matter of law, that Mr. Detreville was engaged in a constitutionally protected activity and that Officer Gurevich caused Mr. Detreville to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity. *See* Docket No. 107 at 10. For the malicious prosecution claim, Mr. Detreville asks that the Court find as a matter of law that: Officer Gurevich caused Mr. Detreville's confinement; the criminal action against Mr. Detreville terminated in his favor; Officer Gurevich lacked probable cause for Mr. Detreville's arrest; and Mr. Detreville sustained damages. *Id.* at 12. Mr. Detreville contends that he did not waive these requests for relief because he did not belatedly raise them in his reply brief. *See id.* at 3. Officer Gurevich responds that Mr. Detreville's request is premature until after the Court issues its second motion for

---

party waives issues and arguments raised for the first time in a reply brief." (quoting *Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011)). *Love* was decided on April 22, 2025 and Mr. Detreville's renewed motion for reconsideration was filed on August 29, 2025. However, even putting waiver aside, *Love* does not provide support for Mr. Detreville's argument that the Court erred in conducting a mistake of law rather than a mistake of fact analysis. Moreover, in *Love*, "the availability of qualified immunity turn[ed] on the existence of an imminent danger" to the officer who shot plaintiff's dog and not the existence of arguable probable cause. *See Love*, 134 F.4th at 1118.

summary judgment.  Docket No 108 at 12.  Furthermore, Officer Gurevich argues that the request is improper because Mr. Detreville seeks jury instructions on dismissed claims.  *Id.*

Mr. Detreville misapprehends the basis of the September 30 Order's ruling regarding Rule 56(g).  The Court found that Mr. Detreville raised his Rule 56(g) request for the first time in his reply brief, not that he failed to discuss the elements of his retaliation and malicious prosecution claims until his reply brief.  By raising his Rule 56(g) request for the first time in his reply, he deprived defendants of the ability to respond to that request.  Mr. Detreville provides no reason for the Court to reconsider the request.  "Whether to undertake a Rule 56(g) analysis lies in the court's sound discretion."  *Keller v. Diversicare of Council Grove, LLC*, 2025 WL 764639, at *10 (D. Kan. Mar. 11, 2025) (citing *Watchous Enters., LLC v. Mournes*, 87 F.4th 1170, 1178 (10th Cir. 2023)).  The Court will exercise its discretion to not establish discrete elements as a matter of law.[12]

Regarding the Court's finding that Officer Gurevich lacked probable cause for Mr. Detreville's arrest, Mr. Detreville seeks clarification as to "whether this purely legal issue will be presented to the jury at trial or whether the jury will be instructed that Mr.

---

[12] The Court dismissed Mr. Deterville's First Amendment retaliation claim with prejudice, Docket No. 110 at 3, and will dismiss his malicious prosecution claim with prejudice.  The Court declines to rule on elements of these dismissed claims that would not be relevant to a jury's finding on Mr. Detreville's equal protection claim.  *See Forge v. Sisters of Charity of Leavenworth,* 2019 WL 6037352, at *1 (D. Kan. Nov. 14, 2019) (declining to issue a Rule 56(g) order because "particular facts identified by defendant are not material to the jury's resolution of plaintiff's claims or are inextricably intertwined with matters that are substantially controverted by the parties") (footnotes omitted); *Molbogot v. MarineMax E., Inc.*, 2022 WL 2817873, at *2 (S.D. Fla. July 19, 2022) (declining to establish facts as a matter of law where they would not "necessarily aid the jury or save time at trial given the logistical problems that it would cause").

Detreville was arrested without probable cause." Docket No. 107 at 13. Mr. Detreville contends that he "should be permitted to rely on the Court's legal determination in seeking appropriate jury instructions and in preparing his case for trial." *Id.* at 14. Because the only remaining claim is Mr. Detreville's equal protection claim against Officer Gurevich, the Court will deny Mr. Detreville's motion. As the Court found in its September 30 Order, "the absence of probable cause is not the standard for an equal protection claim." Docket No. 89 at 46 n.32. Furthermore, Mr. Detreville does not argue that the Court's probable cause determination is relevant to the equal protection claim. Rather, he argues that the jury "should be instructed that the arrest lacked probable cause for the malicious prosecution claim," which will be dismissed. Docket No. 107 at - 13-14. Because the Court's probable cause determination is not relevant to the only remaining claim, no clarification is necessary.

Accordingly, the Court will deny Mr. Detreville's motion to reconsider and clarify the September 30 Order.

## V.    CONCLUSION

For the foregoing reasons, it is

**ORDERED** that Defendants' Cross Motion for Summary Judgment [Docket No. 77] is **DENIED in part and GRANTED in part**. It is further

**ORDERED** that Kevin Detreville's Renewed Motion for Reconsideration and/or Clarification of Order Denying Plaintiff's Motion for Partial Summary Judgment [Docket No. 107] is **DENIED**. It is further

**ORDERED** that plaintiff's third claim is **DISMISSED with prejudice** against defendant Sergey Gurevich. It is further

**ORDERED** that defendant Julie Weinheimer is terminated from this case. [13]  It is further

**ORDERED** that the parties shall contact Chambers via email (Brimmer_Chambers@cod.uscourts.gov) no later than **March 24, 2026** to reschedule the trial preparation conference and jury trial.

DATED March 13, 2026.

BY THE COURT:

_____
PHILIP A. BRIMMER
United States District Judge

---

[13] Pursuant to the September 30 Order, the only remaining claim against Officer Weinheimer was Mr. Detreville's First Amendment retaliation claim.  *See* Docket No. 89 at 47.  Because the Tenth Circuit reversed that finding and the Court thus dismissed the First Amendment claim with prejudice, all claims against Officer Weinheimer have been dismissed.  *See* Docket No. 104 at 23; Docket No. 110 at 3.  Accordingly, Officer Weinheimer shall be terminated from this case.